UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., ) | CASE NO. 3:00CV2179-AVC |
| Plaintiff/Counterclaim-Defendant, ) | |
| v.  ) | |
| MEREDITH CORPORATION, ) | |
| Defendant/Counterclaim-Plaintiff. ) | |
| ) | |
| MEREDITH CORPORATION, ) | |
| Third-Party Plaintiff, ) | |
| v.  ) | |
| VALERIE CRANE, ) | |
| Third-Party Defendant ) | JULY 31, 2002 |

## DEFENDANT'S MOTION TO COMPEL

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, the defendant, Meredith Corporation, hereby moves this Court for an order compelling plaintiff, Research Communications, Ltd., to fully and completely respond to Requests 44 and 50 of Meredith Corporation's September 14, 2001 Requests for Production and Interrogatory No. 25 of Meredith's September 14, 2001 Interrogatories to Plaintiff, as discussed more fully in the accompanying Memorandum of Law. This motion is based on the accompanying Memorandum of Law and the affidavit of James Sawtelle, with accompanying exhibits, filed herewith.

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

Respectfully submitted,

DEFENDANT
MEREDITH CORPORATION

*Karen A. Moreno*

Albert Zakarian
Fed. Bar No. ct 04201
James Sicilian
Fed Bar No. ct 05608
Karen A. Moreno
Fed Bar No. ct 22282
Day, Berry & Howard, LLP
Cityplace I
Hartford, Connecticut  06103-3499
Telephone:  (860) 275-0100
Telecopier:  (860) 275-0343
E-Mail:  azakarian@dbh.com
E-Mail:  jsicilian@dbh.com
E-Mail:  kamoreno@dbh.com

Roger T. Stetson
Fed. Bar No. ct 22131
Belin Lamson McCormick Zumbach Flynn,
A Professional Corporation
The Financial Center
666 Walnut Street Suite 2000
Des Moines, Iowa  50309-3989
Telephone:  (515) 243-7100
Telecopier: (515) 243-1408
E-Mail:  rtstetson@belinlaw.com

James G. Sawtelle
Fed. Bar No. ct 22864
Duncan Green Brown Langeness & Eckley,
A Professional Corporation
Capital Square
400 Locust Street Suite 380
Des Moines, Iowa  50309
Telephone:  (515) 288-6440
Telecopier:  (515) 288-6448
E-Mail:  jsawtelle@duncangreenlaw.com

Lawrence F. Scalise
Fed. Bar No. ct 23113
Sullivan & Ward,
A Professional Corporation
801 Grand Avenue Suite 3500
Des Moines, Iowa  50309-2719
Telephone:  (515) 244-3500
Telecopier:  (515) 244-3599
E-Mail:  scal2910@aol.com

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon the parties to this action by serving a copy upon each
of the attorneys listed below on July 31, 2002 by

☐  U.S. Mail                      ☐  FAX

☐  Hand Delivered                 ☐  Electronic Mail

☒  FedEx/ Overnight Carrier       ☐  Other

Joseph T. Tanski                  Charles W. Pieterse
David B. Mack                     Whitman Breed Abbott & Morgan
Hutchins, Wheeler & Dittmar       100 Field Point Road
101 Federal Street                Greenwich, CT  06830
Boston, Massachusetts 02110

Signature:  *Karen A. Moreno*

-3-

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RESEARCH COMMUNICATIONS, LTD., | ) | CASE NO. 3:00CV2179-AVC |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEREDITH CORPORATION, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |
| | ) | |
| | ) | |
| MEREDITH CORPORATION, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VALERIE CRANE, | ) | |
| | ) | |
| Third-Party Defendant. | ) | JULY 31, 2002 |

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

### Statement of the Case

Despite the voluminous filings with this Court and extensive discovery, the issues in this case remain quite simple. Plaintiff Research Communications, Ltd. ("RCL") claims that Defendant Meredith Corporation breached a contract by exercising a cancellation clause within that contract. Meredith, for its part, asserts that it had a right to exercise the cancellation clause that was placed in the contract by RCL itself. Further, Meredith notes that even if a breach could be shown, the contract claim is subject to a number of affirmative defenses.

