UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ )<br>RESEARCH COMMUNICATIONS, LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MEREDITH CORPORATION, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>MEREDITH CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VALERIE CRANE, )<br>)<br>Defendant. )<br>_____) | CASE NO 3:00CV2179-AVC |

## <u>TRIAL MEMORANDUM</u>

The parties to the above-captioned matter submit this trial memorandum pursuant to the

Pretrial Order dated January 21, 2004.

1.      **Trial Counsel:**

Counsel to Research Communications, Ltd. and Valerie Crane:

Joseph C. Tanski
David B. Mack
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000


Counsel to Meredith Corporation

Robert Callagy
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079
(212) 818-9200

James Sawtelle
Duncan Green Brown Langeness & Eckley
600 Seventeenth Street
Suite 2800 South
Denver, CO 80202-5202
(303) 634-2280

2.      **Jurisdiction:**

This Court has jurisdiction over this matter on account of diversity of citizenship

of the parties. <u>See</u> 28 U.S.C. §1332.

3.      **Jury/Non-Jury:**

Both parties have demanded a trial by jury. The parties have agreed that issues

relating to the award of attorneys' fees to the prevailing party are to be tried by the Court.

All remaining issues are to be tried by jury.

4.      **Length of Trial:**

The parties estimate that 10 trial days will be required.

5. **Further proceedings**.

Both RCL and Meredith anticipate filing several motions in limine to narrow the scope of testimonial and documentary evidence at trial. The parties jointly request that the Court order the parties to submit motions in limine on or before May 7, 2004. The parties further request that the Court schedule a hearing on the motions in limine in advance of trial. The parties further request that the Court set a deadline for the filing of trial briefs.

By agreement, and with the approval of the Court, the parties will supplement their respective exhibit lists on April 15, 2004.

Meredith is awaiting a ruling from the Court on its Renewed Motion to Compel Discovery dated October 16, 2003. In the event that the Court grants said motion, it is foreseeable that Meredith will seek permission to amend its exhibit list to include the materials that are the subject of the same.

Meredith requests that the Court establish deadlines for the designation and counter-designation of portions of depositions to be read at trial, and the filing of objections, if any.

6. **Nature of Case**.

A.    RCL's Claims.

RCL seeks relief for breach of contract and, in the alternative, quantum meruit. In addition, RCL seeks reformation of the attorneys' fees provision in the contract to correct a mutual mistake of the parties in the drafting thereof. Meredith agrees that the contract's attorneys' fees provision does not reflect the parties' intent because it provides that the prevailing party shall pay the other party's fees, when it should have stated the opposite.

The factual basis of RCL's breach of contract claim is as follows.

RCL and Meredith entered into an Agreement ("Agreement") pursuant to which RCL performed research studies and related services for ten Meredith television stations. The Agreement provided that RCL would conduct the research studies set forth in Exhibit A to the Agreement, a table attached to the Agreement and expressly incorporated into the Agreement. In October 2000, Meredith purported to terminate the Agreement notwithstanding that a substantial number of the research studies set forth in Exhibit A to the Agreement had not been conducted. Meredith had a contractual obligation to pay for all the research studies identified in Exhibit A to the Agreement. The Agreement states that the parties "agree[] . . . to conduct the research studies set out in Exhibit A hereto and incorporated herein, at ten Meredith stations" and nowhere grants either party the right to terminate the Agreement.

RCL seeks damages caused by Meredith's unlawful termination of the Agreement, plus interest at the rate set forth in the Agreement, plus attorneys' fees. As of June 30, 2004, the total amount to which RCL is entitled on its breach of contract claim, exclusive of attorneys' fees, is approximately $1.2 million.[1]

RCL's quantum meruit claim is in the alternative to its breach of contract claim. To the extent the jury concludes that Meredith had the right to terminate the Agreement prior to completion of all the studies set out in Exhibit A to the Agreement, RCL seeks

---

[1]    This amount includes $15,000, plus $12,500 in interest for a research study conducted by RCL for Meredith's Phoenix television station, KPHO. The study was not one of the studies set out in Exhibit A to the contract and was performed pursuant to an agreement between RCL and KPHO directly. RCL performed such study but was not paid by the station or by Meredith.

compensation for work it performed for Meredith prior to termination.  The amount of such claim, with interest through June 2004, is approximately $450,000.

      B.    <u>Meredith's Defenses, Counterclaims and Third-Party Complaint</u>

Meredith Corporation ("Meredith"), is a publishing company that was established in Des Moines, Iowa in 1902.  It is the owner and publisher of such magazines as *Better Homes and Gardens* and *Ladies Home Journal*.

