UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**FILED**

2004 MAY -3  A 11: 15

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>  Plaintiff and )<br>  Counterclaim Defendant, )<br>v. )<br> )<br>MEREDITH CORPORATION, )<br>  Defendant and )<br>  Counterclaim Plaintiff, )<br>  and )<br> )<br>MEREDITH CORPORATION, )<br>  Third-Party Plaintiff, )<br>v. )<br> )<br>VALERIE CRANE, )<br>  Third-Party Defendant. ) | CASE NO 3:00CV2179-DFM |

## MEMORANDUM IN SUPPORT OF RESEARCH COMMUNICATION LTD.'S AND VALERIE CRANE'S EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO EXIT INTERVIEWS CONDUCTED OF FORMER MEREDITH EMPLOYEES INVOLVED IN THE RCL RESEARCH

Plaintiff Research Communications, Ltd. and Third-Party Defendant Valerie Crane (collectively, "RCL") submit this memorandum in support of their motion to compel production of documents relating to exit interviews conducted of former Meredith Corporation ("Meredith") employees who worked at Meredith's television stations during the period RCL provided research services to Meredith. There are at least fifty (50) such former employees of Meredith. Meredith has produced one exit interview, contending that all others are irrelevant to any claim or defense in this matter. As explained below, RCL has reason to believe that the subjects covered in the exit interviews go to the heart of Meredith's defenses, counterclaims and third-party claims in this matter. Accordingly, Meredith should be ordered to produce such documents so that RCL and Ms. Crane may properly prepare for the June 7, 2004 trial of this matter. In support of their motion RCL and Ms. Crane rely upon the Affidavit of David B. Mack ("Mack Aff.") filed herewith.

BOS1377884.1

## Background

RCL brought this action seeking damages on account of Meredith's wrongful termination of an Agreement pursuant to which RCL performed research studies and related services for ten Meredith television stations. The Agreement provided that RCL would conduct the research studies set forth in Exhibit A to the Agreement. In October 2000, Meredith purported to terminate the Agreement notwithstanding that a number of the research studies set forth in Exhibit A to the Agreement had not been conducted.

RCL commenced suit in November 2000 seeking, *inter alia,* recovery of amounts due under the Agreement. In December 2000, Meredith filed an answer and counterclaims. On October 11, 2001, Meredith filed an amended answer with counterclaims and third-party complaint. The October 2001 claims added certain claims against RCL and included a third-party complaint against RCL's President, Valerie Crane.[1] In late June 2002, Meredith amended its October 2001 claims. A copy of Meredith's June 2002 amended answer with counterclaims and third-party complaint ("Counterclaims") is attached hereto as Exhibit A.

## Meredith's Allegations and Alleged Damages[2]

Meredith's counterclaims, in part, relate to the validity of RCL's research. Specifically, Meredith alleges:

> RCL and Crane . . . employed a number of practices which were professionally and/or ethically unsound. These practices included, but were not limited to:
>
> (a)  Crane's practice of hiring personnel who were not qualified and/or had little or no experience to competently perform research.
>
> (b)  Crane's directives to her subordinates to remove variables from samples to produce desired outcomes.

---

[1] Meredith also dropped a "civil conspiracy" claim it had alleged against RCL.

[2] Meredith's third-party claims against Dr. Crane arise out of the same alleged facts as do its counterclaims against RCL. The third-party claims therefore are not addressed separately herein. Arguments relating to Meredith's counterclaims apply equally to Meredith's third-party claims against Dr. Crane.

    (c)    Crane's establishment of research "target levels," ostensibly to measure quality of performance.

    (d)    Crane's process of selecting focus group respondents which did not achieve an appropriate random sample for the group that the client was targeting for research. Crane's tactics include hiring respondents who could not speak English, "stacking" focus groups with respondents who were friends, family members, and referrals of RCL employees, and hiring focus group respondents who, because of their age and/or limited education, did not represent an adequate pool for research purposes.

    (e)    Crane's objective to "get bodies in the chairs" as quickly and inexpensively as possible, without regard for whether the sampling group met the professional standards of the research represented to Meredith.

    (f)    Crane's desire for chronic and severe turnover of researchers at RCL (in order to reduce costs of RCL's profit sharing plan), which resulted in further flaws in research methodology.

    (g)    Crane's practice of withholding underlying data and information from clients raising questions about research results and/or clients seeking to verify that the research work performed met specifications of the research assignment or basic professional standards.

Counterclaims, ¶23.

Meredith also alleges that "RCL and Crane intentionally manipulated data . . . to achieve preconceived results that Crane desired to report to Meredith," Counterclaims, ¶33, and that "it was standard RCL practice for superiors at RCL and/or Crane directly to instruct project managers or researchers to rewrite research reports and otherwise tamper with the data in the event . . . Crane did not like the conclusions . . . or Crane wanted to manipulate the results to achieve her desired conclusions." Id., ¶34.

Meredith alleges that it reasonably relied upon RCL's research "to make decisions about investments and expenditures by Meredith in regard to news and other programming, marketing campaigns, branding, advertising, and talent." Counterclaims, ¶41. In addition, Meredith claims that "while the Meredith Broadcast Group was relying on RCL's research, conclusions and advice, the Meredith Broadcast Group experienced substantial losses in revenues and profits,

and declining ratings." Counterclaims, ¶42. Meredith seeks the return of the monies it paid to RCL for the research on the basis that the research was flawed.

