UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., ) | |
| ) | |
|     Plaintiff/Counterclaim-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| MEREDITH CORPORATION, ) | |
| ) | |
|     Defendant/Counterclaim-Plaintiff, ) | |
| ) | CASE NO.:  3:00CV2179-AVC |
| ) | |
| ) | |
| MEREDITH CORPORATION, ) | |
| ) | |
| v. ) | |
| ) | |
| VALERIE CRANE, ) | |
| ) | |
|     Third-Party Defendant. ) | MAY 7, 2004 |

**MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF
<u>SUZANNE SELL AND MICHAEL A. GROSSMAN</u>**

    Meredith Corporation ("Meredith"), defendant in the above-captioned action, moves in limine to exclude Suzanne Sell and Michael A. Grossman, experts identified by plaintiff Research Communications, Ltd. and third-party defendant Valerie Crane (collectively, "RCL"). Exclusion of RCL's experts is warranted by RCL's admitted failure to preserve and produce an internal handbook ("the Handbook"), which contained detailed guidance concerning RCL's research procedures critical to Meredith's ability to examine those experts. It is undisputed that the handbook was made available by RCL to both of its experts, and at least one of RCL's experts relied upon the Handbook in forming his opinions.

**ORAL ARGUMENT NOT REQUESTED
TESTIMONY NOT REQUIRED**

Meredith's renewed motion to compel production of the Handbook, which Meredith has demanded since September 2001, is currently pending before the Court. RCL previously represented to the Court in its response to Meredith's original motion to compel that the subject Handbook would be produced. Affidavit of Robert Callagy, sworn to October 14, 2003, annexed to Meredith's renewed motion to compel ("Callagy Aff."), Exhib. C ("[T]he issues raised in Meredith's motion have been resolved or will be resolved without the need of Court intervention.").

Only limited excerpts of the Handbook were ever produced, and, on November 4, 2003, RCL responded to Meredith's Renewed Motion to Compel by stating that the document could not be produced as it existed at the time, because the "Handbook is maintained electronically and has been changed dozens of times since RCL last worked for Meredith." Opposition at 6. Thus, RCL effectively admitted to having violated this Court's February 7, 2001 document preservation order, attached as Exhibit A to the Affidavit of Benjamin Means, sworn to May 6 2004 ("Means Aff.") and filed herewith. The Order directed preservation of all relevant documents, specifically including "electronic files." Id.

Moreover, RCL has made the Handbook available to its expert witnesses for consideration in connection with forming their opinions. One of RCL's two experts, Mr. Michael Grossman, actually relied upon and cited to portions of the Handbook in support of his conclusions.

Meredith respectfully submits that because RCL has conceded that it is unable to comply with any order compelling production of the Handbook as it existed during the relevant time period, and because it is clear that RCL has exhibited a reckless disregard for its discovery obligations as well as the orders of this Court – to the prejudice of Meredith's ability to defend itself in this action – exclusion of RCL's experts is the appropriate remedy.

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

In addition, testimony of Michael Grossman must also be excluded for the reason that Mr. Grossman relied upon certain documents related to data analysis which had never been produced to Meredith – despite Meredith's specific requests for them – to criticize work conducted by RCL's own former project manager, Dr. Bonita Soley. Dr. Grossman's conclusions regarding Dr. Soley's work can not be effectively challenged, to Meredith's severe prejudice, because Dr. Soley was deposed in June 2002, more than a year before Dr. Grossman, and she is not within the subpoena power of the Court. In short, RCL's failure to produce documents in a timely fashion (they were finally produced in electronic format as requested in March, 2004, Means Aff. Exhibs. D-E) means that Mr. Grossman's aspersions of Dr. Soley's work cannot be contested by Dr. Soley. A jury might well rely upon that fact to discredit Dr. Soley's testimony, severely prejudicing Meredith's ability to defend itself in this litigation.

## ARGUMENT[1]

### A. MEREDITH WAS ENTITLED TO PRODUCTION OF THE HANDBOOK

Federal Rule of Civil Procedure 26(b) states that the proper scope of discovery is broad and that it includes "any matter, not privileged, that is relevant to the claim or defense of any party." Further, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). In its scope, Rule 26 embodies long standing case law recognizing the importance of affording parties an opportunity to fully examine matters that might bear upon an action. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (construing relevance broadly to encompass any matter that bears on, or could reasonably lead to other matters that could bear on, any issue that is or may be in the case); see also Boutvis v. Risk Management Alternatives, Inc., 2002 WL 971666,

---

[1] For a full recitation of Meredith's efforts to obtain the Handbook, and RCL's refusals to produce it, the Court is referred to Meredith's pending renewed motion to compel production of the Handbook dated October 15, 2003.

