UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>  Plaintiff and )<br>  Counterclaim Defendant, )<br>v. )<br>  )<br>MEREDITH CORPORATION, )<br>  Defendant and )<br>  Counterclaim Plaintiff, )<br>  and )<br>  )<br>MEREDITH CORPORATION, )<br>  Third-Party Plaintiff, )<br>v. )<br>  )<br>VALERIE CRANE, )<br>  Third-Party Defendant. ) | CASE NO 3:00CV2179-DFM |

FILED

2004 MAY -5 A 11: 31

U.S. DISTRICT COURT
HARTFORD, CT.

### RESEARCH COMMUNICATIONS, LTD.'S AND VALERIE CRANE'S MOTION TO LIMIT THE SCOPE OF EVIDENCE OF ALLEGED IMPROPER RCL SERVICES, TO SERVICES PERFORMED BY RCL FOR MEREDITH'S ATLANTA STATION

Research Communications, Ltd. and Valerie Crane (collectively, "RCL") move in limine to preclude Meredith Corporation ("Meredith") from introducing any evidence – testimonial, documentary or otherwise – of alleged improper services by RCL for any Meredith television station other than Meredith's Atlanta station, WGCL (formerly known as WGNX). Any evidence of purported improper services by RCL should be limited to the Atlanta station because, in response to pointed interrogatories requesting that Meredith identify the particular RCL services alleged to be improper, Meredith identified one research study, a benefits segmentation study conducted by RCL for WGCL in or about April 1999 ("Atlanta Benefits Study"). Moreover, the two witnesses identified by Meredith as having knowledge of such alleged improper services testified in deposition that whatever knowledge they have concerning alleged improper services of RCL is limited to the Atlanta Benefits Study. RCL moves that

BOS1378209.1

Meredith be precluded from introducing any documentary evidence, or eliciting any expert or lay witness testimony, concerning any alleged improper services of RCL for any station other than Atlanta.

### Meredith's Responses to Written Discovery Requests Concerning Alleged Improper Services of RCL

In an effort to determine the basis of Meredith's allegations that RCL "employed a number of practices which were professionally and/or ethically unsound," see Counterclaims, ¶23, RCL propounded various interrogatories. Meredith's responses to RCL's interrogatories include those attached hereto as follows:

- Exhibit A: Meredith's Answers to First Set of Interrogatories (dated August 13, 2001);

- Exhibit B: Meredith's Supplemental Answers to First Set of Interrogatories (dated September 21, 2001);

- Exhibit C: Meredith's Answers to Second Set of Interrogatories (dated February 15, 2002)

- Exhibit D: Meredith's Supplemental Answers to Second Set of Interrogatories (dated April 26, 2002)

In its first set of interrogatories, RCL propounded the following:

> Identify any RCL services performed for Meredith between July 21, 1998 to September 15, 2000 which you contend were improperly performed, and state the respect in which such services were improperly performed.

See Int. No. 9 (Exhibit A, p. 12).

Meredith responded by listing the conclusory allegations that would ultimately appear in ¶23 of its counterclaims. See answer to Int. No. 9 (Exhibit A, p. 12).

In response to RCL's request that Meredith supplement its answers, Meredith provided additional information concerning the allegations in ¶23 of Meredith's counterclaims. Meredith stated that it was aware that RCL engaged in allegedly improper research practices on the Atlanta Benefits Study. Specifically, Meredith stated that on such Atlanta study the research

analyst for RCL was directed to rerun an analysis and to remove variables and manipulate data. The source of this alleged information was Bonita Soley, a former RCL employee who had been contacted by Meredith's private investigator after RCL brought this litigation. Meredith further stated that "Meredith will continue to develop evidence concerning RCL's practices during discovery, and Meredith reserves the right to supplement this answer as appropriate." See Supplemental Answer to Int. No. 9 (Exhibit B, pp. 15-18).

