UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>    Plaintiff and )<br>    Counterclaim Defendant, )<br>v. )<br>)<br>MEREDITH CORPORATION, )<br>    Defendant and )<br>    Counterclaim Plaintiff, )<br>    and )<br>) CASE NO 3:00CV2179-DFM<br>MEREDITH CORPORATION, )<br>    Third-Party Plaintiff, )<br>v. )<br>)<br>VALERIE CRANE, )<br>    Third-Party Defendant. ) | |

### RESEARCH COMMUNICATIONS, LTD'S AND VALERIE CRANE'S MOTION TO PRECLUDE KEVIN O'BRIEN, DOUGLAS LOWE OR RICHARD HAYNES FROM OFFERING EXPERT OPINIONS THAT RCL'S RESEARCH CAUSED MEREDITH'S STATIONS' RATINGS AND/OR FINANCIAL PERFORMANCE TO DECLINE

Research Communications, Ltd. and Valerie Crane (collectively, "RCL") move to preclude Meredith Corporation ("Meredith") from offering any expert opinions, including without limitation from Kevin O'Brien, Douglas Lowe or Richard Haynes, that RCL's research caused the ratings and/or financial performance of Meredith's television stations to decline.[1] Mr. O'Brien, Mr. Lowe and Mr. Haynes should be precluded from providing opinion testimony

---

[1] RCL has separately moved to preclude Meredith from introducing any evidence of purported ratings declines on the bases that (a) any testimony would be based on hearsay; (b) Meredith did not produce the ratings documents during discovery and still has not done so; and (c) any evidence of ratings is irrelevant. RCL incorporates by reference such motion. In addition, RCL has separately moved to preclude Mr. Haynes from testifying on the basis that he was disclosed long after the discovery deadline. The Court need not consider the instant motion insofar as it pertains to Mr. Haynes if the Court precludes Mr. Haynes from testifying on the basis of Meredith's late disclosure. To the extent the Court allows the motion to preclude evidence of ratings, RCL requests that the Court nevertheless rule on the instant motion insofar as it pertains to Meredith's effort to establish a causal connection between RCL's research and Meredith's financial performance.

BOS1380083.1

concerning the purported causal relationship between RCL's research and the decline, if any, in Meredith's stations' ratings or financial performance because under the standards of <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), their respective opinions that RCL's research caused Meredith's ratings and/or financial performance to decline are not based on sufficient facts or data and the methodology employed in reaching such opinions is unreliable. Therefore, these witnesses will not assist the jury with respect to any material issue at trial.[2]

### Anticipated Proffered Opinions of Mr. Lowe, Mr. O'Brien and Mr. Haynes

Mr. Lowe is Executive Vice President of Meredith Broadcasting Group. Mr. Lowe joined Meredith in August 28, 2000, shortly before Meredith terminated its relationship with RCL in Septmeber 2000. Mr. O'Brien is President of Meredith Broadcasting Group. He joined Meredith in November 2001. Mr. Haynes is an employee of Frank N. Magid Associates, which has performed research at one or more of the Meredith Stations since Meredith terminated its relationship with RCL. None of these proposed witnesses took part in the research conducted by RCL for the Meredith stations.

None of the witnesses has authored a report pursuant to Fed. R. Civ. P. 26 identifying the opinions to which he expects to testify or the bases thereof. Nor did Meredith, in response to RCL's expert interrogatory, identify the opinions to which Meredith expects these witnesses to testify at trial. See <u>Exhibit A</u> hereto. The only written disclosures made by Meredith with regard to these expert opinions were Designations of Expert Witness under Fed. R. Civ. P.

---

[2] RCL expressly reserves its right to challenge the competency of these witnesses to render an opinion in this case concerning any connection between RCL's market research and the performance of a television station.

