UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., | ) |
| Plaintiff/Counterclaim-Defendant, | ) |
| v. | ) |
| MEREDITH CORPORATION, | ) |
| Defendant/Counterclaim-Plaintiff, | ) CASE NO.: 3:00CV2179-AVC |
| MEREDITH CORPORATION, | ) |
| v. | ) MAY 14, 2004 |
| VALERIE CRANE, | ) |
| Third-Party Defendant. | ) |

### OPPOSITION TO RCL'S MOTION IN LIMINE TO LIMIT THE SCOPE OF EVIDENCE OF IMPROPER RCL SERVICES TO SERVICES PERFORMED BY RCL FOR MEREDITH'S ATLANTA STATION

Meredith Corporation ("Meredith"), by its attorneys, submits this memorandum of law in opposition to the motion in limine filed by Plaintiff Research Communications, Ltd. and third-party defendant Valerie Crane (collectively, "RCL") to limit the scope of evidence of improper RCL services.

In a nutshell, RCL contends that Meredith will only offer evidence that RCL's Atlanta research study was flawed, and therefore "should be precluded from introducing any evidence at trial of (or referring at trial to) alleged improper RCL services other than

1

560594_1

services performed by RCL for the Atlanta station." RCL's Motion at 7. RCL's argument cannot withstand serious scrutiny.

As a matter of logic, the conclusion does not follow from the premise. Whether or not Meredith offers specific evidence demonstrating that studies in other markets were flawed, Meredith may still offer other evidence that tends to show that RCL's work lacked value. For example, Meredith will offer evidence demonstrating that RCL recommended and urged that Meredith conduct excessive market research studies well beyond the volume of studies accepted as the standard in the industry, and that RCL charged Meredith amounts that substantially exceeded the fair market value of services delivered by RCL to Meredith. All of the above points are contained in Meredith's interrogatory responses, mistakenly cited by RCL for the proposition that Meredith has not identified evidence of RCL's flawed work. See, e.g., RCL's Motion, Exhib. B, at 14. Thus, Meredith's evidence of one flawed research study is only part of its case.

Indeed, RCL's argument actually constitutes a logical contradiction, because it assumes the existence of evidence it argues cannot exist. In other words, if Meredith really had no evidence to offer at trial concerning the lack of value of RCL's performance (other than the Atlanta study), there would be no purpose for RCL's motion to exclude that evidence.

Nor can RCL successfully argue that Meredith's witnesses should be precluded from concluding, based upon the deep flaws identified in the Atlanta study, that the other studies conducted by RCL were without value. This is especially true since it is apparent that RCL gave essentially the same branding advice to most of the Meredith stations. Based upon RCL's advice, the stations largely adopted a "soft news" format devoted to

2

human interest features rather than traditional news. The very uniformity of RCL's recommendations evidences a predetermined conclusion on RCL's part that it pushed regardless of the raw data gathered in its research efforts.

Bonita Soley's deposition testimony provides further evidence of RCL's bad faith across markets. Ms. Soley worked on a number of RCL research projects for Meredith, for stations including Nashville, Las Vegas, Atlanta, and Hartford. Soley Deposition at 47-48, attached hereto as Tab A. Soley testified that Valerie Crane directed on a number of occasions that "significant results" would not be revealed to the client. Id. at 177-85.

Ultimately, RCL's motion is superfluous. If Meredith lacks evidence of improper research practices beyond the Atlanta market, it will be unable to offer such evidence at trial. Moreover, nothing prevents RCL from using the time-honored tool of cross-examination to test the quality of Meredith's evidence, and nothing prevents RCL from arguing to the jury about the nature of that evidence. However, RCL's transparent attempt to exclude damaging evidence of its shoddy research practices should be rejected.

## **CONCLUSION**

For the foregoing reasons, Meredith respectfully submits that RCL's motion to limit the scope of Meredith's evidence must be denied.

