UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>       Plaintiff and )<br>       Counterclaim Defendant, )<br>v. )<br>   )<br>MEREDITH CORPORATION, )<br>       Defendant and )<br>       Counterclaim Plaintiff, )<br>    and )<br>   )<br>MEREDITH CORPORATION, )<br>       Third-Party Plaintiff, )<br>v. )<br>   )<br>VALERIE CRANE, )<br>       Third-Party Defendant. ) | CASE NO 3:00CV2179-DFM |

**RESEARCH COMMUNICATIONS, LTD'S AND VALERIE CRANE'S MOTION TO PRECLUDE A. DWAYNE BALL FROM TESTIFYING TO MATTERS IN MR. BALL'S SUPPLEMENTAL EXPERT REPORT SERVED ON MAY 4, 2004**

Research Communications, Ltd. and Valerie Crane (collectively, "RCL") move to preclude A. Dwayne Ball, an expert retained by Meredith Corporation ("Meredith"), from testifying to matters set forth in Mr. Ball's Supplemental Report served on May 7, 2004, years after the deadline for disclosure of expert reports and the close of discovery, and a mere eleven days prior to jury selection. The submission of such May 2004 report is a clear violation of the Federal Rules of Civil Procedure and the Court's Scheduling Order (Covello, J.).

A copy of Mr. Ball's supplemental report ("May 2004 Report") is attached as <u>Exhibit A</u> to the Affidavit of David Mack ("Mack Aff.") filed herewith. Plain and simple, Meredith is attempting to sandbag RCL with Mr. Ball's last minute re-write of his expert report. The Federal Rules and the Court's Scheduling Order prohibit such gamesmanship. In support of this motion, RCL relies on and incorporates herein the Mack Aff. and the Affidavit of Susan Crohan filed herewith and RCL's and Valerie Crane's Motion to Limit the Scope of Evidence of Alleged

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

Improper RCL Services to Services Conducted by RCL for Meredith's Atlanta Station ("Atlanta Only Motion").

**This Motion Must Be Evaluated Against the Extensive Discovery Conducted In This Case and Mr. Ball's Previous Expert Disclosures.**

**Prior Discovery.**

In October 2001, Meredith amended its answer to add counterclaims against RCL and third party claims against Ms. Crane in which it alleged in wholesale, conclusory fashion that each and every one of the approximately seventy research studies conducted by RCL from 1998-2000 for ten Meredith television stations were flawed and unreliable. See, e.g., Counterclaims, ¶23. During discovery, RCL produced tens of thousands of pages of documents and answered several sets of interrogatories, including a detailed interrogatory (drafted by Mr. Ball) concerning RCL's research practices. See Tab B to May 2004 Report (Mack Aff., Ex. A.). Meredith interviewed and conducted depositions of a slew of present and former RCL employees, and engaged Mr. Ball to draft discovery requests and render opinions concerning RCL's research practices. Despite two-plus years of intense discovery, and notwithstanding the blanket allegations in Meredith's counterclaims that all of RCL's research was flawed, the evidence Meredith was relying upon in support of its claims amounted to the testimony of a former RCL employee (Bonita Soley) relating to a single statistical analysis on one research study for Meredith's Atlanta station. See Atlanta Only Motion and exhibits attached thereto.

**Prior Expert Reports.**

The Court's Scheduling Order dated July 10, 2001 required the parties to disclose by March 30, 2002 expert reports in accordance with Fed. R. Civ. P. 26 for any opinion with respect to claims on which a party bears the burden of proof. The Scheduling Order is attached to the Mack Aff. as Exhibit B. Because Meredith bears the burden of proving RCL's research was flawed, Meredith served Mr. Ball's initial report on or about March 28, 2002. Mr. Ball's March

2002 report is attached to the Mack Aff. as <u>Exhibit C</u>.  Upon receipt of Mr. Ball's March 2002 Report, RCL demanded that Meredith supplement such report to comply with the requirements of Rule 26.  <u>See</u> letter dated April 24, 2002 from RCL's counsel to Meredith's counsel, attached to the Mack Aff. as <u>Exhibit D</u>.  Meredith agreed to supplement the report and did so on May 17, 2002.  The May 2002 Report is attached to the Mack Aff. as <u>Exhibit E</u>.