Meredith brings counterclaims based on RCL's fraud in inducing Meredith to enter into a relationship with RCL and for RCL's breach of its obligations to Meredith. In particular,

- 1 -

Meredith alleges that RCL altered research results so as to make them useless or, worse yet, damaging. In addition, Meredith alleges that RCL misrepresented its relationship with The Walt Disney Company, one of the largest media organizations in the world, to induce Meredith to do business with it. RCL's failure to comply with outstanding discovery requests for information related to its relationship with Disney and its failure to produce documents regarding its research policies and practices form the basis for this Motion to Compel. Meredith has made extensive efforts to gain voluntary compliance with discovery request by RCL without court intervention. Sawtelle Aff. at ¶ 2. (Tab 1) It is now apparent, however, that discovery will not be provided absent court intervention.

<u>**Argument**</u>

I.    RCL Has Exhibited a Pattern of Obstructionist Behavior Regarding Discovery of Its Relationship with Disney.

From the beginning, RCL has desperately tried to avoid legitimate discovery into its relationship with Disney. This pattern of behavior began with Valerie Crane, RCL's president and sole owner. Contrary to Ms. Crane's sworn affidavit and deposition testimony in this matter, RCL's relationship with Disney ended in 1997 under the threat of litigation because Disney considered RCL's work-product to be substandard to the point of being useless. Denson Dep., pg. 14-28 (Attached to Sawtelle Affidavit as Tab 2); Pelant Dep., pg. 69-74 (Attached to Sawtelle Affidavit as Tab 3). Disney's dissatisfaction with RCL was communicated directly to Ms. Crane. Pelant Dep., pg. 35-37; 69. Further, Dr. Bonita Soley, a former RCL researcher who worked on projects done for Meredith, testified that Ms. Crane's problems with Disney were frequently discussed at RCL.

> People would mention, you know, Disney, and they had problems with Disney.
> One person used to call it, I forget if it was the Disney debacle or Disney disaster.
> They had a nickname for it. They kind of used it as the boogeyman of studies,

- 2 -

you know, I mean, better be careful with the client or the study, or we'll have another Disney on our hands. So it was definitely a negative impression.

Soley Dep., pg. 325 (Attached to Sawtelle Affidavit as Tab 4).[1] In addition, Dr. Donna LaCourse, RCL's current vice president for research, even testified that she believed the RCL-Disney relationship ended in a lawsuit. LaCourse Dep., pgs. 65-66 (Attached to Sawtelle Affidavit as Tab 5). Though the RCL-Disney relationship did not in fact result in litigation, by late 1997 the relationship was so contentious that a settlement agreement was necessary to implement an exit strategy. Pelant Dep., pg. 35-37; 69; Settlement Agreement (Attached to Sawtelle Affidavit as Tab 6).

The testimony makes clear that Ms. Crane has not been truthful in her sworn testimony before this Court. In a sworn affidavit, Ms. Crane testified that the impetus of the settlement agreement with Disney was Disney's desire to *expand* the work being performed by RCL. Crane Supplemental Affidavit ¶ 4 (Attached to Sawtelle Affidavit as Tab 7); Crane Dep., pg. 305-06 (Attached to Sawtelle Affidavit as Tab 8). She also testified that RCL "never received any criticism" from Disney. Crane Supplemental Affidavit ¶ 5. Additionally, when asked directly during her deposition whether the settlement agreement with Disney was considered an effort by Disney to terminate RCL, Ms. Crane replied: "Heavens no." Crane Dep., pg. 305. Ms. Crane's affidavit and deposition testimony regarding her relationship with Disney is pure fiction and nothing but a perjurious string of fabrications.