Through its subsidiary, Meredith Broadcast Group, Meredith owned and operated twelve television stations throughout the United States during the relevant time period. Those stations included:  WFSB-TV, Hartford, Connecticut; WGCL-TV, Atlanta, Georgia; KPHO-TV, Phoenix, Arizona; WOFL-TV, Lake Mary, Florida; KCTV, Fairway, Kansas; WSMV-TV, Nashville, Tennessee; WHNS-TV, Greenville, South Carolina; KVVU-TV, Henderson, Nevada; WNEM-TV, Saginaw, Michigan; WOGX-TV, Gainesville, Florida; and KFXO-TV, Bend, Oregon, and  KPDX-TV, Portland, Oregon.

Research Communications, Ltd. ("RCL") is a Massachusetts company that was in the business of providing market research and consulting services, including market branding initiatives and strategies relating to television news programming.  Valerie Crane ("Crane") is the President, Treasurer, and sole owner of RCL.

The factual bases for Meredith's defenses, counterclaims and third-party claims are as follows:

On July 21, 1998, Meredith and RCL entered into a written contract (later superseded by another contract executed on November 17, 1998), under which RCL was to perform various research studies and provide brand consulting services at ten of

Meredith's twelve television stations. The parties' contract was prepared by RCL following consultation with its counsel, and with input from Meredith. According to the parties' most recent agreement (the November 1998 contract), RCL's services were to be performed from March 1, 1998 until June 30, 2000. No study was to begin until RCL received 75% of the cost of each study up front. Meredith retained the ability to cancel any proposed study and, in the event that it chose to do so after test dates had been agreed upon, Meredith agreed to pay any reasonable and necessary preparation expenses incurred by RCL in connection with each such cancelled study.

Meredith terminated its relationship with RCL on October 6, 2000, three months after the June 30, 2000 expiration of the parties' contract. By this date, Meredith had paid RCL and its consultants a total of $4,462,327 for research and consulting services provided under the parties' contract, including $221,155 for travel and expense items submitted by RCL to Meredith in connection with the provision of those services. If RCL had performed all of the research studies which it had originally proposed to Meredith, it stood to receive a total of $4,288,500.

Prior to formation of the initial agreement with Meredith, Crane met with and was interviewed by the chief executive officer of Meredith. During this meeting, in an attempt to persuade Meredith to hire her company, Crane falsely represented that RCL enjoyed successful relationships with other major broadcast and television clients, including The Walt Disney Company ("Disney"). Unbeknownst to Meredith at the time, RCL had in fact alienated former clients. Disney, for example, had informed Crane shortly prior to her interview with Meredith's CEO that RCL's work did not meet accepted industry standards. For that reason, Disney terminated its relationship with

RCL for research being performed for a proposed cable television venture, and the two companies (Disney and RCL) entered into a Settlement Agreement in order to resolve their differences without resorting to litigation.

Relying upon RCL's representations, Meredith began to implement branding efforts based upon RCL research at its television stations. During the term of the contract and unbeknownst to anyone at Meredith at the time, RCL and Crane intentionally manipulated data gathered by RCL, in a manner contrary to established industry standards, so that the research appeared to support results that Crane desired to report to Meredith. Consequently, the conclusions reported to Meredith were rendered useless.

Meredith, as RCL's client, was not aware that results offered by RCL were not supported by the totality of the underlying data solicited from respondents, nor was Meredith aware that reports issued by RCL were personally rewritten at Crane's direction, to conform to her personal theories and conclusions without regard to the underlying data which had been collected at the expense of Meredith. In justifiable reliance on RCL's representations that the research conclusions presented an accurate and unbiased view of audience preferences, Meredith followed RCL's branding advice, causing it to suffer substantial losses in revenues and profits. At the time of the execution of the July and November Agreements, the Meredith Broadcast Group of television stations was performing in the top quartile of its comparable broadcast television peer group (as measured by applicable criteria including revenue performance). When Meredith ultimately instructed RCL to suspend any further research services to the Meredith television stations approximately two years later, the Meredith

Broadcast Group was performing in the bottom quartile of its comparable television peer group.

RCL in this action claims that Meredith breached the parties' agreement by exercising the cancellation clause within the contract, and seeks damages for the full contract price of all studies that were not yet started as of the date of cancellation, together with attorneys' fees and costs. In total, RCL seeks to recover $1,714,850, in addition to the $4,462,327 it has already been paid. Meredith maintains that it had a right to exercise the cancellation clause and asserts affirmative defenses, including that: (1) Meredith has complied with all of its obligations under the November contract and otherwise; (2) RCL's claims are barred by the doctrine of unclean hands; (3) RCL's claims are barred by its failure to mitigate damages, if any; (4) RCL's claims are barred by its breach of the covenant of good faith and fair dealing; and (5) RCL made fraudulent misrepresentations to induce Meredith to execute the contract, fraudulently failed to disclose material information to Meredith concerning RCL's performance, and fraudulently misrepresented the manner in which the market research studies performed by RCL could be reasonably utilized by Meredith in the operation of its business.