## Argument

Thus, Meredith, in defense to RCL's breach of contract claim and in support of its counterclaims and third party claims, intends to show at trial that RCL is somehow responsible for alleged declines in Meredith's television stations' performance. In an effort to obtain documents which will refute Meredith's claims, RCL requested all documents from Meredith concerning the performance of the stations, including <u>without limitation</u> ratings documents. <u>See</u> Request No. 1 to RCL's Second Request for Production of Documents (Mack Aff., Ex. B); <u>see</u> <u>also</u> Request No. 22 to RCL's Second Request for Production of Documents (seeking documents that support or pertain to the allegations in the Counterclaims or the Third Party Complaint) (<u>Id</u>.); Request Nos. 9-18 to RCL's First Request for Production of Documents (seeking documents pertaining to services performed by RCL for each of the stations) (Mack Aff., Ex. C).

Upon learning that at least one individual involved in RCL's research at one of Meredith's stations took part in an exit interview in which he commented on RCL's work, RCL requested in February 2004 that Meredith produce exit interviews for any former Meredith employees to the extent such interviews pertain to Meredith's claims and defenses in this action. <u>See</u> Mack Aff., Ex. D. As RCL explained in a letter between counsel dated April 20, 2004 (<u>see</u> Mack Aff. Ex. G), relevant documents include not only exit interviews referencing (directly or indirectly) RCL, Ms. Crane or the research, but also exit interviews in which a station's poor performance is attributed to someone or something other than RCL or the RCL research. Such documents would refute Meredith's allegations that RCL is responsible for a station's performance. Meredith has refused to produce any additional exit interviews, contending that no other exit interview is relevant.

Meredith has alleged substantial claims against RCL in which it blames RCL's allegedly flawed research for the stations' alleged ratings declines and expenditures and investments of approximately $58,000,000. See Meredith Answers to RCL's Fourth Set of Interrogatories, Nos. 23 and 24 (Mack Aff., Ex. I). RCL denies that there was anything wrong with the research. Because Meredith intends to prove otherwise and to hold RCL responsible for the alleged decline in the stations' performance, RCL is entitled to all documents in which the stations' performance is discussed. RCL has reason to believe that the exit interviews will provide information relevant to Meredith's claims and defenses in this matter. The subjects covered by the exit interviews include "Supervision/Work Team," "Compensation/Benefits," and "Company/Working Conditions." As an example, with respect to the one exit interview Meredith has produced, the employee wrote a four page memorandum in which he outlined a number of concerns relating to the Meredith station for which he worked, including the working environment, poor station management and decisions of the station managers inconsistent with campaign initiatives developed by the station as a whole in connection with the RCL research.[3]

Thus, RCL's request that Meredith produce the exit interviews is reasonably calculated to lead to the discovery of admissible evidence in that the exit interviews may contain statements directly relating to RCL or statements admissible to prove that a station's allegedly poor performance is not attributable to the services provided by RCL or Ms. Crane, but rather to external and internal causes entirely unrelated to RCL's research. For example, an exit interview may reveal information concerning the decision of station management with regard to on-air talent, promotional spending by the station, station resources, the working environment at the station, failure to execute on alleged changes to newscasts, programming and other matters pertaining to the operations of the stations, with respect to which RCL played no role whatsoever.

---

[3]   Under the terms of the Confidentiality Order, RCL is prohibited from including herewith a copy of the exit interview. RCL is of course willing to make the document available for *in camera* inspection.

RCL is entitled to be prepared to defend against Meredith's efforts to pin RCL with the blame for all that has allegedly gone wrong at the Meredith stations since 2000, when Meredith prematurely cut off the research RCL had started. Meredith would not suffer any prejudice if it were compelled to produce the documents. Meredith has already located the exit interviews and reviewed them. To the extent Meredith is concerned about the confidentiality of such documents, they may be produced subject to the confidentiality order entered by the Court or, in the alternative, reviewed *in camera*.

For the foregoing reasons, RCL requests that its motion be allowed and that the Court order Meredith to produce any and all exit interviews and related documents prepared in connection with the departure of the employees listed in Exhibit F to the Mack Affidavit filed herewith.

Dated:    April 30, 2004

RESEARCH COMMUNICATIONS, LTD.

By its Attorneys,

*/s/ Joseph C. Tanski*

Joseph C. Tanski    Ct. 22211
David B. Mack    Ct. 23151
NIXON PEABODY, LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000

Charles W. Pieterse    Ct. 01577
WHITMAN, BREED, ABBOTT & MORGAN
100 Field Point Road
P.O. Box 2250
Greenwich, CT 06836
(203) 869-3800

## CERTIFICATE OF SERVICE

I, David B. Mack, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party as follows :

James G. Sawtelle, Esq.
Duncan, Green, Brown,
  Langeness & Eckley
600 Seventeenth Street
Suite 2800 South
Denver, Colorado 80202-5402

Robert M. Callagy, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

by first class mail on April 30, 2004.

*/s/ David B. Mack*

David B. Mack

BOS1377884.1    7