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

*1, No. Civ. 301CV1933 (DJS) (D. Conn. May 3, 2002) ("In the Second Circuit, '[t]his obviously broad rule is liberally construed.'") (quoting David Steele Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)). In addition to RCL's Rule 26 disclosure obligations, Meredith specifically requested in discovery "[a]ll . . . *manuals* . . . employed by RCL to constrain or instruct anyone performing data analysis . . . ." Callagy Aff. ¶ 2, Exhib. A.

The Handbook was called for by Meredith's Request for Documents, and its importance was confirmed by RCL's employee, Dr. Bonita Soley, a former RCL researcher who worked on Meredith projects. Dr. Soley testified during her June 27, 2002 deposition that she relied heavily upon the Handbook. See Callagy Aff. ¶ 10, Exhib. K. In response to the question from RCL's counsel, "did you receive any training at RCL in the use of cluster analysis?" Dr. Soley testified: "Well, RCL had their own set guidelines for settings, you know, that they wanted for the cluster analysis, which was in the manual, so you just followed those." Callagy Aff. ¶ 10, Exhib. K, at 36. Answering an additional question posed by counsel for RCL concerning on-the-job training, Dr. Soley testified: "I relied on the manual." Callagy Aff. ¶ 10, Exhib. K, at 52.

Moreover, third-party defendant Valerie Crane, the owner of RCL, acknowledged that the Handbook was a document Dr. Soley might have referred to, because it "sets out . . . what the different procedures are for studies and protocols that you follow . . . ." Callagy Aff. ¶ 10, Exhib. L. Indeed, in an April 25, 2002 memorandum to Suzanne Sell, Ms. Crane, stated, "If in your efforts you want to . . . examine our RCL Handbook which stipulates steps in the research process, we will make that available to you." Means Aff., Exhib. B, at 2. Accordingly, because the quality of RCL's analyses is relevant to all of the claims and defenses in this case, it is plain that the Handbook itself is both highly relevant and reasonably calculated to lead to the discovery of admissible evidence. See, e.g., Boutvis, 2002 WL 971666, at *2 (granting motion to compel and

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

holding that "plaintiff is entitled to discover the requested information, since it will enable him to test the truth of [defendant's] representations.").

Separately, RCL was obligated to produce the Handbook, because it provided at least a portion of the Handbook to at least one of its experts, Dr. Michael A. Grossman, who then opined on RCL's data analysis. Callagy Aff. ¶ 5, Exhib. N. Meredith had requested, and was entitled to under Federal Rule of Civil Procedure 26(a)(2)(B), all materials furnished to such experts. Without those materials, which RCL concedes no longer exist, Meredith's ability to test the conclusions of RCL's experts will be substantially prejudiced.

RCL's counsel's assertion that disclosure is not required, pursuant to Meredith's requests for expert discovery, because "neither of RCL's experts *relied* upon the complete RCL handbook" is without merit. Callagy Aff. ¶ 11, Exhib. M (emphasis added). The Federal Rules require production of all material *considered* by a testifying expert. See Fed. R. Civ. Pro. 26(a)(2)(B) (stating that written report must contain "the data or other information considered"). The advisory committee notes make plain that "considered" is not the same thing as "relied upon," stating that "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure . . . ." Advisory Committee Notes, 1993 Amendments.

Courts have routinely upheld the distinction between consideration and reliance and have provided that "all materials 'considered' by a testifying expert witness in forming her opinion are fully discoverable by the adverse party . . . ." Messier v. Southbury Training Sch. 1998 WL 422858, No. 3:94-CV-1706 (EBB), *1 (D. Conn. June 29, 1998). As the Messier court observed, expert testimony "is often determinative of one or more central issues in a case "and "it is critical that an adverse party have an opportunity to explore any biases or unreliabilities that might affect

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

an expert's objectivity." Id. (citation omitted). In addition, "[t]he party seeking to compel the production of documents under Rule 26(a)(2)(B) 'should not have to rely on [the resisting party's] representation that . . . documents were not considered by the expert in forming his opinion.'" In re Air Crash at Dubrovnik, 2001 WL 7774333, No. MDL 1180, Civ 398CV2464AVC, *5 (D. Conn. June 4, 2001).