In its second set of interrogatories, RCL propounded a number of interrogatories in an effort to determine whether Meredith had any evidence of purported RCL wrongdoing on any study other than the Atlanta Benefits Study identified in response to RCL's first set of interrogatories.[1] These interrogatories also asked Meredith to identify individuals with knowledge of the allegedly improper research. In response to these interrogatories, Meredith stated that it was not aware of any study other than the previously identified Atlanta Benefits Study:

> 2. Please identify the specific variables which Meredith contends (in Supplemental Int. Answer No. 9) were removed by RCL from samples during research studies and identify the particular studies from which each such variable was allegedly removed.
>
> ANSWER: Meredith is aware that variables were improperly removed in at least one study conducted relative to Meredith's CBS affiliate in Atlanta. Meredith has only recently received from RCL discovery responses that will provide a starting point from which to examine the underlying data for the purpose of determining which specific variables were improperly removed, and which studies were compromised as a result if irregularities in the removal of variables by RCL. This answer will be supplemented following completion of such examination. (Emphasis added).
>
> 3. Please identify any and all research studies performed by RCL for Meredith with respect to which Meredith contends (in Supplemental Int. Answer No. 9) the research failed to support the results and/or conclusions reported by RCL. With respect to each such study, specify how the results were not supported by the research and identify the individuals with whom Meredith consulted and/or communicated in support of such allegation.

---

[1] RCL denies that it engaged in any improper services for the Atlanta station or otherwise.

> ANSWER: RCL is directed to Meredith's Supplemental Answer to Interrogatories No. 9 [to first set of interrogatories, Exhibit B hereto]. Meredith is aware that variables were improperly removed in at least one study conducted relative to Meredith's CBS affiliate in Atlanta, such that the study was rendered unreliable for its intended purpose. Meredith has only recently received from RCL discovery responses that will provide a starting point from which to examine the underlying data for the purpose of determining which specific studies were compromised as a result of irregularities in the removal of samples by RCL. This answer will be supplemented following completion of such examination. (Emphasis added).

> 18. Please state whether there is any research study, other than the benefits segmentation study identified in Supplemental Int. Answer No. 9 [Atlanta], with respect to which Meredith alleges, as set forth in Paragraph 29 of the Counterclaims, "RCL and Crane intentionally manipulated data gathered by RCL . . . to achieve preconceived results that Crane desired to report to Meredith." If the answer is yes, please identify the particular study, the manner in which the data was manipulated, the preconceived results Crane desired to report to Meredith, and the individuals whom Meredith has reason to believe has knowledge of such allegations.

> ANSWER: The practice of intentionally manipulating data to achieve a preconceived result was routinely employed by RCL during the course of its contractual relationship with Meredith. Those individuals with knowledge concerning this practice include Bonita Soley, former Project Manager for RCL, and Wayne Cunningham, former Vice President of Operations for RCL. Meredith has only recently received from RCL discovery responses that will provide a starting point from which to examine the underlying data for the purpose of determining which specific variables were improperly removed, and which studies were compromised as a result if irregularities in the removal of variables by RCL. This answer will be supplemented following completion of such examination.

See Exhibit C, pp. 6-7, 22; see, also answers to interrogatories 10-16, 18-22 (Ex. C, pp. 14-25) (relative to other allegations in counterclaims and providing no substantive information other than above).

In response to interrogatories in which RCL asked Meredith to identify the individuals with knowledge of the allegedly improper research practices identified in the counterclaims, Meredith identified two specific individuals, Ms. Soley and Wayne Cunningham, RCL's former

BOS1378209.1

4

Vice President of Operations, and referred to "others employed by RCL during the relevant time period."

> 10. Please state the basis of Meredith's allegation in Paragraph 29(b) of the Counterclaims that Crane directed subordinates to remove variables from samples to produce desired outcomes, identify the outcomes desired by RCL and/or Crane and identify all individuals whom Meredith believes has knowledge of such allegations.
>
> ANSWER: Individuals with knowledge regarding the subject allegation include Bonita Soley, former Project Manager for RCL, and others employed by RCL during the relevant time period.

Exhibit C, p. 14; see also answers to interrogatories 11-16, 18-20 (Exhibit C, pp. 15-20, 22-25).

When pressed to identify the "others employed by RCL during the relevant time period." Meredith did not identify any other individual whom Meredith expects to call as a witness at trial. See Exhibit D.[2]

## Argument

Meredith first responded to RCL's interrogatories in which RCL sought information concerning allegedly improper RCL services, in August 2001. Meredith identified the Atlanta Benefits Study, stated that its examination was only just beginning and promised to supplement its responses upon completion of its analysis. Nearly three years later, the Atlanta Benefits Study remains the only study identified by Meredith on which RCL allegedly engaged in improper services.