26(a)(2)(B). Because Mr. Lowe and Mr. O'Brien are employees of Meredith, neither has prepared an expert opinion detailing the opinions and bases thereof.[3]

The Designation of Expert Witness filed by Meredith on March 29, 2002 states that Mr. O'Brien:

> has acquired first-hand knowledge concerning matters at issue in this action including, without limitation, the nature of the research services provided by RCL to Meredith Corporation, the implementation of business decisions by Meredith Corporation based on the reliability of the information and conclusions presented by RCL, the utility of such research services to Meredith Corporation, the performance of the various television stations within the Meredith Broadcasting Group that relied in the validity of the RCL research services and the measures undertaken by Meredith Corporation to address those issues arising from its relationship with RCL relating to the performance of its television broadcast stations. By reason of his education, training, experience and skill, Mr. O'Brien possesses technical and specialized knowledge that has allowed him to form professional judgments and conclusions based upon personal observation relating to these matters, which background, knowledge and skill will assist the trier of fact in understanding the evidence to be presented in this action, as contemplated by Federal Rule of Evidence 702.

O'Brien Designation (Ex. B hereto). The designations of Mr. Lowe and Mr. Haynes are similar to the O'Brien designation, and are also attached hereto as part of Exhibit B.

Mr. O'Brien testified at his deposition that in his opinion RCL's research, above all other possible causes, was *the* cause of alleged declines in ratings and financial performance because when he was hired in November 2001 (more than a year after RCL last worked for a Meredith station), he spoke with the stations' general managers and that each one attributed the decline to changes made based on the research. He also testified that he looked at the newscasts and, based on the general managers' statements that the content was based on RCL's research, concluded that the RCL research was the cause of the stations' alleged ratings declines. Mr. O'Brien,

---

[3] Mr. Haynes is not an employee of Meredith. Under Rule 26(a)(2) (B), Meredith was required to submit an expert report, but failed to do so.

BOS1380083.1

however, did not review RCL's research, with the exception of one study relating to the Atlanta station and one study relating to the Phoenix station. In his view, "I didn't need to do that. It was clear to me that something dramatic had happened in those newscasts before I joined the company; and it was directly related to what I considered to be a very bad decision to make these types of changes to newscasts in these markets." O'Brien Depo., p. 91 (relevant portions of Mr. O'Brien's deposition transcript are attached hereto as Exhibit C). He also testified: "I didn't need to see the specific data to know that the recommendations made were not in keeping with commonly accepted news content that is successful in most platforms in the United States in television." O'Brien Depo., p. 94. "I was going to review [all the RCL research]; but I was stunned by the massive amount of the research. I couldn't believe – I think there were over 70 different research studies done in a very short period of time. And due to the difficult nature of my job, there was no way that I could have in any way read all of those documents . . . ." O'Brien Depo., p. 120.

As to the basis of his opinion that RCL's research was the cause of the ratings declines, Mr. O'Brien testified as follows:

> Q: What is the basis of your conclusion that the ratings dropped due to the research as opposed to some other factor?
>
> A: Well, if you go back and look at when the research was conducted, when it started, and then look out over a three-year continuum, it's pretty clear to me that not only in many stations, in all the stations, generally, generally all the stations, did the ratings drop over a two-year period.
>
> \* \* \* \*
>
> Q: What is the basis of your conclusion that the ratings of the Meredith stations, the newscasts, dropped as a result of the research conducted by RCL?
>
> A: Well, the research was conducted in '98 and '99. There's only one source of ratings data in the broadcast industry. That's Nielsen. I did an analysis of rating books starting in 1998 through 2001; and during the time of the initial research,

4

the changes in the content, the enactment of the recommendations and then over a two-year continuum, the ratings dropped significantly in all the television stations. Very simple.

Q: My question is, how do you know that it was due to the research and not due to some other factor that the ratings declined?

A: I'm discussing specifically the newscasts. Newscasts don't decline to the extent that these television station newscasts declined without it being the result of research and the changes made to a television station's newscast. The other factors like promotion are a factor in the success of a station; but, generally, as a professional broadcaster, the decline had to be as a result of some dramatic change in direction or content. There could be no other factor.