                                    Respectfully submitted,

                                    MEREDITH CORPORATION

By: _____
                                    James Sicilian
                                    (ct05608)
                                    DAY, BERRY & HOWARD LLP
                                    CityPlace I
                                    Hartford, Connecticut 06103-3499
                                    Phone: (860) 275-0100
                                    Fax:   (860) 275-0343
                                    email:  jsicilian@dbh.com

and

                                    Robert M. Callagy (*pro hac vice*)
                                    (ct24386)
                                    SATTERLEE STEPHENS BURKE &
                                        BURKE LLP
                                    230 Park Avenue
                                    New York, New York 10169
                                    Phone: (212) 818-9200
                                    Fax:   (212) 818-9606
                                    email:  rcallagy@ssbb.com

Attorneys for Defendant/Counterclaim-Plaintiff
Meredith Corporation

560594_1

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed on this 14th day of May, 2004, by first class mail to all counsel and pro se parties as follows:

Joseph T. Tanski, Esq.
David B. Mack, Esq.
Nixon Peabody LLP
101 Summer Street
25th Floor
Boston, Massachusetts 02110

Charles W. Pieterse, Esq.
Whitman Breed Abbott & Morgan
100 Field Point Road
Greenwich, CT  06830

Christopher M. Miller, Esq.
Belin Lamson McCormick Zumbach Flynn
A Professional Corporation
The Financial Center
666 Walnut Street Suite 2000
Des Moines, Iowa  50309-3989

James G. Sawtelle, Esq.
Duncan Green Brown Langeness & Eckley
A Professional Corporation
Capital Square
400 Locust Street Suite 380
Des Moines, Iowa  50309

_____
James Sicilian

Exhibit A

| | | |
|---|---|---|
| 10:32:41 | 1 | with the data, you can't make them be there. They're |
| 10:32:44 | 2 | there or they're not. |
| 10:32:45 | 3 | Q   Okay. And once again, though, did you ever |
| 10:32:49 | 4 | have any understanding while you were at RCL of the |
| 10:32:53 | 5 | theoretical basis for the cluster analysis? |
| 10:32:59 | 6 | MR. SAWTELLE: Same objec -- I'm sorry, |
| 10:33:01 | 7 | Counsel. Objection to the form of the question and |
| 10:33:03 | 8 | the use of the phrase "theoretical basis." It's vague |
| 10:33:06 | 9 | and indefinite. |
| 10:33:07 | 10 | THE WITNESS: I really don't know what you |
| 10:33:08 | 11 | mean in your question. |
| 10:33:09 | 12 | BY MR. TANSKI: |
| 10:33:09 | 13 | Q   I think I can clarify this later on, so |
| 10:33:12 | 14 | we'll move along. |
| 10:33:14 | 15 | What projects for Meredith Corporation did |
| 10:33:15 | 16 | you work on while you were employed at RCL? |
| 10:33:18 | 17 | A   I worked on some Nashville studies. |
| 10:33:23 | 18 | Q   Do you remember the call letters of the |
| 10:33:24 | 19 | station. |
| 10:33:24 | 20 | A   I think it was WSMV. |
| 10:33:27 | 21 | Q   Okay. What else? |
| 10:33:27 | 22 | A   Did some Las Vegas, KVVU. |
| 10:33:37 | 23 | Q   All right. |
| 10:33:37 | 24 | A   Atlanta. |