Mr. Ball's May 2002 Report, although slightly more detailed than his initial report, did not expand the <u>scope</u> of his critique of RCL's research.  Consistent with Meredith's interrogatory answers (<u>see</u> RCL's Atlanta Only Motion, Exs. A-D), Mr. Ball's May 2002 Report focused exclusively on one RCL research study for the Atlanta station and the basis of his opinion remained his interviews of two former RCL employees, Bonita Soley and Wayne Cunningham.  RCL took the depositions of Ms. Soley and Mr. Cunningham and confirmed that the knowledge of these individuals, if any, regarding allegedly improper research practices was limited to the one Atlanta study identified by Mr. Ball in his March and May 2002 reports and in Meredith's answers to interrogatories.  <u>See</u> Atlanta Only Motion, Exs. A-E.  Mr. Ball also stated on page 6 of his May 2002 Report:

> In addition, Meredith had requested from RCL the underlying data regarding those research studies performed in the Atlanta and Greenville markets.  This information has been recently provided by RCL to Meredith, such documents comprising approximately 2000 pages.  I have seen a small portion of this . . ."

Thus, in May 2002, Mr. Ball had 2000 pages of underlying data relating to RCL's research for the Atlanta and Greenville (SC) stations.  This data was printed from the SPSS system files copied onto a CD-ROM and delivered to Meredith in March 2004.  <u>See</u> Crohan Aff., ¶6.  If Mr. Ball felt the data delivered were insufficient, or wanted underlying data regarding other studies for other stations, Mr. Ball should have requested that Meredith obtain such

information. Instead, Meredith waited until 2004 to request the information Meredith now claims justifies Mr. Ball's last minute "supplementation." See pp. 8-10 below.[1]

**RCL's Trial Preparation.**

Having used discovery to whittle down Meredith's wholesale allegations of improper research to one statistical analysis on one study for the Atlanta station, RCL saw no reason to depose Mr. Ball and did not do so. Furthermore, the experts RCL retained to rebut Meredith's claims and Mr. Ball's opinions focused on the particular Atlanta statistical analysis about which Ms. Soley testified in her deposition and which is discussed in Mr. Ball's May 2002 report. For several years, RCL has been prosecuting this case and has been preparing for trial on the basis that Meredith's claims and defenses boil down to this one statistical analysis on a single study (Atlanta).

**The 2004 Ball Report Is Not Based On New Information.**

Mr. Ball's May 2004 Report seeks to drastically alter the landscape. About a week before jury selection, Meredith is attempting to dramatically expand the scope of its expert's testimony on Meredith's claims and defenses. Instead of focusing on only the one Atlanta study, Mr. Ball has expanded his report to encompass all Meredith stations for which RCL did research. In an effort to justify its eve of trial disclosure, Meredith represents (falsely) that the May 2004 Report reflects Mr. Ball's review of information only recently produced by RCL. As explained

---

[1] In response to Meredith's request for production of documents, RCL made about two dozen boxes available for inspection in Boston. In late 2001 or early 2002, Meredith's counsel, Christopher Miller, came to inspect the documents. RCL's counsel informed Mr. Miller at that time that in addition to the boxes he was reviewing, RCL would make available the underlying data on the research, which consisted of several thousand additional pages. Meredith's counsel elected at that time not to inspect or have the underlying data copied and shipped. It was not until the Spring of 2002 that Meredith requested underlying data, and only for the Atlanta and Greenville stations. In July 2002, at Meredith's request, RCL also delivered a number of additional data files, including all the available syntax files produced in computerized form in March 2004. See Mack Aff., ¶14.

in detail below, *the reality is that the bulk of Mr. Ball's May 2004 Report is based on the RCL research reports delivered to Meredith in 1998 and 1999. Meredith's contention that Mr. Ball's May 2004 report is based on recently delivered information is a ruse. Mr. Ball has had the bulk of the information all along and to the extent he needed more information, Meredith should have requested it long before January 2004.*