---

[1] Dr. Soley also testified at length regarding RCL's practice of manipulating data to achieve preconceived results on projects done for Meredith. For example, on one study, Dr. Soley testified that Ms. Crane ordered that a large number variables be removed in order to identify a group of white, middle-aged women she called "safety seekers." Dr. Soley said that even after torturing the data per Ms. Crane's direction, the only group of "safety seekers" her and her researchers could identify was young, black males. Soley Dep., pgs. 80-83. Dr. Soley's testimony will be used primarily by Meredith when proving its counterclaims regarding RCL's failure to fulfill its contractual obligations to Meredith.

Meredith's counterclaims are based in part on Ms. Crane's misrepresentations regarding her relationship with Disney to Meredith's chief executive officer before the parties entered into the disputed 1998 agreement. RCL's counsel repeatedly has demanded that Meredith drop these claims, contending there is "overwhelming evidence" that Ms. Crane was not aware of any problems with Disney as of April 1998 when she met with Meredith's CEO. June 4, 2002 Letter from Mack to Stetson (Attached to Sawtelle Affidavit as Tab 9); June 20, 2002 Letter from Mack to Sawtelle (Attached to Sawtelle Affidavit as Tab 10). RCL's counsel has gone so far as to twice threaten to pursue sanctions if Meredith refused to drop its Disney-related counterclaims. June 4, 2002 Letter from Mack to Stetson; June 20, 2002 Letter from Mack to Sawtelle. RCL's aggressive and baseless demands reflect nothing more than frustration with the facts that have developed during discovery.

Regardless of what Ms. Crane now represents, she was fully aware of Disney's dissatisfaction with her work by April of 1998. For example, the settlement agreement between RCL and Disney was executed in October of 1997, some five months prior to Ms. Crane's meeting with Meredith's CEO. More illuminating, however, is a January 1998 memorandum – written three months prior to Ms. Crane's meeting with Meredith's CEO – from Jonathan Karis, one of RCL's attorneys with the very firm that claims to have been unaware of RCL's problems with Disney. Karis Memorandum (Attached to Sawtelle Affidavit as Tab 11). RCL produced this memorandum during discovery in this matter. In the memorandum, RCL's attorney advises Ms. Crane to draft more definitive language and to add a dispute resolution clause to the contract in part due to RCL's experience with Disney. Specifically, Ms. Crane was told: "I understand that you will always 'work it out,' *but as we saw with Disney*, one never knows." Karis Memorandum ¶ 3 (emphasis added). Plainly, even Ms. Crane's attorneys, who now claim

ignorance of the Disney debacle, were well aware of RCL's Disney dispute prior to April 1998 despite their ardent claims that there exists "overwhelming evidence" to the contrary.

II.    RCL Must Be Forced to Respond to Legitimate Discovery Requests Regarding Its Relationship with Disney.

In Document Request No. 44 of Meredith's First Request for Production of Documents to RCL, Meredith sought production of documents regarding RCL's relationship with Disney. The request called for production of:

> All documents referring or relating to work performed by RCL for Disney Televentures (including, but not limited to The Walt Disney Company and GTE, now known as Verizon), including but not limited to communications between RCL and representatives of Disney Televentures concerning the quality of services performed by RCL.

Meredith's First Request for Production of Documents, No. 44 (Attached to Sawtelle Affidavit as Tab 12). Initially, RCL simply refused to comply with this request, asserting that responsive documents were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Responses and Objections to Meredith's First Request for Production of Documents, No. 44 (Attached to Sawtelle Affidavit as Tab 13).

Despite Meredith's protest, for months RCL refused to produce any documents regarding its relationship with Disney. Finally, only a day before the scheduled depositions of two key Disney officials in California on May 2 and 3, 2002, RCL sent a handful of Disney-related documents to the office of Meredith's counsel. RCL's counsel knew at the time that Meredith's counsel had already departed for California and was not at his office to receive the documents. Sawtelle Affidavit ¶ 3. RCL subsequently produced a limited number of additional documents.