Meredith asserts counterclaims against RCL for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, fraudulent nondisclosure, and fraudulent misrepresentation. Meredith also has lodged a third-party complaint against Crane, RCL's owner, alleging fraudulent misrepresentation and fraudulent nondisclosure. Meredith seeks the return of the amounts it paid to RCL under the contract to compensate Meredith for its substantial losses in revenues, profits,

and investments and expenses incurred in justifiable reliance on RCL's research, as well as punitive or exemplary damages, interest, costs, and reasonable attorneys' fees.

7.      **Trial by Magistrate Judge:**

The parties have agreed to have this case assigned to United States Magistrate Judge Martinez.

8.      **List of Witnesses.**

A.      RCL and Valerie Crane intend to call the following witnesses in their respective cases in chief.    This list does not include any witness whom RCL and Dr. Crane may call as a rebuttal witness.  In addition to the following witnesses, RCL and Dr. Crane reserve the right to call in their case in chief any of the witnesses identified by Meredith in its list of trial witnesses.    Furthermore, one or more of the following witnesses may testify by deposition in lieu of live testimony.

1.      Perry Bradshaw.  RCL expects Mr. Bradshaw to testify concerning the negotiation of the contract between Meredith and RCL, including drafts thereof.   Mr. Bradshaw's testimony is expected to last one hour.

2.      Chuck Cordray.  Mr. Cordray is expected to testify concerning research studies performed by RCL for WGCL-TV, WOFL-TV in Orlando, FL, KPHO-TV in Phoenix, AZ, KCTV in Kansas City, MO and WHNS-TV in Greenville, SC.   Mr. Cordray's testimony is expected to last 1 hour.

3.      Valerie Crane.  Dr. Crane is expected to testify concerning, *inter alia*, the following subjects:  the July 21, 1998 Agreement ("Agreement") between RCL and Meredith, including without limitation the circumstances and negotiations leading up to the execution of the Agreement, the amendments to the Agreement, the work performed by RCL pursuant to the Agreement, Meredith's breach of the Agreement, the purported termination of the Agreement, the damages suffered as a result of Meredith's breach, and other matters concerning RCL's business and the marketing research industry.  Dr. Crane's testimony is expected to last 2 to 3 days.

4.      Susan Crohan. Ms. Crohan is expected to testify concerning the work conducted by RCL for Meredith and the procedures and methodology of

the types of studies conducted by RCL for Meredith, including without limitation benefits segmentation, product, promotion and positioning studies. Dr. Crohan's testimony is expected to last 2 to 3 hours.

5.      Gina Cuddy.  Ms. Cuddy is expected to testify concerning the business practices of RCL.  Ms. Cuddy's testimony is expected to last 1 hour.

6.      Kathleen Gaughan.  Ms. Gaughan is expected to testify concerning the business practice of RCL and the amounts due and owing to RCL from Meredith pursuant to the Agreement and otherwise.  Ms. Gaughan's testimony is expected to last 2 hours.

7.      Michael Grossman.  Mr. Grossman is expected to testify as an expert witness concerning the matters set forth in his expert report dated June 27, 2003.  Mr. Grossman'stestimony is expected to last 3 hours.

8.      William Kerr.  RCL expects Mr. Kerr to testify concerning the circumstances surrounding Meredith's decision to cease working with RCL.  Mr. Kerr's testimony is expected to last 1 hour.

9.      Donna Lacourse.  Ms. Lacourse is expected to testify concerning the work conducted by RCL for Meredith.  Ms. LaCourse's testimony is expected to last 1 hour.

10.     John Loughlin.  Mr. Loughlin is expected to testify concerning the negotiation and implementation of the Agreement and information concerning the performance and evaluation of services in connection thereto. Mr. Loughlin's testimony is expected to last 2 to 3 hours.

11.     Beth Rabin.  Ms. Rabin is expected to testify concerning the work conducted by RCL for Meredith. Ms. Rabin's testimony is expected to last 1 hour.

12.     Lori Rossi.  Ms. Rossi is expected to testify concerning the work conducted by RCL for Meredith. Ms. Rossi's testimony is expected to last 1 hour.

13.     Suzanne Sell.  Ms. Sell is expected to testify as an expert witness concerning the matters set forth in her expert report dated July 31, 2002. Ms. Sell's testimony is expected to last 3 to 4 hours.

14.     Allen Shaklan.  Mr. Shaklan is expected to testify concerning the research services performed by RCL for WGCL-TV, Atlanta, GA.  Mr. Shaklan's testimony is expected to last 1 hour.

15.     Linda Sherman.  Ms. Sherman is expected to testify concerning the research services performed by RCL for WHNS-TV in Greenville, SC. Ms. Sherman's testimony is expected to last 1 hour.

B.    Meredith intends to call the following witnesses during its case in chief
One or more of the following witnesses may testify by deposition in lieu of live
testimony.