Lastly, Meredith did not limit its document requests to merely those items relied upon or considered by RCL's experts, but rather sought the production of all documents "provided to or received from" RCL's experts. In response to Meredith's request concerning "all documents . . . provided to, relied upon, or received from any expert witness retained or utilized by you in connection with this matter," RCL agreed, subject only to privilege and general objections, to "produce copies of all documents identified in the expert reports of Ronald L. Nuttall and Suzanne L. Sell." Callagy Aff. ¶ 8, Exhib. O. Dr. Grossman (whom RCL substituted for Dr. Nuttall) then proceeded to identify the Handbook in his expert report. Callagy Aff. ¶ 5, Exhib. N. Accordingly, by the terms of its own representation, RCL must produce the Handbook.

### B. RCL'S FAILURE TO PRESERVE THE HANDBOOOK REQUIRES EXCLUSION OF ITS EXPERTS' TESTIMONY

Exclusion of RCL's experts is appropriate under Federal Rule of Civil Procedure 37 and the Court's inherent authority. See, e.g., Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991), aff'd, No. 89 Civ. 4252 (PKL), 1992 WL 5170, at *3-4 ("Courts . . . have the power to sanction the destruction of evidence, whether that authority is derived from Rule 37 or their inherent powers."). "The decision to impose sanctions, as well as the appropriate sanction to be fashioned, lie within the sound discretion of the trial court." Shaffer v. RWP Group, Inc., 169 F.R.D. 19, 24 (E.D.N.Y. 1996).

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

In evaluating motions for sanctions based upon destruction of evidence, courts consider the following:

> (1) whether the party had a legal duty to preserve the evidence; (2) the degree of the party's culpability in the destruction of the evidence; (3) the relevancy of the destroyed evidence; (4) the prejudice to the opposing party; and (5) the severity of the punishment to be imposed.

McGinnity v. Metro-North Commuter Railroad, 183 F.R.D. 58, 60 (D. Conn. 1998).

In this case, it is beyond question that RCL had a legal duty to preserve the evidence.  First, the Handbook should have been preserved from at least the time RCL decided to bring a lawsuit against Meredith concerning, among other things, the value of the research it had performed.  See, e.g., Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991), aff'd, No. 89 Civ. 4252 (PKL), 1992 WL 5170, at *3-4 ("[T]he obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced.").  Second RCL clearly understood as of the date that the Court's Document Preservation Order was entered – February 7, 2001 – that it must preserve all existing versions of the Handbook.  Third, at the very latest, RCL was on notice as of September 2001, when Meredith served its first request for documents.  See id. ("Of course, a party is on notice once it has received a discovery request.").

RCL's degree of culpability is high.  First, the failure to preserve the Handbook document flies in the face of an order issued by this Court in February 2001 commanding that all documents be preserved.  Means Aff., Exhib. A.  Any failure to preserve evidence after that date directly violates the Court's order.  Indeed, despite numerous requests for production of the entire Handbook, and two motions to compel, it appears by its own admission that RCL has never taken steps to preserve the Handbook from further alteration.  According to RCL, the "Handbook is maintained electronically and has been changed dozens of times since RCL last worked for Meredith."  Opposition to Renewed Motion to Compel at 6.  RCL last worked for Meredith in the

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

fall of 2000, and sued Meredith within weeks of the termination of the parties relationship.  Thus, although Meredith is only left to guess at what modifications were made by RCL to the Handbook during the intervening period, it is doubtful that the Handbook would have been significantly altered prior to RCL's decision to file suit against Meredith.  If RCL's statement is true, then it would appear that the majority of RCL's "dozens" of alterations would have been made following the initiation of its lawsuit, and following entry of the Court's Order just three months later, and it may be that RCL's modifications of the Handbook continue to this day.  Such conduct evinces a willful disregard on RCL's part of the Court's order and RCL's discovery obligations.