The only two specific individuals whom Meredith expects to call at trial and who were identified by Meredith as having knowledge of allegedly improper RCL services are Bonita

---

[2] The only additional individuals identified by Meredith were John Clark and Thomas Birk. Neither of these witnesses is on Meredith's list of trial witnesses. In any event, Mr. Clark was an independent contractor who worked on a couple of RCL projects in the mid-1990s for non-Meredith television stations. He therefore has no knowledge of any conduct of RCL with respect to RCL's work for Meredith. Mr. Birk was identified as having knowledge of Meredith's allegation in ¶23(f) concerning Valerie Crane's desire for "severe and chronic turnover" of RCL employees in order to avoid employee eligibility to profit sharing. This allegation, even if true, does not even relate to any alleged services of RCL.

Soley and Wayne Cunningham. Ms. Soley testified in her deposition that the Atlanta Benefits Study was the only study on which she worked in which she thought she was asked to do something improper. Ms. Soley also testified that she never used the words "manipulate" or "tamper" that appear in Meredith's counterclaims (see ¶¶33-34) and that she never informed Meredith's attorneys or private investigator that RCL tampered with or manipulated data. Soley Depo., pp. 174-76, 226-33, 252, 256, 282-284 (attached hereto as Exhibit E). See also Soley Depo. (including errata sheet), pp. 292-305 and Soley Dep. Ex. 5 (where Ms. Soley testifies as to her refusal to sign a draft affidavit provided to her by counsel for Meredith because the draft affidavit falsely stated that Ms. Soley observed manipulation of data on projects other than Atlanta) (the draft Soley affidavit is included as part of Exhibit E hereto)[3].

Mr. Cunningham admitted in his deposition that he never worked on any research projects while he was at RCL; that although he conducted weekly meetings with RCL researchers, he did not himself participate in any of the research procedures; that his practice while he was at RCL was to refer all questions involving research methodology to someone else; and that although he was aware that RCL made many "changes" to research reports prior to them being delivered to clients, he had no personal knowledge of the nature of such changes. See Cunningham Depo., pp. 14-15, 35-39, 47, 77, 97 (Exhibit F hereto).

---

[3] In March 2002, Meredith's counsel prepared an affidavit for Ms. Soley's signature. The draft affidavit (Soley Dep. Ex. 5) contained a number of statements that Ms. Soley testified at her deposition are not true. For example, the draft affidavit stated: "I observed, at the direction of Ms. Crane, researchers would routinely add or remove variables from factor analysis studies until they were able to produce data that supported a desired conclusion requested by Ms. Crane. This practice of manipulating data was pervasive throughout RCL and occurred in connection with projects performed on behalf of Meredith." Soley Draft Affidavit, ¶5 (part of Ex. E hereto). Ms. Soley testified that she crossed out that language because it was not true. Soley Depo., pp. 297-298. Ms. Soley also disavowed the statement in the draft affidavit prepared by Meredith's counsel that after the Atlanta Benefits Study she "was again directed to follow this procedure of inappropriately removing variables from another Meredith study …" Soley Depo. p. 303.

After RCL brought this action against Meredith for breach of contract, Meredith has been digging and digging and digging for evidence that RCL's services were flawed. The single study identified by Meredith in discovery -- of the approximately 70 studies conducted by RCL for ten Meredith television stations over nearly three years -- on which RCL allegedly engaged in improper services, is the Atlanta Benefits Study. Meredith should be precluded from introducing any evidence at trial of (or referring at trial to) alleged improper RCL services other than services performed by RCL for the Atlanta station. Meredith did not identify any alleged improper services as to Meredith's stations in Nashville, Kansas City, Phoenix, Greenville, Orlando, Las Vegas, Saginaw, Hartford or Portland.

WHEREFORE, for the above reasons, RCL requests that its motion be allowed and that Meredith be precluded from introducing any evidence -- testimonial, documentary or otherwise – concerning (or referring at trial to) alleged improper services performed by RCL other than services performed for the Atlanta station.

Dated: May 4, 2004

RESEARCH COMMUNICATIONS, LTD. AND
VALERIE CRANE
By their Attorneys,

*[signature]*

Joseph C. Tanski   Ct. 22211
David B. Mack   Ct. 23151
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

CERTIFICATE OF SERVICE

    I, David B. Mack, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party as follows :

> James G. Sawtelle, Esq.
> Duncan, Green, Brown,
>  Langeness & Eckley
> 600 Seventeenth Street
> Suite 2800 South
> Denver, Colorado 80202-5402
>
> Robert M. Callagy, Esq.
> Satterlee Stephens Burke & Burke LLP
> 230 Park Avenue
> New York, NY 10169-0079

by first class mail on May 4, 2004.

                                                                            David B. Mack