Q: What do you base that on?

A: My experience over 35 years.

\* \* \* \* \* \* \*

Q: Have you done any research to determine that the decline in the ratings was due to changes that you believe were implemented based on the recommendations of RCL?

A: No. That's a very sophomoric question. You would never do research based upon other research that was done prior. You wouldn't specifically target a research to research.

\* \* \* \* \* \*

Q: Well, what has the research of Smith Geiger or Magid conducted subsequent to the research conducted by RCL told you about the cause of the decline in ratings at the Meredith stations?

A: It wouldn't – It wouldn't tell you the – specifically the cause. You wouldn't do research on that basis. . .

O'Brien Depo., pp 106-114.

Mr. O'Brien's testimony can be summarized as follows: I talked to the general managers of the stations. They told me that the content of the newscasts was based on the RCL research. My experience tells me that the content of the newscasts was not what had succeeded generally in the past. The RCL research was conducted in 1998 and 1999. The ratings went down from

5

1998 to 2001. It must be the ratings. Based on my experience this just doesn't happen with respect to news. I didn't do any research to reach this opinion, but I can think of no other cause. See O'Brien Depo., pp. 73-121 (Exhibit C hereto).

The Court should exercise its gatekeeper function under Daubert to preclude these individuals from offering expert testimony because their opinions are not based on a reliable methodology or sufficient facts or data. See Daubert, 509 U.S. at 592-93. The jury would be grossly misled by the unreliable speculation of these individuals.

## Argument

### I. The Daubert Standard

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Lippe v. Bairnco Corp., No. 03-7360, 2004 U.S. App. LEXIS 7027, *7 (2d Cir., April 9, 2004), citing Daubert, 509 U.S. at 597. In carrying out this task, a trial judge is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. Id., citing Khumo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The district court must undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts and how the expert applies the facts and

methods to the case at hand. Amorgianos v. Nat'l R.R. Passenger Corp., 313 F.3d 256, 267 (2d Cir. 2002). When an expert is not applying his or her extensive experience and a reliable methodology, the testimony should be excluded. U.S. v. Cruz, No. 02-1458, 2004 U.S. App. LEXIS 6335, *17 (2d Cir., April 2, 2004).

The reliability of the opinion of an expert witness is based on consideration of four non-exhaustive factors: (1) whether the theory has been subjected to peer review and publication; (2) whether the theory has been tested; (3) whether the theory has a known error rate; and (4) whether the theory has general acceptance in the scientific community. Daubert, 509 U.S. at 593-94 (1994). The essence of the court's inquiry is "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93.

Under Daubert and its progeny, Meredith, as the proponent of opinion testimony, bears the burden of demonstrating that the opinions of Mr. O'Brien, Mr. Lowe and/or Mr. Haynes are based on good grounds and that the methodology employed by such witnesses in reaching their opinions is reliable. Donnelly v. Ford Motor Co., 80 F. Supp. 2d 45, 50 (E.D.N.Y. 1999).

RCL respectfully submits that Meredith will not be able to satisfy this burden.

## II. Any Opinion that RCL's Research Caused the Performance of Meredith's Stations to Decline is Unreliable Under Daubert.

Mr. O'Brien's deposition testimony demonstrates that his opinion that RCL's research caused the performance of the Meredith stations' newscasts to decline is not the stuff of expert testimony admissible under Daubert. His opinion is not based on a detailed review of the research conducted by RCL. It is not based on any research conducted to determine the cause and effect relationship, if any, between market research and broadcast television newscast performance generally. It is not based on research as to the cause of the alleged ratings declines

7

at the Meredith stations specifically. The theory espoused by Meredith's proffered experts has not been subject to peer review or publication. It has not been tested. It is not generally accepted in the relevant industry that there is a direct causal connection between market research alone and ratings and/or financial performance.