| Time | # | |
|---|---|---|
| 10:33:37 | 1 | Q    Which numbers were they, or letters were |
| 10:33:38 | 2 | they? |
| 10:33:39 | 3 | A    WGNX, is that WGNX?  I don't remember. |
| 10:33:44 | 4 | There might have might have been another one, I'm |
| 10:33:45 | 5 | not -- |
| 10:33:45 | 6 | Q    Was there a weather study? |
| 10:33:47 | 7 | A    Yes, there was a weather study somewhere in |
| 10:33:50 | 8 | there. |
| 10:33:50 | 9 | Q    Was that WFSB? |
| 10:33:52 | 10 | A    Yeah. |
| 10:33:53 | 11 | Q    Okay. |
| 10:33:53 | 12 | A    That sounds familiar. |
| 10:33:54 | 13 | Q    Any others you can think of? |
| 10:33:56 | 14 | A    I mean, we did a lot of studies at RCL, |
| 10:33:57 | 15 | so -- |
| 10:33:59 | 16 | Q    I'm just talking Meredith. |
| 10:34:01 | 17 | A    I know, but I'm saying we did a lot of |
| 10:34:03 | 18 | studies in general.  So, I mean, I don't remember if I |
| 10:34:05 | 19 | did part of another Meredith study or piece of another |
| 10:34:08 | 20 | one or whatever.  Right now I just don't remember. |
| 10:34:10 | 21 | Q    Okay.  And for WSMV, was that a product |
| 10:34:13 | 22 | study? |
| 10:34:14 | 23 | A    I believe we did a product study.  That was |
| 10:34:17 | 24 | way back in the beginning when I first started. |

| Time | Line | Text |
|---|---|---|
| 12:58:16 | 1 | Q   It is no? |
| 12:58:17 | 2 | A   Yes. |
| 12:58:17 | 3 | Q   Okay. Putting aside the request by Valerie |
| 12:58:21 | 4 | Crane that you do over the analyses that you've |
| 12:58:25 | 5 | testified about, in connection with the Atlanta |
| 12:58:29 | 6 | project was there anything that anybody at RCL asked |
| 12:58:33 | 7 | you to do which you concluded in your own mind was in |
| 12:58:37 | 8 | any way improper? |
| 12:58:39 | 9 | MR. RALSTON: Same objection as to the |
| 12:58:41 | 10 | overbroad nature of the question. |
| 12:58:43 | 11 | MR. SAWTELLE: I'll join in the objection. |
| 12:58:52 | 12 | THE WITNESS: I guess it would depend on how |
| 12:58:54 | 13 | you define improper. |
| 12:58:57 | 14 | BY MR. TANSKI: |
| 12:58:58 | 15 | Q   Use it however you understand it. |
| 12:58:59 | 16 | A   I mean, there were some times I questioned |
| 12:59:01 | 17 | what was presented, you know, there were some |
| 12:59:03 | 18 | significant results that would be ignored and other |
| 12:59:05 | 19 | less significant results that would be presented in |
| 12:59:08 | 20 | the presentation or in the executive summary. |
| 12:59:11 | 21 | Q   Which studies are you talking about? |
| 12:59:13 | 22 | A   I couldn't specify. I mean, it just |
| 12:59:16 | 23 | happened a few different times. |
| 12:59:17 | 24 | Q   Who did you tell that to? |

| | | | |
|---|---|---|---|
| 12:59:18 | 1 | A | Beth. Beth would usually go over Valerie's |
| 12:59:21 | 2 | changes with us. And Beth just said, you know, that |
| 12:59:24 | 3 | Valerie knows the true story of what to tell the |
| 12:59:27 | 4 | client, and it's not up to us to decide what to put |
| 12:59:30 | 5 | into the report, and there's obviously a good reason |
| 12:59:33 | 6 | it wasn't put in there. |
| 12:59:34 | 7 | Q  Did you agree with her? |
| 12:59:36 | 8 | A  Not always. |
| 12:59:37 | 9 | Q  Okay, what study are we talking about? |
| 12:59:39 | 10 | A  Oh, I couldn't -- I couldn't specify. |
| 12:59:42 | 11 | Q  Well, how many studies did -- were any of |
| 12:59:44 | 12 | these Meredith studies? |
| 12:59:45 | 13 | A  I did mainly Meredith studies. |
| 12:59:47 | 14 | Q  Okay. And how many Meredith studies did you |
| 12:59:50 | 15 | do, four or five? |
| 12:59:51 | 16 | A  I guess. |
| 12:59:52 | 17 | Q  You were there for ten months. You did four |
| 12:59:54 | 18 | or five, right? |
| 12:59:55 | 19 | A  Yeah, at least. |
| 12:59:55 | 20 | Q  Which of those studies -- |
| 12:59:55 | 21 | MR. RALSTON: Objection, Counsel, as to the |
| 12:59:57 | 22 | characterization of her testimony. Let her answer. |
| 12:59:59 | 23 | BY MR. TANSKI: |
| 13:00:00 | 24 | Q  Which of those studies did you make this |