Mr. Ball should be precluded from testifying to anything contained in his May 2004 Report for several reasons. First, most of the May 2004 Report is not based on new information at all, but rather on the RCL research reports Meredith has possessed for five to six years. Second, to the extent the May 2004 Report purports to be based on computerized information delivered by RCL in March 2004, such information was not requested by Meredith until late January and early March 2004, more than eighteen months after the close of discovery. As Mr. Ball stated in his May 2002 report, RCL had produced underlying data for studies performed for Meredith's Atlanta and Greenville stations, the only underlying data desired by Meredith prior to May 17, 2002. Mack Aff., ¶14. Contrary to Meredith's counsel's self-serving statement in his cover letter accompanying the May 2004 Report (see Mack Aff., Ex. A), the information requested by Meredith in its first request for production of documents was not the information disclosed in March 2004. See Affidavit of Susan Crohan filed herewith. Finally, to the extent Mr. Ball is permitted to expand the scope of his opinions, the opinions expressed on page 12 of his May 2004 Report are not compliant with Rule 26's disclosure requirements and fall well short of the reliability threshold under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Mr. Ball must be precluded from rendering the opinions on page 12 of the May 2004 Report.

### Unfair Prejudice To RCL.

RCL would be severely prejudiced if Meredith were permitted, at this extremely late date, to dramatically expand the scope of its expert opinions to encompass *all of RCL's research as opposed to the one Atlanta research study identified by Meredith as statistically flawed during discovery.* The Federal Rules of Civil Procedure long ago banished this type of hide-the-ball tactic.

### ARGUMENT

I. **Certain of the Opinions In The May 2004 Ball Report Are Based On Documents Delivered to Meredith in 1998 or 1999, Before this Action Commenced. This Is Not New Information Which Permits Meredith To Supplement Mr. Ball's Opinions.**

In his initial reports authored in 2002, Mr. Ball targets the benefits segmentation study conducted by RCL for Meredith's television station in Atlanta, WGNX (now WGCL) (the "Atlanta Benefits Study"). His 2002 opinions regarding the Atlanta Benefits Study were purportedly based on his interviews of Bonita Soley and Wayne Cunningham, former employees of RCL. For his 2002 reports, he also reviewed the written reports prepared by RCL in connection with Atlanta Benefits Study. In addition, Mr. Ball's May 2002 report identified various details that were not contained in certain written reports concerning research for Meredith's Atlanta and Greenville stations. See Mack Aff., Ex. E.[2] With the exception of these specific written RCL reports and his interviews of Ms. Soley and Mr. Cunningham, Mr. Ball did not cite to any other RCL reports. Meredith had in its possession at the time of Mr. Ball's 2002

---

[2] Mr. Ball's May 2002 opinions on the reports for Greenville related only to what Mr. Ball claimed were omissions in the information reported (which RCL's expert, Suzanne Sell, addressed in her rebuttal expert report). Mr. Ball's 2002 opinions on Greenville did not address the RCL benefits segmentation analysis for that station. Only the Atlanta benefits segmentation study was addressed by Mr. Ball in 2002. Mr. Ball did not render any opinion specific to Phoenix.

Reports approximately fifty additional written research reports prepared by RCL for eight other Meredith television stations during the period 1998-2000.

In his May 2004 Report, Mr. Ball dramatically expands his opinions to include opinions as to written reports which have been at his disposal since the time he was engaged in 2001, well before he issued his reports in 2002.

### Mr. Ball's Single Item Factor Opinion Is Based On Documents Meredith Has Possessed For Over Four Years.

Specifically, Mr. Ball's May 2004 Report states on pp. 11-12:

> With respect to the other segmentation studies performed by RCL for Meredith there are instances where the solutions presented clearly did not yield conclusions that can be relied upon. In the case of Meredith's Greenville and Kansas City stations, as in the case of the Atlanta station, the factor solution presented contains a single item factor. By definition, a single item factor is not sufficient to satisfy the principle of accounting for common variance (see Nunnally and Bernstein, page 483), nor likely to be reliably measured thereby rendering the solution and the conclusions drawn from the solution unreliable.

In this language Mr. Ball is referring to a page in the written RCL reports for the Atlanta, Greenville and Kansas City stations provided to Meredith before this case commenced. See Mack Aff., Exhibit F. These very research reports (including these specific pages) were available to Mr. Ball in 2001. In his 2002 Reports, Mr. Ball did not render any opinion that the solutions presented in the reports (Mack Aff., Ex. F) were unreliable in light of the fact that the solution presents a single item factor. Mr. Ball had all the information available to him in 2002 that he relies upon to reach the above quoted opinion in May 2004. This portion of his May 2004 Report is not based on new information. It is based on the very information Meredith had when Mr. Ball prepared his initial reports in 2002. If Meredith wanted Mr. Ball to express an opinion that the solutions were unreliable because they presented a single item factor, Meredith should have put it in Mr. Ball's 2002 reports.