To this day, RCL has never supplemented its response to Meredith's outstanding document request, and RCL is apparently still withholding Disney-related documents that have been in its possession all along. The documents RCL has produced appear to include only those

materials RCL's counsel intended to use during the depositions of the Disney witnesses. Further, these documents reference other documents, chiefly correspondence, which RCL has not produced. For example, a September 1997 letter from a Disney attorney to Ms. Crane references earlier communications between the parties, including a "previous document" forwarded earlier that month. September 29, 1997 Letter from Disney to Crane (Attached to Sawtelle Affidavit as Tab 14). Also, later correspondence from Ms. Crane references an enclosed "redraft" of the settlement agreement. September 22, 1997 Letter from Crane to Disney (Attached to Sawtelle Affidavit as Tab 15). RCL has refused to produce any of the documents referenced in these letters and more generally has to date produced only a small number of Disney-related materials.

In addition, RCL has claimed repeatedly that litigation with Disney was never contemplated. Crane Supplemental Affidavit ¶ 4; Crane Dep., pg. 307; June 4, 2002 Letter from Mack to Stetson; June 20, 2002 Letter from Mack to Sawtelle. Accordingly, there could be no proper basis, per the work-product document or otherwise, to withhold correspondence and other documents generated by RCL's attorneys regarding its relationship with Disney. The documents discovered to date corroborate the existence of still further documents that RCL simply refuses to produce. The fact that these documents will still further undermine Ms. Crane's representations of a rosy relationship with Disney is no justification for withholding them. Indeed, this is precisely why the documents are relevant and must be produced.

Similarly, RCL has refused to answer interrogatories regarding its relationship with Disney. Interrogatory No. 25 of Meredith's First Set of Interrogatories to RCL provides:

> Please describe all contractual relationships in effect at any time between RCL and Disney Televentrues or The Walt Disney Company, and identify any documents evidencing such relationships.

Meredith's First Set of Interrogatories, No. 25 (Attached to Sawtelle Affidavit as Tab 16). RCL again broadly objected on grounds of relevance and provided no substantive response. Plaintiff's

Objections and Responses to Meredith's First Set of Interrogatories, No. 25 (Attached to Sawtelle Affidavit as Tab 17).

RCL's desperate efforts to avoid discovery regarding its relationship with Disney are plainly without legitimate basis. The relevance of the requested information cannot be seriously disputed. A significant issue in this case is whether RCL misrepresented its relationship with Disney in an attempt to induce Meredith to do business with RCL. Ms. Crane herself informed this Court through a sworn affidavit and again during her deposition that she had no problems with Disney. The evidence now indicates that Ms. Crane's sworn testimony is false. Pelant Dep. pg. 35-37, 69; Denson Dep., pg. 14-28; Karis Memorandum ¶ 3. The requested information and materials – if nothing else – are relevant to impeach Ms. Crane's credibility. Such evidence is always relevant. Fed. R. Civ. P. 26(b) Advisory Committee Notes, 2000 Amendment; United States v. Tramunti, 500 F.2d 1334, 1339 (2d Cir. 1974).

Even aside from exploring Ms. Crane's lack of veracity, however, this information is relevant because it relates directly to Meredith's counterclaims. Bill Kerr, Meredith's CEO, has testified that he was concerned about doing business with RCL when Meredith hired Ms. Crane's company in 1998 and overcame this trepidation by in part relying on RCL's purported positive relationship with Disney as represented by Ms. Crane. Kerr Affidavit ¶ 9 (Attached to Sawtelle Affidavit as Tab 18). RCL's promotional materials provided to Mr. Kerr by Ms. Crane clearly touted her relationship with Disney. RCL Corporate Profile (Attached to Sawtelle Affidavit as Tab 19). Meredith intends to show that RCL misrepresented its relationship with Disney and is entitled to full and complete production of these materials for this purpose.