1.    William Kerr
        1716 Locust Street
        Des Moines, Iowa 50309-3023

Mr. Kerr is the chief executive officer of Meredith.  He will provide background
information regarding Meredith Corporation, will describe the Meredith Broadcast
Group, his meeting with Valerie Crane relative to the RCL research proposal,
representations made by Ms. Crane during such meeting regarding RCL's work for other
media clients including Disney, and the actions taken by the company in reliance upon
Ms. Crane's representations.  He will discuss Meredith's purpose in entering into the
subject contract with RCL, the terms of the contract in general, and the actions of
Meredith in reliance upon the market research and consulting services provided by RCL.
He will address the overall performance of the Meredith Broadcast Group during the
relevant time frame to the present.  His testimony is expected to last approximately two
hours.

2.    Zorina Grant-Pelant
        c/o Jay S. Handlin, Esq.
        The Walt Disney Company
        500 South Buena Vista Street
        Burbank, California 91521

Ms. Grant-Pelant is the former director of research for Disney TeleVentures.  She will
describe her role as the contact person with RCL on behalf of Disney, the work
performed by RCL for Disney, her assessment of the quality of such work, her
skepticism concerning whether the research conclusions presented by RCL were
supported by the data collected, her discussions with Valerie Crane concerning Disney's
dissatisfaction with the work of RCL, the circumstances surrounding the execution of a
settlement agreement between Disney and RCL on October 3, 1997, and Disney's
decision to enlist the assistance of other research vendors following the termination of its
relationship with RCL. Her testimony is expected to last approximately one hour.

3.    Jerry Longarzo
        c/o Jay S. Handlin, Esq.
        The Walt Disney Company
        500 South Buena Vista Street
        Burbank, California 91521

Mr. Longarzo is the vice-president of business affairs for ABC Entertainment Television
Group and the former director of business and legal affairs for Disney TeleVentures.  He

will describe his communications with Valerie Crane regarding the work of RCL and the circumstances surrounding the execution of a settlement agreement between Disney and RCL on October 3, 1997. His testimony is expected to last approximately one-half hour.

4.    Dr. Teri Denson
      6431 Corte Campina
      Camarillo, CA 93012

Dr. Denson is an independent market research consultant. She will testify regarding her past work for Disney TeleVentures, a subsidiary of The Walt Disney Company, her review of the work performed by RCL at the request of Disney, and her assessment of the quality and utility of such work. Her testimony is expected to last approximately one-half hour.

5.    Randi Kestin
      c/o David T. Ralston, Esq.
      Foley & Lardner, LLP
      3000 K Street, N.W. Suite 500
      Washington, D.C. 20007-5143

Ms. Kestin is a former employee of RCL. She worked as a project assistant for RCL and was assigned to the Disney TeleVentures project during 1997. She personally drafted the Disney Brand report. She will describe her awareness that Disney was dissatisfied with the quality of the work performed by RCL, and communications with Valerie Crane concerning this matter, specifically. She will describe her observations regarding Valerie Crane's practice of requiring RCL employees to re-weight data variables until the data appeared to support a specific result which Ms. Crane was seeking to find. She will further describe staff meetings at RCL during which the subject of "massaging" data was discussed. Her testimony is expected to last approximately one-half hour.

6.    Al Bova
      c/o James G. Sawtelle, Esq.
      Duncan Green Brown Langeness & Eckley, P.C.
      400 Locust Street, Suite 380
      Des Moines, Iowa 50309

Mr. Bova is the former general manager of Meredith station WFSB in Hartford, Connecticut. He will describe his observations of the market research and consulting services performed for station WFSB by RCL. He will discuss changes made by WFSB to its business operations in reliance upon the accuracy of the research presented by RCL, as well as the role of Ms. Crane in recommending the station to make such changes. He may also describe the performance of the station as a result of its reliance upon the work of RCL. His testimony is expected to last approximately one hour.

7.    Kevin O'Brien
      1716 Locust Street

Des Moines, Iowa 50309-3023

Mr. O'Brien is the president of the Meredith Broadcast Group. He will describe the nature of the research services provided by RCL to Meredith, the implementation of business decisions by Meredith based on the reliability of the information and conclusions presented by RCL, the utility of such services to Meredith, the performance of the various television stations within the Meredith Broadcast Group that relied upon the accuracy of the RCL research, and the measures undertaken by Meredith to address those issues arising from its relationship with RCL relating to the performance of its television stations. His testimony is expected to last approximately two hours.

8.  Kirk Black
    KCTV
    4500 Shawnee Mission Parkway
    Fairway, KS 66205

Mr. Black is the general manager of Meredith station KCTV in Fairway, Kansas, and the former general manager of Meredith station WNEM in Flint/Saginaw, Michigan. He will describe his observations of the market research and consulting services performed for stations WNEM and KCTV by RCL. He will discuss changes made by WNEM and KCTV to the stations' business operations in reliance upon the accuracy of the research presented by RCL, the as well as the role of Ms. Crane in recommending that the stations make such changes. He may also describe the performance of the station as a result of its reliance upon the work of RCL. His testimony is expected to last approximately one hour.