As a consequence, Meredith faces severe prejudice.  RCL's willful and flagrant violation of this Court's document preservation order has created a situation where Meredith cannot effectively examine Meredith's experts, and is precluded from furnishing the Handbook to its own expert witness for review and analysis.  Even if RCL were today compelled to produce in full a document which, by its own admission has been modified dozens of times, Meredith could not know what research protocols existed during the relevant time period and what protocols were added or modified later, perhaps even in response to allegations made in this litigation.

For the same reason, even apart from Meredith's impaired ability to examine his testimony, Dr. Grossman's testimony must be excluded.  Dr. Grossman relied in part upon a later version of the Handbook, containing unknown and undisclosed modifications, in concluding that RCL's research methodology was appropriate.  Means Aff., Exhib. C., at 10 (relying upon Handbook); see Valentine v. Mercedes-Benz Credit Corp., 1999 WL 787657 (S.D.N.Y. 1999) ([P]laintiffs' expert may not present an opinion or otherwise testify based on his examination of any [evidence] that is no longer available to defendants' experts, and the jury will be informed that the parties' inability to present evidence with respect to missing [evidence] is due to plaintiffs' failure to assure that

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

such [evidence was] preserved."). Dr. Grossman's expert opinion, which is based upon improper evidence, would not be of probative value and would confuse rather than help the jury. See, e.g., United States v. Kim, 303 F. Supp. 2d 150 (D. Conn. 2004) ("A trial court has discretion over whether or not an expert witness will be helpful to the jury.") (citing United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993).[2]

RCL has offered no justification for its failure to preserve the Handbook, nor could it do so in light of the fact that it has been on notice of Meredith's request for production of the Handbook since September 14, 2001, when Meredith served its First Request for Production of Documents to RCL. Callagy Aff. ¶ 2, Exh. A. Since that time, as detailed in Meredith's renewed motion to compel, Meredith has repeatedly and without success sought the Handbook. At a minimum, RCL must have maintained a copy of the Handbook as of that date, and clearly maintained a copy of the Handbook when it was offered to its expert, Ms. Sell, in April 2002. Indeed, RCL's counsel, by letter dated September 9, 2002, acknowledged that he was aware of the issue. Means Aff. Exhib. C.

Meredith submits that exclusion of RCL's experts is the proper remedy to avoid prejudice to Meredith and to sanction RCL for its deliberate disregard of its discovery obligations and of the authority of this Court. Valentine, 1999 WL 787657 at *1 ([P]laintiffs' expert may not present an opinion or otherwise testify based on his examination of any [evidence] that is no longer available to defendants' experts, and the jury will be informed that the parties' inability to present evidence with respect to missing [evidence] is due to plaintiffs' failure to assure that such [evidence was] preserved."); Rutgerswerke AG v. ABEX Corp., 2002 WL 1203836, at *14 (S.D.N.Y. 2002) (excluding witnesses as sanction for "deliberate destruction of evidence"); cf. Shaffer, 169 F.R.D.

---

[2] It should be noted that Ms. Sell testified she chose not to review the Handbook, believing that it would not be relevant unless she "could be assured that it was the handbook that was in effect in 1999 when Doctor Soley conducted the analysis." Callagy Supp. Aff., Exhib. B, at 148-49.

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

at 28 (E.D.N.Y. 1996) ("In fashioning a sanction to remedy [a party's] document destruction, 'the trial court has a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.'") (citation omitted).

Alternatively, although Meredith believes exclusion is the most appropriate remedy, the Court could also issue a strong adverse inference charge. See, e.g., Shaffer, 169 F.R.D. at 28 ("A court and a jury are entitled to presume that documents destroyed in bad faith while litigation is pending would be unfavorable to the party that has destroyed the documents.") (citation and internal quotation marks omitted). In this case, the Handbook, as it existed at the relevant time, would have constituted the most salient evidence of RCL's research protocols. Dr. Soley and Ms. Crane in their deposition testimony have both confirmed the Handbook's relevance. Cf. Shaffer, 169 F.R.D. at 28 ("Where a party recklessly destroys relevant evidence, an adverse inference charge is appropriate where there exists 'some extrinsic evidence of the content of the [destroyed] evidence . . . for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental.'") (quoting Turner, 142 F.R.D. at 77).