Importantly, Mr. O'Brien did not examine whether the alleged ratings declines were caused by factors other than RCL's research. The factors that can influence the performance of a broadcast television newscast are numerous and diverse, and include the following:

- Changes in the ratings sample or the definition of the designated market area (DMA)
- Changes in Nielsen's data collection or editing procedures
- Changes in news anchors and other on-air talent of Meredith and other stations in the market
- Overall demographic trends in the market
- Changes in the total market share of local stations versus cable channels
- Changes in local stations' network affiliations, call letters, or ownership
- Changes in local stations' reception quality and cable systems' channel lineups
- Changes in local stations' news program scheduling, or leadin/leadout programming
- Movement and activities of high-profile on-air talent at all local stations
- Changes in the Meredith stations' leadin/leadout programming
- The launching of additional newscasts in a timeslot by Meredith and other competing stations in the market
- Major promotional campaigns and contests in the market by Meredith and its competitors
- Major news, weather, and sports events during this time period
- Marketing plans and budgets supporting the Meredith stations' initiatives and initiatives of other stations in the market
- Resources brought to bear by the Meredith stations to execute their strategies and resources brought to bear by other stations in the market
- The Meredith news products themselves and the news products of other stations in the market

Mr. O'Brien did not examine these numerous complex factors. He made no attempt to examine whether Meredith properly and effectively implemented RCL's research. He did not review the RCL research itself (he reviewed 2 out of more than 70 research studies). He did not consider the effect of Meredith's expenditures as compared to its competitors. He did not test his theory that RCL's research was the cause of the alleged decline in the stations' performance. See Brooks v. Outboard Marine Corp., 234 F.3d 89, 91-92 (2d Cir. 2000) (trial judge properly excluded expert opinion where the expert did not attempt to test his opinion).

Mr. O'Brien's "analysis" is wholly lacking in intellectual rigor. The basis of Mr. O'Brien's opinion that RCL's research caused Meredith's performance to decline is not just insufficient; it is non-existent. His opinion is not the product of reliable principles and methods. See Turrentine v. Bell Canada, No. 98-7942, 1999 U.S. App. LEXIS 7765, *3-4 (2d Cir. 1999) (expert opinion properly excluded given the paucity of detail explaining the methodology employed by the expert in reaching opinion concerning causation). Daubert prohibits a witness from presenting conclusory opinions lacking any foundation or a basis in data. Mr. O'Brien's opinion that RCL's research was a cause, let alone a substantial contributing case, of alleged declines in Meredith's television stations' ratings or financial performance, is pure conjecture. Daubert requires that an expert opinion be based upon more than mere conjecture; it must be based on sufficient data and a tested, accepted methodology.

For the foregoing reasons, RCL requests that Meredith be precluded from offering any expert opinion testimony, including without limitation of Mr. O'Brien, Mr. Lowe or Mr. Haynes, that RCL's research was a cause of alleged declines in ratings and/or financial performance of Meredith's television stations. The jury should not be permitted to hear the grossly unreliable

conjecture of these witnesses. In the alternative, RCL requests that a <u>Daubert</u> hearing be conducted for Meredith's purported experts in advance of trial.

Dated: May 7, 2004

RESEARCH COMMUNICATIONS, LTD. AND
VALERIE CRANE
By their Attorneys,

*/s/ Joseph C. Tanski*

Joseph C. Tanski   Ct. 22211
David B. Mack   Ct. 23151
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

BOS1380083.1

CERTIFICATE OF SERVICE

I, David B. Mack, hereby certify that on May 7, 2004 I delivered by facsimile transmission a true copy of the above Motion (without exhibits) and by federal express with exhibits upon the attorneys of record for each other party:

>James G. Sawtelle, Esq.
Duncan, Green, Brown,
  Langeness & Eckley
600 Seventeenth Street
Suite 2800 South
Denver, Colorado 80202-5402

Robert M. Callagy, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

David B. Mack

BOS1380083.1