| | | |
|---|---|---|
| 13:00:02 | 1 | observation on? |
| 13:00:02 | 2 |     MR. RALSTON: Objection. Asked and |
| 13:00:03 | 3 | answered. She's said to you she does not recall. |
| 13:00:06 | 4 |     MR. TANSKI: I'm entitled to cross-examine |
| 13:00:08 | 5 | her on it. |
| 13:00:08 | 6 |     MR. RALSTON: Asked and answered |
| 13:00:09 | 7 | nonetheless. You can answer. |
| 13:00:11 | 8 |     THE WITNESS: I'm unsure. I remember one |
| 13:00:14 | 9 | occasion sitting, actually, on the office floor, we |
| 13:00:17 | 10 | had all the, you know, sheets out in front of us. And |
| 13:00:19 | 11 | Beth was removing some and moving others, and I asked |
| 13:00:23 | 12 | her why she was removing, you know, some of them, and |
| 13:00:26 | 13 | she said, "Well, Valerie doesn't want them in here." |
| 13:00:28 | 14 | And I said, "But they were significant," and she said, |
| 13:00:33 | 15 | "Well, it's not important to the station." |
| 13:00:33 | 16 | BY MR. TANSKI: |
| 13:00:33 | 17 |     Q    What were these? |
| 13:00:35 | 18 |     A    I couldn't -- I just remember this -- that, |
| 13:00:36 | 19 | you know, as one incident. |
| 13:00:37 | 20 |     Q    Do you have any idea what they were? |
| 13:00:39 | 21 |     A    No. But, I mean, I'm not -- I don't know if |
| 13:00:41 | 22 | I would say it was improper. I mean, some of those |
| 13:00:41 | 23 | things just made me a little questionable of -- |
| 13:00:47 | 24 |     Q    Why would you characterize them as improper, |

| Time | # | |
|---|---|---|
| 13:00:49 | 1 | then? |
| 13:00:50 | 2 | A    Well, you were the one that said improper. |
| 13:00:53 | 3 | I'm saying I'm not sure I would call it improper. I |
| 13:00:54 | 4 | mean, it would be -- |
| 13:00:55 | 5 | Q    Well, was it or was it not proper? |
| 13:00:56 | 6 | A    I wouldn't do it. |
| 13:00:57 | 7 | Q    Why wouldn't you do it? Whatever it was. |
| 13:00:59 | 8 | A    I figure if the data says something is |
| 13:01:02 | 9 | significant, I mean, it's not up to me to say that's |
| 13:01:04 | 10 | not important to the client. If it's significant, |
| 13:01:06 | 11 | they should know about it. |
| 13:01:07 | 12 | Q    And how many occasions did this occur on? |
| 13:01:09 | 13 | A    Oh, a few different times. |
| 13:01:10 | 14 | Q    A few? |
| 13:01:12 | 15 | A    Yeah, I mean -- |
| 13:01:12 | 16 | Q    Was it always Beth? |
| 13:01:14 | 17 | A    Yeah. |
| 13:01:15 | 18 | Q    Anyone else present? |
| 13:01:16 | 19 | A    There would usually be other team members |
| 13:01:19 | 20 | present. |
| 13:01:19 | 21 | Q    Like who? |
| 13:01:22 | 22 | A    Whoever the analyst might be. |
| 13:01:25 | 23 | Q    And as specifically as you can, tell me what |
| 13:01:28 | 24 | it was that Beth was doing. Because I'm still not |