## Mr. Ball's "Attributes" Opinion Is Based On Documents Meredith Has Had For Over Four Years.

Mr. Ball further opines in his May 2004 Report that:

> RCL, through its experts, maintains that certain items should be stricken from a benefits segmentation study because they are not benefits, but "attributes." Yet, RCL factor solutions reported to Meredith contain many such apparent "attribute" items (following the distinction elucidated by RCL's expert Suzanne Sell). Such apparent "attribute" items in RCL factor solutions reported to Meredith occur, for example, in the Atlanta, <u>Las Vegas, Phoenix, and Flint/Saginaw/Bay City segmentation studies</u>.

May 2004 Report, p. 11 (emphasis added).

Again, Mr. Ball is relying upon the very documents provided to Meredith at the time of the research in 1998 and 1999. The questionnaires Mr. Ball refers were part of the reports delivered at the time of the research. Nothing of this sort was in Mr. Ball's 2002 Reports despite the fact that this information was in Meredith's possession prior to commencement of this action.

Mr. Ball in his "attribute" opinion refers to one of RCL's experts, Suzanne Sell. In May and July 2002, long before Meredith deposed RCL's experts, Meredith's questioned several RCL witnesses, including Valerie Crane and Beth Rabin, about the propriety of including "attribute" items in a factor analysis performed on a benefits segmentation study. <u>See</u>, <u>e.g.</u>, Deposition of Valerie Crane, pp. 271-278 (Mack Aff., Ex. G); Deposition of Beth Rabin, pp. 63-68 (Mack Aff., Ex. H). In addition, in July 2002, RCL served on Meredith an expert report of Ronald Nuttall which addressed with specificity the "attribute" opinion discussed for the first time by Mr. Ball in May 2004. Mr. Nuttall's report is attached to the Mack Aff. as <u>Exhibit I</u>. Mr. Nuttall unfortunately passed away shortly after his report was served. If Meredith wanted Mr. Ball to address the propriety of including "attribute" items in a benefits segmentation factor analysis, it should have asked him to do so long ago and should have disclosed his opinion on attributes long before May 7, 2004.

**The Federal Rules and the Court's Scheduling Order Do Not Permit Testimony On These New Opinions.**

Accordingly, each of the two opinions quoted above is based on the research reports delivered to Meredith in 1998 or 1999. In its discovery, RCL probed into the basis of Meredith's conclusory allegations that RCL's research was flawed. The repeated response of Meredith was the Atlanta segmentation analysis (and the nitpicky critique of certain technical information being absent from certain reports prepared for the Atlanta and Greenville stations). See RCL's Atlanta Only Motion. If Meredith desired to expand the scope of Mr. Ball's opinions based on his review of the reports, it should have had Mr. Ball read the other reports and render opinions concerning such reports in May 2002. The Federal Rules, and the Court's Scheduling Order, do not permit Meredith to ambush RCL at the eleventh hour with opinions that could have been rendered years ago.

**II.    Meredith's Argument that Mr. Ball's Supplemental Report is Based on Recently Delivered Computerized Data is Pretextual.**

Meredith will claim that Mr. Ball's late disclosure is warranted by RCL's delivery in March 2004 of electronic SPSS system files.[3] Meredith will further claim that such electronic files were requested in 2001. This is not true.

During discovery, Meredith's request for documents on the research studies was limited to document request no. 49, which is attached at Tab C to Mr. Ball's May 2004 Report (Mack Aff., Ex. A). Mr. Ball states in his May 2004 Report that he drafted that document request, which was served on RCL in September 2001. Meredith claims that item 49(b) encompasses the electronic SPSS system files that RCL delivered in March 2004. See letter dated January 20, 2004 from Meredith's counsel (Mack Aff., Ex. J). This argument is without merit. Item 49(b)

---

[3]    SPSS is standard software used in the market research industry to perform certain statistical procedures.

seeks "any computerized data file <u>showing the data gathered before any respondents or variables were deleted</u>." (Emphasis added.) The SPSS system file maintained electronically by RCL and delivered to Meredith in March 2004 is not a "computerized data file showing the data gathered before any respondents or variables were deleted." Rather, such SPSS system files contain data that has been recoded and from which respondents have been removed. Crohan Aff., ¶5. What item 49(b) sought was discarded long ago during the ordinary course of RCL's business. <u>Id.</u> This is no surprise to Meredith because, in response to an interrogatory which Mr. Ball states he drafted for Meredith, RCL stated in early 2002 that "RCL maintained the raw data for a study for six months following its delivery." <u>See</u> Interrogatory answer 14(a), attached to Mr. Ball's May 2004 report at Tab B (Mack Aff. Ex. A).