III.    <u>RCL Must Be Compelled To Produce Documents Regarding Its Research Methods.</u>

On September 14, 2001, Meredith served its first set of document requests on

RCL. On November 19, 2001 RCL responded. Request No. 50 of Meredith's requests

sought the following:

> All standards, manuals, or written procedures or policies employed by RCL to constrain or instruct anyone performing data analysis regarding how segmentation analysis should be performed, including but not limited to any such documents relating to factor analysis, cluster analysis, item analysis or scale creation and refinement, and any other statistical or data analysis procedures involved in performing a segmentation analysis.

Attached to Sawtelle Aff. at Tab 12. This information is relevant in light of Meredith's claim

that RCL conducted its research in a manner that grossly deviated from accepted industry norms

and in ways designed to result in flawed results. RCL promised to produce the requested

information. However, after RCL promised to produce the requested information, it became

very apparent that it failed to do so.

During Dr. Bonita Soley's deposition, Ms. Soley discussed RCL's manual identifying

standards for conducting research. Indeed, Ms. Soley and RCL's counsel repeatedly discussed

such a document. Soley Dep. at pgs. 36, 52, 54. However, despite discussing the existence of

such a document at some length, RCL still has yet to produce it. When it became apparent that

Ms. Crane yet again was withholding relevant and requested information, Meredith followed up

with a letter requesting production of the withheld manual. RCL's counsel simply ignored

Meredith's requests and continues to withhold a document that it promised to produce. Because

RCL promised to produce the requested documents and should have done so months ago,

Meredith now moves to compel a full and complete response to document request number fifty

requesting RCL's research procedures and protocols.

## Conclusion

For the foregoing reasons, Meredith asks that RCL be compelled to produce the information referenced in this Motion.

Respectfully submitted,

*Roger T. Stetson*

Roger T. Stetson
Fed. Bar No. ct 22131
Belin Lamson McCormick Zumbach Flynn,
A Professional Corporation
The Financial Center
666 Walnut Street Suite 2000
Des Moines, Iowa  50309-3989
Telephone:  (515) 243-7100
Telecopier: (515) 243-1408
E-Mail:  rtstetson@belinlaw.com

James G. Sawtelle
Fed. Bar No. ct 22864
Duncan Green Brown Langeness & Eckley,
A Professional Corporation
Capital Square
400 Locust Street Suite 380
Des Moines, Iowa  50309
Telephone:  (515) 288-6440
Telecopier:  (515) 288-6448
E-Mail:  jsawtelle@duncangreenlaw.com

Lawrence F. Scalise
Fed. Bar No. ct 23113
Sullivan & Ward,
A Professional Corporation
801 Grand Avenue Suite 3500
Des Moines, Iowa  50309-2719
Telephone:  (515) 244-3500
Telecopier:  (515) 244-3599
E-Mail:  scal2910@aol.com

Albert Zakarian
Fed. Bar No. ct 04201
James Sicilian
Fed Bar No. ct 05608

Karen A. Moreno
Fed Bar No. ct 22282
Day, Berry & Howard, LLP
Cityplace I
Hartford, Connecticut 06103-3499
Telephone: (860) 275-0100
Telecopier: (860) 275-0343
E-Mail: azakarian@dbh.com
E-Mail: jsicilian@dbh.com
E-Mail: kamoreno@dbh.com

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon the parties to this action by serving a copy upon each
of the attorneys listed below on ___7-131___, 2002 by

☐  U.S. Mail                    ☐  FAX

☐  Hand Delivered               ☐  Electronic Mail

☒  FedEx/ Overnight Carrier     ☐  Other

Joseph T. Tanski               Charles W. Pieterse
David B. Mack                  Whitman Breed Abbott & Morgan
Hutchins, Wheeler & Dittmar    100 Field Point Road
101 Federal Street             Greenwich, CT 06830
Boston, Massachusetts 02110

Signature:  _Karen A. Moreno_

c:\temp\pld-new disney mot compel-cmm.doc

- 10 -