9.  Sue Schwartz
    WGCL
    425-14th Street, N.W.
    Atlanta, GA 30318

Ms. Schwartz is the general manager of Meredith station WGCL in Atlanta, Georgia. She will describe the role of the RCL research in the decision by WGCL to change its call letters from WGNX and to adopt a brand position referred to as "Clear News: News that Clearly Matters." Her testimony is expected to last approximately one hour.

10.  Dr. Bonita Soley
     c/o David T. Ralston, Esq.
     Foley & Lardner, LLP
     3000 K Street, N.W. Suite 500
     Washington, D.C. 20007-5143

Dr. Soley is a former employee of RCL. She was the project manager assigned to the RCL Benefits Segmentation study performed for Meredith's Atlanta station in April 1999. She will describe improprieties that took place within RCL during the performance of that study at the direction of Ms. Crane, so as to create results that were

misleading and ultimately damaging to Meredith. Her testimony is expected to last approximately one and one-half hours.

11.  Wayne Cunningham
     c/o Elizabeth G. Kennedy, Esq.
     Ahlers & Cooney, P.C.
     100 Court Avenue, Suite 600
     Des Moines, Iowa 50309

Mr. Cunningham is a former employee of RCL. He was the vice president of operations for RCL and will describe his observations of the research practices in place at RCL during the time of his employment. His testimony is expected to last approximately one-half hour.

12.  Richard B. Haynes
     Frank N. Magid Associates, Inc.
     One Research Center
     Marion, Iowa 52302

Mr. Haynes is employed by the firm of Frank N. Magid Associates, which has been engaged by Meredith for the purpose of providing research services at television stations within the Meredith Broadcasting Group where similar work was previously performed by RCL. He will describe the nature of the research services provided by RCL to Meredith Corporation, the implementation of business decisions by Meredith Corporation based on the reliability of the information and conclusions presented by RCL, the utility of such research services to Meredith Corporation, the performance of the various television stations within the Meredith Broadcasting Group that relied upon the validity of the RCL research services, and the measures undertaken by Meredith Corporation to address those issues arising from its relationship with RCL relating to the performance of its television broadcast stations. His testimony is expected to last approximately one hour.

13.  Dr. A. Dwayne Ball
     University of Nebraska Department of Marketing
     324 CBA
     Lincoln, Nebraska 68588-0492

Dr. Ball is a professor of market research at the University of Nebraska, Lincoln. He has been retained as an expert witness on behalf of Meredith and is expected to testify concerning the matters set forth in his Rule 26 report, as amended. His testimony is expected to last approximately two hours.

14.  John Zieser
     1716 Locust Street
     Des Moines, Iowa 50309-3023

Mr. Zieser is the general counsel and secretary of Meredith Corporation. He will describe his communications with Ms. Crane surrounding the termination of the relationship between Meredith and RCL. He will further discuss Meredith's actions in furtherance of satisfying it obligations under the parties' contract. His testimony is expected to last approximately one hour.

15.    Doug Lowe
        1716 Locust Street
        Des Moines, Iowa 50309-3023

Mr. Lowe is the executive vice president of the Meredith Broadcast Group. He will discuss the invoices received by Meredith from RCL in connection with work performed under the subject contract, amounts paid by Meredith to RCL in satisfaction of such invoices, investments made by Meredith in reliance upon the validity of the information and conclusions presented by RCL, the performance of the various stations within the Meredith Broadcast Group that relied upon the accuracy of the RCL research services, and the measures undertaken and additional expenses incurred by Meredith to address those issues arising from its relationship with RCL relating to the performance of those stations. His testimony is expected to last approximately two hours.

16.    Perry Bradshaw
        1716 Locust Street
        Des Moines, Iowa 50309-3023

Mr. Bradshaw is an assistant general counsel with Meredith Corporation. He will describe his communications with Ms. Crane leading up to and surrounding the subject contract. His testimony is expected to last approximately one hour.

17.    In addition to the foregoing witnesses, Meredith reserves the right to call the following witnesses:

a.    Any witness identified by RCL or Ms. Crane in their list of trial witnesses;
b.    Any witness necessary for impeachment or rebuttal purposes;
c.    Any witness necessary to lay the foundation for the admission of an exhibit; and
d.    Any witness necessary to respond to unexpected or unanticipated testimony.

## 9.    Exhibits

See attachments hereto.

## 10.    Proposed Voir Dire Questions and Jury Instructions

A.    Voir Dire Questions

1.    RCL requests that the following questions be asked to each potential juror.

1.      Do you or anyone close to you know any person who is or was employed by Meredith Corporation or WFSB-TV Hartford/New Haven?

2.      Do you or does your employer conduct any business with Meredith Corporation or WFSB-TV Hartford/New Haven?

3.      Do you or anyone in your family own stock in Meredith Corporation?

4.      Do you or anyone in your family subscribe to *Better Homes & Gardens* or *Ladies Home Journal* magazines?

5.      Has anyone in your family been a party to any lawsuit?

6.      To what extent do you have any experience in the negotiation of a contract?  In what context have you had such experience?