### C. RCL'S FAILURE TO TIMELY PRODUCE SPSS FILES IN COMPUTER FORMAT REQUIRES EXCLUSION OF DR. GROSSMAN'S TESTIMONY

RCL should also be sanctioned for its failure to timely produce requested documents, leading to a situation where a key Meredith witness may be impeached without having had the ability to defend herself. In September 2001, Meredith requested production of "[a]ny computerized data file showing the data gathered before any respondents or variables were deleted." Callagy Aff. Exhib. A, at No. 49. That request encompassed SPSS system files, which is a computer software program research analysts use to process survey responses, i.e., raw data. More specifically, an analyst inputs into the SPSS software specific instructions as to how to

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

analyze data – each such set of inputs is called a "Syntax." RCL failed to produce the requested documents and represented that the final syntaxes relative to two important segmentation studies were mysteriously missing.

As a consequence, when Dr. Bonita Soley was deposed in June, 2002, Meredith was not aware of any syntax output relative to the study which she described. Had it known, Meredith could have asked Dr. Soley about her work and whether she had created the syntaxes upon which Mr. Grossman now relies in forming his opinions.

More than a year later, Meredith for the first time learned that SPSS system files existed from which syntax output could be obtained, when it received Dr. Grossman's expert report dated June 27, 2003. Dr. Grossman's report claims that Dr. Soley was responsible for certain syntaxes he reviewed and found lacking. Means Aff. Exhib. C., at 11-12. Why this information was not provided to Meredith in a timely fashion (i.e., prior to Dr. Soley's deposition) appears obvious.

Unless Dr. Grossman's testimony is excluded, or, at a minimum, he is precluded from identifying Dr. Soley or anyone working at her direction as the author of the syntaxes, Meredith will be unfairly prejudiced. Dr. Soley denies that she created the syntaxes evaluated by Dr. Grossman, but Meredith no longer has the opportunity to put that denial on the record, as Dr. Soley is beyond the subpoena power of the Court. Cf. Valentine, 1999 WL 787657 at *1 ([P]laintiffs' expert may not present an opinion or otherwise testify based on his examination of any [evidence] that is no longer available to defendants . . . ."). In this circumstance, the evidence was not available to defendants when it would have been helpful. Had RCL produced the documents when requested, in September 2001, they would have been available long before Dr. Soley's deposition. Instead, RCL apparently chose to withhold the documents, as it has chosen to withhold (and destroy) its Handbook. Although RCL finally produced SPSS system files containing the relevant

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

syntax output, in March 2004, Means Aff., Exhibs. D-E, that production comes far too late to cure the prejudice described above.

## CONCLUSION

For the foregoing reasons, Meredith respectfully requests that its motion in limine to exclude RCL's experts, Suzanne Sell and Michael Grossman, be granted, and that the Court award such further relief, including attorneys' fees and costs, as it deems appropriate.

Dated: Hartford, Connecticut
       May 7, 2004

                                              Respectfully submitted,

By:_____
James Sicilian, Esq.
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut  06103-3499
(860) 275-0303

and

Robert M. Callagy, Esq. (*pro hac vice*)
SATTERLEE STEPHENS BURKE
& BURKE LLP
230 Park Avenue
New York, New York  10169
(212) 818-9200

Attorneys for Defendant/Counterclaim-Plaintiff
Meredith Corporation

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**

# **C E R T I F I C A T I O N**

THIS IS TO CERTIFY that a copy of the foregoing was sent on May 7, 2004, by first-class mail to all counsel and pro se parties as follows:

| | |
|---|---|
| Joseph T. Tanski, Esq. | Charles W. Pieterse, Esq. |
| David B. Mack, Esq. | Whitman Breed Abbott & Morgan |
| Nixon Peabody LLP | 100 Field Point Road |
| 101 Federal Street | Greenwich, CT  06830 |
| Boston, Massachusetts 02110 | |
| | |
| Christopher M. Miller, Esq. | James G. Sawtelle, Esq. |
| Belin Lamson McCormick Zumbach Flynn | Duncan Green Brown Langeness & Eckley, |
| A Professional Corporation | A Professional Corporation |
| The Financial Center | Capital Square |
| 666 Walnut Street Suite 2000 | 400 Locust Street Suite 380 |
| Des Moines, Iowa  50309-3989 | Des Moines, Iowa  50309 |

_____
James Sicilian

**ORAL ARGUMENT NOT REQUESTED**
**TESTIMONY NOT REQUIRED**