| | | |
|---|---|---|
| 13:01:31 | 1 | clear on it. |
| 13:01:32 | 2 | A    She would be removing some -- well, we |
| 13:01:35 | 3 | usually had, you know, the printouts of the screens |
| 13:01:37 | 4 | for the different graphs for what was going to go into |
| 13:01:39 | 5 | the report to lay out the executive summary and what |
| 13:01:41 | 6 | was going to be told in the executive summary.  And |
| 13:01:43 | 7 | normally what I went by, I mean, and it's just because |
| 13:01:46 | 8 | of my training or whatever, is that anything |
| 13:01:48 | 9 | significant I would talk about.  You know, if it was |
| 13:01:51 | 10 | statistically significant, significant, different |
| 13:01:54 | 11 | between time, between, you know, whatever, I would put |
| 13:01:57 | 12 | it in the executive summary and talk about it.  But |
| 13:02:00 | 13 | Beth often changed -- you know, it would go -- |
| 13:02:03 | 14 | Q    Is it often or few now? |
| 13:02:05 | 15 | A    See, it depends.  I mean, I started to talk |
| 13:02:07 | 16 | about one thing, now I've branched off into something |
| 13:02:10 | 17 | else myself. |
| 13:02:11 | 18 | Q    I'd like to find out exactly what -- let me |
| 13:02:12 | 19 | put the question again.  I'd like to have a very |
| 13:02:16 | 20 | specific answer. |
| 13:02:19 | 21 |     Putting aside the request that Valerie Crane |
| 13:02:24 | 22 | made about redoing the analyses, putting that off to |
| 13:02:28 | 23 | the side, was there anything that anyone other than |
| 13:02:33 | 24 | Valerie Crane did while you were at RCL which at the |

| | | |
|---|---|---|
| 13:02:40 | 1 | time you concluded was not a proper research |
| 13:02:47 | 2 | technique? |
| 13:02:48 | 3 |     MR. RALSTON: Objection. Asked and answered |
| 13:02:50 | 4 | on several occasions. I thought -- you said, Counsel, |
| 13:02:54 | 5 | you were going to address another question. You're |
| 13:02:56 | 6 | going back to where you began. |
| 13:02:57 | 7 | BY MR. TANSKI: |
| 13:02:58 | 8 |     Q    Go ahead. |
| 13:02:58 | 9 |     THE WITNESS: Okay? |
| 13:03:01 | 10 |     MR. RALSTON: You may. |
| 13:03:01 | 11 |     THE WITNESS: Do you mean someone |
| 13:03:03 | 12 | independently, or someone following Valerie's |
| 13:03:06 | 13 | direction? Because Beth -- |
| 13:03:07 | 14 | BY MR. TANSKI: |
| 13:03:08 | 15 |     Q    I said anyone. |
| 13:03:09 | 16 |     A    Beth often gave us changes from Valerie, or |
| 13:03:12 | 17 | she would often second-guess what Valerie might want |
| 13:03:15 | 18 | and have us -- because oftentimes -- normally we would |
| 13:03:19 | 19 | do something, give something to Beth, Beth would |
| 13:03:21 | 20 | review it, get it back to us with changes. We would |
| 13:03:24 | 21 | change it, it would go to Valerie, Valerie would give |
| 13:03:25 | 22 | it back to us with changes, and we would make |
| 13:03:25 | 23 | Valerie's changes. |
| 13:03:25 | 24 |     But Beth always used to say that, you know, |