Had Mr. Ball needed the electronic SPSS system files in order to render an opinion in support of Meredith's allegations that all of RCL's research was flawed, he should have drafted the document request to seek "any computerized SPSS system files," or "any computerized data files, whether before or after respondents or variables had been removed." He did not so draft the request. Alternatively, having learned that RCL's practice was to discard raw data, i.e. "computerized data files showing the data gathered before any respondents or variables were deleted," Mr. Ball should have followed up his initial request to seek the SPSS system files, i.e. computerized files showing the data gathered <u>after</u> respondents and/or variables were deleted.[4]

Moreover, Mr. Ball had in his possession in May 2002, 2000 pages of data pertaining to the Atlanta and Greenville stations. These data were printed from the SPSS system files later

---

[4] Nor does the computerized SPSS system files delivered in March 2004 fall within the scope of request 49(c), which seeks any codebook for any data files responsive to item (b). Item (c) does not seek any computerized information at all (the only computerized data sought in request no. 49 is item (b) discussed above). In any event, the SPSS system files delivered in 2004 are not codebooks. Crohan Aff., ¶7.

delivered on the CD-ROM in March 2004. Crohan Aff., ¶6. He did not render any opinion -- as he now purports to render in his 2004 Report -- that "it is impossible to verify the conclusions of such studies." He did not request additional data, computerized or written, which he felt was necessary to render his opinions.

Even as late as 2004, when Meredith first requested the electronically stored SPSS system files, Meredith only requested such files pertaining to the Atlanta station. See Mack Aff., Ex. J. It was not until March 12, 2004 that Meredith first requested the SPSS system files pertaining to all Meredith stations. See e-mail exchange between RCL's counsel (Mr. Mack) and Meredith's counsel (Mr. Sawtelle), attached to the Mack Aff. as Exhibit K, which refers to a telephone conversation on the Friday before March 15, 2004, i.e. March 12.

### Mr. Ball's "Cronbach alpha" Opinion Is Apparently Based On a Document Produced By RCL in July 2002 And In Any Event Meredith Had Such Document.

Mr. Ball further opines in his May 2004 Report:

Further, in the Atlanta segmentation study at least three of the eight factors do
not meet generally-accepted standards for measurement quality (specifically,
internal consistency reliability, having Cronbach's alpha coefficients below 0.7,
which is a bare minimum even in early stages of research; see Nunnally and
Bernstein, page 265).

May 2004 Report, p. 11.

Mr. Ball does not disclose any analysis he performed as supporting his conclusion that the Cronbach's alpha coefficients were below 0.7 on three of the eight factors on the Atlanta Benefits Study. RCL assumes, therefore, that Mr. Ball derived such a conclusion from a document produced by RCL in July 2002, in which the Cronbach's alpha coefficients are identified for the factors on the Atlanta Benefits Study. See Mack Aff., Ex. L. There is no excuse for Meredith waiting almost two years to disclose Mr. Ball's opinion on the Cronbach

alpha analysis for Atlanta.[5]

When the facts concerning discovery and Mr. Ball's previous reports are reviewed, it becomes obvious that Meredith is using RCL's recent delivery of the electronic SPSS system files as a pretext for expanding the scope of Mr. Ball's testimony, and is doing so on the cusp of trial. Rule 26 and Judge Covello's Scheduling Order prohibit trial by ambush. Mr. Ball must be precluded from testifying to any matter and from relying upon any materials not expressly set forth in his 2002, reports including his opinions on (a) <u>single item factors</u>, (b) <u>attributes</u>, (c) <u>Cronbach alpha</u> analyses and (d) the Nunnally and Bernstein treatise.

### III. Mr. Ball's 2004 Opinions on Page 12 of His Report that RCL's Research is Unreliable Are Not Supported By A Statement of Bases as Required by Rule 26 and are Unreliable under Daubert.