7.      Do you watch local news and what is your favorite station?

8.      What is your educational background?

9.      Have you ever owned a business?

10.     Do you have any experience in statistics?


2.      Meredith requests that the following questions be asked to each potential juror.

1.      Do you know of Valerie Crane or her company, Research Communications, Ltd.?

2.      Have you ever known anyone employed by Research Communications, Ltd.?

3.      Have you ever had any experience with market research?  Do you know of anyone who has had experience with market research?

4.      Have you ever used market research in a professional setting or otherwise?  For what purpose?

5.      Have you ever responded to a market survey, either by telephone, in person, or a written survey?

6.      Have you ever participated in a focus group?

7.      Have you ever been employed in a service industry or profession?

8.      Have you ever been employed in a capacity where you had responsibility for billing and collection of invoices?

9.      Have you ever been employed in a capacity where you had responsibility for payment of invoices?

10.     Have you ever worked for a small business?

11.     Have you ever worked for a large organization?

12.     Have you ever worked in the television industry?  Are you acquainted with anyone who has worked in the television industry?

13.     Have you ever had experience with television ratings?  Are you acquainted with anyone who has had experience with television ratings?

14.     Do you watch local news?  Do you watch local channel 3 – station WFSB-TV (Hartford/New Haven)?  Do you watch local news on WFSB-TV?  How long have you done so?

15.     Have you ever known anyone employed by The Walt Disney Company?

B.      <u>Proposed Jury Instructions</u>

By agreement, and with the approval of the Court, the parties will submit their respective proposed jury instructions ten (10) days in advance of trial.

RESEARCH COMM§UNICATIONS, LTD.
and VALERIE CRANE

By their attorneys,


_____
Joseph C. Tanski   Ct. 22211
David B. Mack   Ct. 23151
Nixon Peabody LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 345-1000

MEREDITH CORPORATION,

By its attorneys,


_____
Robert M. Callagy 24386
Satterlee, Stephens, Burke & Burke, LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200


and


_____
James G. Sawtelle 22864
Duncan Green Brown Langeness & Eckley
600 Seventeenth Street
Suite 2800 South
Denver, CO 80202-5202
(303) 634-2280

**EXHIBIT LIST – PLAINTIFF RESEARCH COMMUNICATIONS LTD AND THIRD-PARTY DEFENDANT VALERIE CRANE**[2]

| Exhibit | Reference |
|---|---|
| 1/8/98 letter Crane to Loughlin with draft contract | MC 16802 |
| 3/398 fax from Betsy King (Meredith) to Crane with letter from Bradshaw to Crane and draft contract | 01348-51 |
| 3/3/98 memorandum from Crane to Loughlin | MC 16227-30 |
| 4/24/98 memorandum Bradshaw to Loughlin with draft contract | 01296-99, 1303-04 |
| July 21, 1998 contract | MC 15839-42 |
| May 1999 revised Exhibit A to contract | MC 0826 |
| 7/30/00 email Crane to Jones with revised Exhibit A | 0437-48 |
| 8/7/00 fax from Gina Cuddy (RCL) to Jones with revised Exhibit A | MC 0514-15 |
| 11/1/99 Meredith Corporation list of studies | MC 0371 |
| 12/14/99 memo Schill to Meredith business managers regarding FY'01 RCL budget | MC 0328-29 |
| 7/10/00 email Zehr to Black et al re: Valerie Crane | MC 0436 |
| 7/10/00 email Bova to Zehr | MC 0393 |
| 6/4/99 email Loughlin to Kerr with email from Tompkins to Loughlin | 00018-21 |
| 1/18/99 Griffin to Crane | 00011 |
| 10/4/00 email Tompkins to Crane | 00012 |
| 5/21/99 email Black to Loughlin | 00038 |
| 8/28/98 email Sams to Crane | 00004 |

---

[2]    RCL and Dr. Crane reserve the right to introduce summaries pursuant to Fed. R. Evid. 1006.  RCL and Dr. Crane reserve their right to withdraw any of the documents listed herein and to raise objections to the admissibility or use of any document.