| | | |
|---|---|---|
| 13:03:25 | 1 | she knew what Valerie wanted, and that she would try |
| 13:03:34 | 2 | and help us have less changes from Valerie by |
| 13:03:37 | 3 | organizing our report, or whatever, to what she felt |
| 13:03:40 | 4 | Valerie would feel important. And oftentimes that was |
| 13:03:42 | 5 | spurred by conversations she had with Valerie. |
| 13:03:45 | 6 | Valerie would say she felt certain things would be |
| 13:03:48 | 7 | important, or this, or that, or the other. |
| 13:03:51 | 8 | Q  How many occasions did that occur on? |
| 13:03:53 | 9 | A  Well, that always happened with executive |
| 13:03:55 | 10 | summaries. I mean, that was typical development of |
| 13:04:00 | 11 | the executive summary. |
| 13:04:00 | 12 | Q  The executive summary that would appear in |
| 13:04:02 | 13 | the report? |
| 13:04:03 | 14 | A  Mm-hmm. |
| 13:04:03 | 15 | Q  Anything else that that happened on? |
| 13:04:05 | 16 | A  That would be the main issue, I think, I'm |
| 13:04:10 | 17 | thinking of here. |
| 13:04:10 | 18 | Q  Any others you can think of? |
| 13:04:12 | 19 | A  Not offhand. |
| 13:04:13 | 20 | Q  Okay. Now, you considered that at the time |
| 13:04:16 | 21 | to be improper? |
| 13:04:16 | 22 | A  It depends on how harshly you're using the |
| 13:04:20 | 23 | term "improper." |
| 13:04:21 | 24 | Q  Did you consider it to be an improper report |

| | | |
|---|---|---|
| 13:04:23 | 1 | to the client? |
| 13:04:24 | 2 | A    Sometimes. |
| 13:04:25 | 3 | Q    And did you say that to anyone? |
| 13:04:26 | 4 | A    I mentioned it to Beth. |
| 13:04:28 | 5 | Q    Okay, which studies? |
| 13:04:29 | 6 | A    I -- |
| 13:04:30 | 7 | MR. RALSTON:  Asked and answered. |
| 13:04:31 | 8 | BY MR. TANSKI: |
| 13:04:31 | 9 | Q    Well, you only worked on four or five |
| 13:04:34 | 10 | studies. |
| 13:04:35 | 11 | A    Well, I can't tell you.  We did a lot of |
| 13:04:36 | 12 | writing, it was very busy.  I can't tell you. |
| 13:04:39 | 13 | Q    You can't say which study? |
| 13:04:40 | 14 | A    I mean, we -- the same procedure was taken |
| 13:04:43 | 15 | on all of them. |
| 13:04:44 | 16 | Q    Was that done on the weather study? |
| 13:04:44 | 17 | MR. SAWTELLE:  Objection.  Counsel -- |
| 13:04:45 | 18 | MR. RALSTON:  Objection.  Asked and |
| 13:04:46 | 19 | answered. |
| 13:04:46 | 20 | MR. TANSKI:  Well, it's -- I'm entitled to |
| 13:04:46 | 21 | cross-examine. |
| 13:04:46 | 22 | BY MR. TANSKI: |
| 13:04:47 | 23 | Q    Was it another study? |
| 13:04:48 | 24 | MR. SAWTELLE:  Let her -- let Dr. Soley |

```
13:04:50   1   answer the question before you ask your next question,
13:04:54   2   Counsel.
13:04:55   3              MR. RALSTON:  I realize you may not like the
13:04:57   4   answer, but let her answer.
13:04:58   5   BY MR. TANSKI:
13:04:58   6       Q     Was it done on the weather study?
13:05:00   7       A     Oh, I -- I don't know.
13:05:00   8       Q     Okay, was it done on the WSMV study?
13:05:03   9       A     I couldn't tell you.
13:05:05  10       Q     Was it done on the KVVU study?
13:05:09  11       A     I can't tell you specifically.
13:05:10  12       Q     Okay.  Was it done on the WGNX study?
13:05:10  13       A     I wasn't there for that.  I didn't write the
13:05:10  14   executive summary.
13:05:11  15       Q     Okay, so you don't know then, do you?
13:05:13  16       A     No, I don't.
13:05:14  17       Q     Okay.  Other than this executive summary
13:05:16  18   matter which you testified about just now, while you
13:05:20  19   were at RCL and putting aside anything -- putting
13:05:25  20   aside the request by Valerie Crane that you redo the
13:05:28  21   analyses, was there anything else that anybody at RCL
13:05:33  22   did which you believed at the time was not proper?
13:05:37  23              MR. RALSTON:  Objection as to the overbroad
13:05:38  24   nature of the question and the fact it's been asked
```