Mr. Ball must be precluded from offering the opinions on page 12, where he states as follows:

> Review of the compact disc supplied by RCL which purports to contain the SPSS system files for all Meredith studies reveals that it is impossible to verify the conclusions presented. It is impossible to correctly claim that RCL produced results in connection with these studies upon which Meredith could rely as a basis for decisions affecting market strategy. Results which can be verified, such as those identified above, have been confirmed as incorrect. Because none of the research, analysis and conclusions presented in connection with any of the benefits segmentation studies performed by RCL for Meredith can be verified, and because those conclusions that can be verified are confirmed as incorrect, it is my opinion that the work performed by RCL relative to each of these stations failed to meet the applicable professional and ethical standards required of a market research supplier. In view of the confirmed introduction of bias in the Atlanta segmentation study, coupled with the unreliable nature of the solutions in the other two studies identified, and because the conclusions reported to Meredith cannot be verified from the underlying data, such conclusions by definition could not provide a reliable basis for decisions affecting marketing strategy. The market segmentation studies conducted by RCL for Meredith in these markets, and any following work by RCL that was premised upon the validity of such studies, was therefore of no utility or value to Meredith.

---

[5]   Mr. Ball also should be precluded from relying upon the 1994 treatise cited in support of this opinion (Nunnally and Bernstein), as such treatise was plainly available to him in 2002.

May 2004 Report, p. 12.

Based on the Daubert standard discussed at pp. 5-6 of RCL's Daubert motion pertaining to Meredith's other proffered experts, Kevin O'Brien, Douglas Lowe and Richard Haynes (incorporated herein by reference), Mr. Ball cannot be permitted to testify to the sweeping, conclusory, unsupported opinions on page 12 of his report. Rule 26(a)(2)(B) mandates a complete statement of the bases and reasons for the opinions expressed. Mr. Ball's May 2004 Report does not contain any statement of the bases and reasons for the opinions expressed on page 12. What does he base these opinions on? On what basis does he opine that it is impossible to verify the results? What is it about the SPSS system files that prevented him from verifying the results? On what basis does he opine that "results that can be verified . . . [are] confirmed as incorrect?" Rule 26 requires the party offering the opinions of a retained expert to include sufficient information and data to support the expert's opinion and the methodology must be reliable. Mr. Ball's blanket opinions in various forms that he reviewed the compact disc and could not verify the accuracy of the results is not a reliable methodology and his report does not state the bases of such opinions as required by Rule 26.

RCL would be unfairly prejudiced if a jury were permitted to hear Mr. Ball's baseless, conclusory, naked opinions relating to all of RCL's research. Rule 26 commands that the testimony of Mr. Ball be excluded because Mr. Ball's May 2004 Report is lacking any statement of the basis and reasons for such opinion. Daubert requires the trial court, as the gatekeeper, to exclude these baseless opinions.

## Conclusion

WHEREFORE, for the above reasons, RCL requests that its motion be allowed and that Mr. Ball be precluded from relying upon or offering any testimony as to the matters set forth in the May 2004 supplemental report, and that his testimony be limited to the matters expressly

included in his 2002 reports. In particular, RCL requests that Mr. Ball be precluded from testifying as to (a) single item factors, (b) attributes, (c) Cronbach alpha analysis, (d) the Nunnally and Bernstein treatise and (e) the matters set forth on page 12 of his May 2004 Report.

Dated: May 14, 2004

RESEARCH COMMUNICATIONS, LTD. AND
VALERIE CRANE
By their Attorneys,

_____
Joseph C. Tanski   Ct. 22211
David B. Mack   Ct. 23151
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

## CERTIFICATE OF SERVICE

I, David B. Mack, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party as follows :

> James G. Sawtelle, Esq.
> Duncan, Green, Brown,
>  Langeness & Eckley
> 600 Seventeenth Street
> Suite 2800 South
> Denver, Colorado 80202-5402
>
> Robert M. Callagy, Esq.
> Satterlee Stephens Burke & Burke LLP
> 230 Park Avenue
> New York, NY 10169-0079
>
> James Sicilian, Esq.
> Day Berry & Howard
> Cityplace I
> 185 Asylum Street
> Hartford, CT  06103-3449

by overnight mail on May 14, 2004.

*/s/ David B. Mack*
David B. Mack