| | |
|---|---|
| 5/18/99 email Sams to Crane | 00028 |
| 6/29/00 email Sams to Crane | 00032 |
| 6/19/00 email Higgins to Crane | 00027 |
| 10/26/99 email Rose to Crane | 00038 |
| 1/21/99 email D. North to Crane | 00016 |
| 7/21/99 email P. North to Crane | 00003 |
| 7/30/00 email Mathis to Crane | 00031 |
| 4/7/99 email Haehl to Crane | 00001 |
| 4/12/99 letter Zehr to Crane | MC 0017 |
| Meredith Broadcasting Group power point presentation to Board of Directors, Jan. 2000 | Loughlin Dep. Ex. 19 |
| Loughlin calendar for period December 1997 through May 1999 | MC 35234-81 |
| 10/18/99 email Crane to Loughlin | MC 0031 |
| 12/16/99 email Cluxton to Zehr with handwritten notes | MC 0024-26 |
| November 1998 contract | MC 20084-87 |
| 7/19/00 schedule of studies with notes | MC 0184 |
| 4/1/99 email Rose to Crane | MC 16010 |
| 10/4/99 email L. Polowczuk to Loughlin | MC 20125-26 |
| 10/6/99 email Loughlin with 10/9/99 email D. Johnson to Loughlin | MC 20127-28 |
| Progress Reports on Meredith Station Projects, Sept. 2000 | 01227-46 |
| 8/9/00 letter Crane to P. North | MC 0014 |
| 2/10/00 emails Schill to Wallace and Wallace to Schill | MC 0020 |
| All reports of research conducted by RCL for the Meredith stations | See Tab 1 |
| Invoices relating to unpaid travel expenses of Rich Sabreen | MC 0250-54 |

| | |
|---|---|
| Invoices relating to unpaid travel expenses of Bill Howe | MC 0255-58 |
| Invoices relating to unpaid travel expenses of Bill Howe | MC 0259-62 |
| Invoices relating to unpaid travel expenses of Valerie Crane | 43541-46 |
| Invoices relating to costs incurred on Project 251, Lifestyles, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab 2 |
| Invoices relating to costs incurred on Project 252, WFSB Promotion Study, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab 2 |
| Invoices relating to costs incurred on Project 253, WHNS Product Study, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab 2 |
| Invoices relating to costs incurred on Project 254, KVVU Product Study, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab  2 |
| Invoices relating to costs incurred on Project 256, KPHO Promotion Study, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab 2 |
| Invoices relating to costs incurred on Project 260, WGCL Product Study, as itemized in Tab 2 hereto | See Bates Numbers referenced in Tab 2 |
| Invoices for Project 114, KPHO Focus Groups | 05302-03 |
| Contract for KPHO Focus Groups | 05299-300 |
| Invoice on Project 251 | 00609 |
| Invoice on Project 252 | 00605 |
| Invoice on Project 253 | 00571 |
| Invoice on Project 254 | 00709 |
| Invoice on Project 256 | 00609 |
| Invoice on Project 260 | 00521 |
| Invoice for replacing Tom Simon with Bill Howe at KPDX feedback, October 2000 | 43547-48 |
| Public records and other public statements of Meredith Corporation and/or its officers, directors and agents. | |

| | |
|---|---|
| Documents relating to costs relating to work performed for Meredith stations, including without limitation recruiter invoices, supervisor invoices, telephone numbers, telephone bills, interviewer invoices, interview supervisor, survey house, participant fees, test site consultants, facilities rentals and other out-of-pocket expenses | Various[3] |

---

[3]    RCL will provide additional information concerning these documents as soon as possible.

## EXHIBIT LIST – DEFENDANT AND THIRD-PARTY PLAINTIFF MEREDITH CORPORATION

September 29, 1997 correspondence from Jerry Longarzo to Valerie Crane

October 3, 1997 Settlement Agreement between RCL and Disney

December 24, 1997 correspondence from Valerie Crane to John Loughlin

1998 RCL Corporate Profile

January 7, 1998 draft contract between RCL and Meredith

January 8, 1998 correspondence from Valerie Crane to John Loughlin with enclosed proposed contract with Meredith and description of services

March 3, 1998 correspondence from Perry Bradshaw to Valerie Crane with changes to proposed contract with Meredith

March 3, 1998 memo from Valerie Crane to John Loughlin

March 1998 *Selected Readings on Branding* prepared by RCL

April 24, 1998 memo from Perry Bradshaw to John Louhglin with enclosed proposed contract between RCL and Meredith

June 24, 1998 memo from Wayne Cunningham to various Meredith employees

June 24, 1998 memo from Wayne Cunningham to various Meredith employees

July 21, 1998 contract between RCL and Meredith

August 28, 1998 memo from Valerie Crane to John Loughlin

September 11, 1998 Status Report on Research prepared by RCL for Meredith Broadcast Group

September 22, 1998 memorandum from Rob Cluxton to John Loughlin with attached revised contract

November 17, 1998 contract between Meredith and RCL

November 17, 1998 Meredith office calendar for John Loughlin

March 1999 *Newsletter for Executives in the Media Industry* prepared by RCL

May 5, 1999 correspondence from Valerie Crane to John Loughlin

June 1999 – July 1999 e-mail between Valerie Crane and Larry Emsweller

August 9, 1999 e-mail from Valerie Crane to John Loughlin

August 10, 1999 e-mail from Valerie Crane to John Loughlin

August 10, 1999 e-mail from Valerie Crane to John Loughlin

August 11, 1999 e-mail from Valerie Crane to John Loughlin

September 9, 1999 fax from Rob Cluxton to Meredith

October 8, 1999 memo from Susan Crohan to John Loughlin

October 18, 1999 e-mail from Valerie Crane to John Loughlin

December 16, 1999 memo from Rob Cluxton to Meredith with attached check made payable to RCL

January 10, 2000 Memo from Valerie Crane to John Loughlin

January 17, 2000 memo from John Loughlin to Meredith employees

June 19, 2000 memo from Valerie Crane to Cary Jones

June 19, 2000 proposed contract between RCL and Meredith executed by Valerie Crane

(Various Dates from March 1998 – July 2000) RCL invoices submitted to and paid by Meredith

March 25-26, 1999 WGNX Branding Effort Workshop II. Brand Relevance: Identifying Your Target Audience

April 1999 WGNX Branding Effort Workshop I. Brand Definition and Brand Vision

April 1999 Benefits Segmentation Study of the Atlanta Local News Audience prepared by RCL (Volume I. Executive Summary)

April 1999 Benefits Segmentation Study of the Atlanta Local News Audience prepared by RCL (Volume II. Technical Report)

June 1999 Brand Positioning Study for Atlanta Television Stations and Local News (Volume I. Executive Summary)

June 1999 Brand Positioning Study for Atlanta Television Stations and Local News (Volume II. Technical Report)

June 1999 WGNX Branding Effort Workshop III. Brand Positioning

June 1999 WGNX Branding Effort Workshop IV. Brand Experience

July 1999 An Assessment of Potential Anchors for WGNX.  Executive Summary.

August 1999 CBS Atlanta Branding Effort Workshop V. Brand Action Plan

September 21, 1999 e-mail from RCL to Meredith Station WGNX

October 1999 An Assessment of CBS Atlanta's Potential Promotional Concepts

October 1999 Notes from CBS Atlanta Promotional Concepts Workshop

November 4, 1999 report entitled "In Search of Identity: WGNX-TV Finds a Brand"

March 2000 An Assessment of the 11 PM Local News in the Atlanta DMA

March 2000 An Assessment of the Late Evening Local News in the Atlanta DMA

March 2000 An Assessment of the Late Evening Local News in the Atlanta DMA (Talent Assessment)

April 2000 An Assessment of CBS Atlanta's (WGCL) Clear TV Promotional Campaign

July 2000 WGCL TV Clear News Brand Book and Style Manual

WSMV Benefits Segmentation Study Planning Session prepared by RCL

WSMV Branding Model prepared by RCL

KCTV Benefits Segmentation Study (Volume I. Executive Summary)

KCTV Branding Report prepared by RCL

KCTV Branding Model prepared by RCL

KPHO Brand Action Plan prepared by RCL

KPHO Brand Model prepared by RCL

WOFL Brand Action Plan prepared by RCL

WOFL Branding Model prepared by RCL

WNEM Benefits Segmentation Study (Volume I. Executive Summary)

WNEM Branding Model prepared by RCL

WFSB Benefits Segmentation Study (Volume I. Executive Summary)

WFSB-3 Brand Action Plan prepared by RCL

(WFSB) Channel-3 Branding Model prepared by RCL

(WHNS) FOX 21 Brand Action Plan prepared by RCL

(WHNS) FOX 21 Branding Model prepared by RCL

November 26, 2001 RCL's Answer to Interrogatory No. 14

September 18, 2000 correspondence from Tanski to Hockenberg

September 21, 2000 correspondence from Stetson to Tanski

September 28, 2000 correspondence from Tanski to Stetson with enclosed Progress Report on Meredith Stations Projects prepared by RCL

October 6, 2002 correspondence from Stetson to Tanski

October 20, 2000 correspondence from Stetson to Tanksi

November 1, 2000 correspondence from Tanski to Stetson

February 14, 2001 Valerie Crane Affidavit

June 5, 2001 RCL's Initial Disclosure Statement

November 26, 2001 RCL's Answers to Interrogatories Nos. 15 and 16

May 29, 2002 RCL's Supplemental Disclosure Statement

June 4, 2002 RCL's Answers to First Request for Admissions

June 10, 2002 RCL Revised and Substituted Responses to Requests for Admission

July 30, 2002 RCL Supplement to its Revised and Substituted Responses to Requests for Admissions

July 30, 2002 RCL Damages Analysis

March 20, 2002 Supplemental Affidavit of Valerie Crane

RCL's personnel file for Dr. Bonita Soley

February 4, 2002 Contract between Primedia and RCL

Curriculum Vita of Dr. A. Dwayne Ball

RCL Handbook

Spreadsheet detailing expenditure and investment decisions by station, with breakdown of WGCL investment dollars

Spreadsheet detailing financial performance by station for FY 1998-2000

In addition to the foregoing exhibits, Meredith reserves the right to offer any of the following materials as evidence at trial:

A.    Any exhibit identified by another party;
B.    Any exhibit necessary for rebuttal or impeachment purposes; and
C.    Summary exhibits pursuant to Federal Rule of Civil Procedure 1006