UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2004 JUN 21  A 10: 17
U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD.,<br>   Plaintiff and<br>   Counterclaim Defendant,<br>v.<br><br>MEREDITH CORPORATION,<br>   Defendant and<br>   Counterclaim Plaintiff,<br>  and<br><br>MEREDITH CORPORATION,<br>   Third-Party Plaintiff,<br>v.<br><br>VALERIE CRANE,<br>   Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO 3:00CV2179-DFM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### RESEARCH COMMUNICATIONS, LTD.'S MOTION FOR JUDGMENT ON ITS CLAIM FOR ATTORNEYS' FEES AND COSTS

In accordance with the May 26, 2004 Agreement between Research Communications, Ltd. ( "RCL"), Meredith Corporation ("Meredith") and Valerie Crane, RCL, as the prevailing party in the litigation, moves for judgment on its claim for attorneys' fees and costs under ¶10 of its contract with Meredith. RCL requests that judgment enter in its favor on count I of the complaint and that RCL be awarded a total of $1,088,695.40 in attorneys' fees and costs (plus interest on the amount thereof paid to date by RCL), plus such additional fees and costs as are incurred by RCL after May 31, 2004. In support of its motion, RCL relies upon and incorporates by reference the following:

- Affidavit of Daniel Gleason, Esq. (opining as to the reasonableness of RCL's attorneys' fees and costs);

- Affidavit of Joseph C. Tanski, Esq. (attaching copies of the bills of lead counsel);

- Affidavit of David B. Mack, Esq. (discussing the course of the litigation and the tasks performed by RCL's counsel);

**ORAL ARGUMENT REQUESTED**

- Affidavit of Lee Michael (describing the accounting practices of Nixon Peabody and Hutchins Wheeler & Dittmar pertaining to costs incurred in the litigation);

- Affidavit of Kathleen Gaughan (attesting to the costs paid or to be paid directly by RCL in the litigation).

## Introduction

This case arises out of a contract entered into in 1998 by RCL and Meredith pursuant to which RCL agreed to conduct, and Meredith agreed to pay for, market research and related services for ten Meredith television stations (the "Research Contract"). A copy of the Research Contract is attached to the Mack Affidavit as Exhibit 7. Meredith terminated the relationship in the Fall of 2000. RCL brought this action against Meredith, alleging that the parties agreed to conduct the research specifically identified in the Research Contract and that Meredith did not have the right to cancel the Research Contract. RCL sought recovery of the anticipated profits on those research studies remaining under the Research Contract at the time Meredith terminated the relationship, amounts owing for work RCL had conducted as of the time of termination and reimbursement of out-of-pocket expenses RCL had paid in connection with such work. See RCL's Complaint.

In addition to disputing RCL's claim that the Research Contract was non-cancelable, Meredith raised two defenses to RCL's claims. First, Meredith asserted that it had no obligation to RCL under the Research Contract because RCL had engaged in improper research methodologies, including the intentional manipulation of research data. Second, Meredith contended that RCL's claim was barred on account of RCL having fraudulently induced Meredith into executing the Research Contract. The basis of the fraudulent misrepresentation defense was an alleged representation in April 1998 by Ms. Crane, RCL's President, to Meredith's Chief Executive Officer, William Kerr: "Ms. Crane assured me that RCL was capable of providing services of the highest quality, pointing out that she and her company

BOS1389243.3                                    2

enjoyed a number of successful business relationships with other large media concerns, including The Walt Disney Company". See Affidavit of William Kerr, ¶6.[1] The alleged facts underlying the "flawed research" and "Disney" defenses also served as the basis of Meredith's counterclaims against RCL and third-party claims against Valerie Crane personally.

### The May 26, 2004 Agreement

On May 26, 2004, the parties reached an agreement ("May 2004 Agreement"). A true and accurate transcription of the May 2004 Agreement (which is handwritten and somewhat difficult to read) is attached as Exhibit 6 to the Mack Affidavit. Under the May 2004 Agreement, Meredith agreed to pay RCL a confidential amount on RCL's claims, which the parties agreed would not be disclosed to the Court or any third party. The parties further agreed to execute mutual general releases of all claims the parties had against one another, including the claims in this action. Specifically excluded from the release is RCL's claim for attorneys' fees and costs under paragraph 10 of the Research Contract. The parties agreed to try to this Court RCL's claim under paragraph 10 of the Research Contract, and Meredith reserved its "right to challenge the amount of the fees and costs sought" by RCL. May 2004 Agreement, ¶3.

Paragraph 10 of the Research Contract provided as follows: "In the event [RCL] institutes legal action to collect any sum(s) due under this Agreement, the prevailing party in the litigation shall pay the other party's court costs and reasonable attorney's fees." See Mack Aff., Ex. 7.[2]

---

[1] Mr. Kerr's Affidavit was filed by Meredith in connection with the summary judgment motion.

[2] Due to a scrivener's error, paragraph 10 of the Research Contract provided that the <u>prevailing</u> party in the litigation shall pay the other party's reasonable attorneys' fees and costs. RCL's complaint sought reformation of this provision to reflect the intent of the parties that the non-prevailing party pay the other party's fees and costs. The parties agreed

*(Footnote continued on next page)*

The parties further agreed in the May 2004 Agreement that "[RCL's] attorneys' fees and legal expenses claim [under paragraph 10 of the Research Contract] will take place based on the following stipulations:

- a.) RCL is the prevailing party on its claims and Meredith is the non-prevailing party on RCL's claim and on its counterclaims and third-party claims.
- b.) Valerie Crane will not seek reimbursement for her personal attorneys' fees.
- c.) The amount of the settlement will not be disclosed to Judge Martinez nor taken into account in the trial for attorneys' fees and expenses.

May 2004 Agreement, ¶4.

Thus, the parties have stipulated that RCL is the prevailing party on all of RCL's claims and all of Meredith's claims and that Meredith is the non-prevailing party. The Research Contract unambiguously provides that Meredith, as "the non-prevailing party in the litigation[,] shall pay [RCL's] court costs and reasonable attorney's fees." The only matter for the Court's consideration, therefore, is the reasonableness of RCL's attorneys' fees and costs.

### RCL's Attorneys' Fees and Costs

**A.    Summary of Fees and Costs**

RCL seeks recovery herein of $1,088,695.40 in attorneys' fees and costs incurred in the litigation against Meredith through May 31, 2004.[3] The $1,088,695.40 consists of the following:

---

*(Footnote continued from previous page)*

in the May 2004 Agreement that "[t]he attorneys' fees provision of the contract (¶10) is reformed as follows: the word 'prevailing' is changed to non-prevailing." See May 2004 Agreement, ¶8. As amended, therefore, paragraph 10 of the Research Contract provides, in part: " . . . the non-prevailing party in the litigation shall pay the other party's court costs and reasonable attorney's fees."

[3]   RCL has incurred additional fees and costs subsequent to May 31, 2004, primarily for work performed in connection with the instant motion. RCL is entitled to recover its fees and costs incurred in connection with its fee application. See J.P. Sedlak Associates v. Connecticut Life & Casualty Ins. Co., No. 3:98 CV 145 (DFM), 2000 U.S. Dist. LEXIS

*(Footnote continued on next page)*

| | |
|---|---|
| Attorneys' Fees of Lead Counsel (Hutchins, Wheeler & Dittmar and Nixon Peabody) | $948,495.50 |
| Costs Paid by Lead Counsel on RCL's Behalf | $63,502.02 |
| Attorneys' Fees of Local Counsel (Whitman Breed Abbott & Morgan) (See Gaughan Aff., Ex. B) | $12,254.00 |
| Costs Paid by Local Counsel on RCL's behalf (See Gaughan Aff., Ex. B) | $1,019.21 |
| Costs Paid or to be Paid Directly by RCL (including experts) | $63,424.75 |

The specific tasks performed by RCL's counsel and paralegals are described in detail in the bills attached to the Tanski Affidavit as Exhibit A. The number of hours spent by each attorney (and paralegal) who worked on RCL's behalf in the litigation, the billing rates of such individuals, and the year of each attorney's law school graduation are set forth in a chart attached to the Tanski Affidavit as Exhibit B. The costs paid directly by RCL and invoices relating to such are identified in and attached to the Gaughan Affidavit. The bills of RCL's local counsel are attached to the Gaughan Affidavit as Exhibit B.

RCL incurred the attorneys' fees and costs sought in this motion over the course of nearly four years. The procedural history is lengthy and RCL's claims were hotly contested at every step along the way. In the interests of brevity, the tasks performed by RCL's counsel are not repeated here. RCL refers the Court to the Mack Affidavit for a discussion of the nature of the services provided as the case proceeded from commencement to the brink of trial. RCL also

---

*(Footnote continued from previous page)*
    18947, *24 (D. Conn. 2000), citing Gagne v. Maher, 594 F.2d 336, 343 (2d. Cir. 1979). RCL will supplement its filings as soon as such work is completed.

refers the Court to the bills attached to the Tanski Affidavit for an itemization of each specific task performed on any given day.

### B. Meredith Exponentially Escalated the Cost of this Litigation.

RCL's fees and costs are reasonable based on all the factors traditionally employed by the courts in the fee application arena: the complexity of the legal and factual issues involved; the geographic scope of discovery; the efficient staffing and management of the case; the quality of the representation; the appropriateness of the tasks performed by counsel; and the consistency of the hourly rates of RCL's counsel with the prevailing rates for comparably skilled attorneys in the Boston community. See generally Gleason Affidavit. But RCL should be awarded all of its fees and costs for the additional reason that Meredith is responsible for the bulk of the fees and costs incurred by RCL in this action.

The scope of this case should have been limited to whether the Research Contract was cancelable and the amount of damages recoverable by RCL for work performed prior to the time Meredith terminated the relationship. At Meredith's doing, however, this case escalated into an all-out assault on RCL's research practices and integrity. RCL was forced to incur fees and costs rebutting Meredith's after-the-fact fraudulent inducement and flawed research defenses. Such defenses, if proven, would have barred any recovery by RCL, as well as destroyed RCL's reputation in the market research industry. Meredith could have avoided a substantial portion of the fees and costs sought by RCL in this case. Meredith, however, chose a different course from the outset of this litigation. Meredith unleashed its team of in-house lawyers, outside counsel and private investigator in an effort to bury and intimidate RCL, with the hope that RCL would buckle, as most limited resource litigants do when facing opponents of substantial means like

Meredith.[4] Under paragraph 10 of the Research Contract, RCL is entitled to be reimbursed for fees and costs incurred as the prevailing party.

### C. Procedural History and the Services Provided by RCL's Counsel

1. <u>Initial Pleadings; Meredith's Venue Transfer Motion</u>. RCL commenced this action in November 2000. RCL is based in Braintree, MA. Meredith's headquarters are in Des Moines, IA. The Meredith television stations for which RCL conducted research were located in Hartford, CT, Greenville, SC, Atlanta, GA, Orlando, FL, Nashville, TN, Kansas City, MO, Saginaw, MI, Phoenix, AZ, Henderson, NV, and Portland, OR. RCL elected to bring this action in federal court in Connecticut because RCL desired to be in federal court and Connecticut was the forum closest to Massachusetts in which RCL was confident Meredith was subject to jurisdiction. Meredith filed a motion to transfer venue to Iowa. Meredith is one of the largest employers in Iowa (only a few companies in Des Moines have more employees than Meredith) and it would have been potentially damaging to RCL's case to have the case transferred from Connecticut to Iowa. Prosecution of the claim in Iowa by Massachusetts-based RCL would have imposed substantial additional costs and inconvenience on RCL. Accordingly, RCL objected to Meredith's motion and prevailed. <u>See</u> Mack Aff., ¶4.[5]

---

[4] Meredith is a New York Stock Exchange company. Its filings with the U.S. Securities and Exchange Commission reveal that it had revenues in 2003 in excess of $1 billion. RCL is a small company, formed in 1980 and wholly owned by Valerie Crane. RCL's projected fiscal 2004 revenues (for the year ending June 30, 2004) are approximately $1.6 million. RCL had approximately 20 employees at the time Meredith terminated the relationship in 2000 and has approximately one dozen employees presently. RCL was forced to borrow money to pay a portion of its legal fees and Ms. Crane has received no salary since June 2001.

[5] The home court advantage for Meredith in Iowa cannot be underestimated. RCL even had difficulty securing a neutral location in Des Moines at which to conduct depositions. RCL's counsel had a relationship with an Iowa attorney in connection with other matters and had arranged for the depositions to take place there. Meredith, however, had used that firm in

*(Footnote continued on next page)*

Meredith raised a number of affirmative defenses in its initial answer. One such defense was unclean hands. In particular, Meredith falsely asserted that RCL, through Ms. Crane, had engaged in a civil conspiracy with a former employee of Meredith, Larry Emsweller, to set up a business to compete with RCL.[6] In addition, Meredith asserted that RCL was barred from recovery because the amounts charged by RCL exceeded the value of the research.

In August 2001, Meredith moved to amend its answer to assert new defenses. Robert Mazur, a private investigator retained by Meredith, had scoured the country in an effort to dig up dirt on RCL. Meredith, through its counsel and investigator, contacted former RCL employees, and current and former clients of RCL.[7] Meredith discovered certain information which it then used as the basis of new defenses and allegations – that RCL's research was flawed and that RCL had fraudulently induced Meredith into executing the contract.

2.  <u>Written Discovery.</u>  The parties engaged in significant written discovery. Together the parties produced approximately 100,000 pages of documents in response to requests for production. RCL propounded multiple sets of interrogatories in an effort to discover the bases of Meredith's alleged defenses. Meredith repeatedly dodged RCL's interrogatories, forcing extensive correspondence in an effort to avoid motions to compel. Meredith, in response to RCL's demands, on multiple occasions supplemented answers to interrogatories. In addition,

---

*(Footnote continued from previous page)*
the past and refused to permit the attorney to allow RCL to use a conference room for the deposition.

[6] Meredith later dropped its civil conspiracy counterclaim.

[7] Some individuals contacted by Meredith informed RCL that Meredith went so far as to ask about the personal life of Valerie Crane, John Loughlin and one of RCL's expert witnesses.

Meredith issued subpoenae to eleven third parties, including RCL's accountants, RCL's counsel in this case, two of RCL's clients and several of RCL's vendors. See Mack Aff., ¶5a-5b.[8]

        3.     Cross-Motions for Summary Judgment as to Meredith's Purported Right to Terminate the Contract. In December 2001, Meredith filed a motion for summary judgment on the issue of whether the Research Contract was cancelable. RCL opposed such motion and filed a cross-motion for summary judgment that the Research Contract was non-cancelable.[9] The opposition to Meredith's summary judgment motion and the cross-motions for summary judgment involved the preparation of a number of memoranda of law, supporting affidavits and two motions to strike testimony from affidavits submitted by Meredith.[10] The cross-motions also required a significant amount of legal research. See Mack Aff., ¶7.[11] The cross-motions for

---

[8]   Meredith's inadequate responses to RCL's interrogatories concerning Meredith's allegations of improper research are discussed in detail in RCL's motion in limine to limit the scope of evidence of improper RCL research to RCL research for Meredith's Atlanta station. A copy of the motion in limine is attached to the Mack Affidavit as Ex. 5. Meredith's interrogatory answers are symptomatic of the manner in which it litigated this case. Meredith throughout made bald, conclusory allegations concerning RCL's research, but refused to provide the alleged evidence that supported such allegations. Meredith's vague responses to discovery caused RCL to devote considerable time and energy to discovery.

[9]   In addition, RCL cross-moved for summary judgment that RCL and Meredith had agreed to conduct $938,000 of research in Meredith's fiscal year 2001.

[10]   Among other submittals, RCL's counsel prepared a memorandum in opposition to Meredith's motion and in support of RCL's motion, a reply to Meredith's opposition to RCL's summary judgment motion, two detailed affidavits of Valerie Crane, several additional supporting affidavits, Local Rule 9 statements supporting RCL's motion and in opposition to Meredith's motion, and two motions to strike evidence and testimony relied upon by Meredith as non-compliant with Fed. R. Civ. P. 56(e). See Mack Aff., ¶7.

[11]   The legal research issues included, without limitation, contract interpretation and the admission of extrinsic evidence, statute of frauds, mitigation of damages, the requirements of affidavits under Rule 56(e), opinion testimony and fraudulent inducement (raised by Meredith in opposition to RCL's motion). In addition, because the contract did not contain a choice of law provision and the conduct of the parties took place in several different locations (and varied depending on the legal issue being analyzed), the legal research also

*(Footnote continued on next page)*

summary judgment were denied by Judge Covello on the basis that the Research Contract was ambiguous insofar as it related to Meredith's right to terminate and therefore extrinsic evidence would need to be considered by the jury.[12]

    4.    <u>Depositions.</u> Deposition discovery in this case was extensive and was fueled primarily by Meredith and Meredith's defenses. See Mack Aff., ¶5c and Exs. 3 and 4. Twenty-six depositions were conducted; nine by RCL, seventeen by Meredith. Of the nine conducted by RCL, only two (John Loughlin and Perry Bradshaw) pertained to the issue of whether the Research Contract was cancelable. The focus of the other seven depositions conducted by RCL, and all but two of the depositions conducted by Meredith (Crane and Gaughan) concerned Meredith's Disney and flawed research defenses. RCL staffed all of the depositions with one counsel. Lead counsel (Mr. Tanski) conducted two depositions (Loughlin and Soley) and defended two depositions (RCL's experts, deposed on a single day). Mr. Mack conducted or defended twenty-one of the remaining twenty-two depositions and a fourth year associate (Scott Rostock) defended the other. See Mack Aff., Ex. 3. In contrast, about half of the depositions were attended by more than one Meredith outside counsel. See Mack Aff., Ex. 4. Not only were the depositions numerous, they took place all over the country. RCL was forced to take two separate trips to California to defend depositions noticed by Meredith in support of its Disney and flawed research defenses, including one Disney consultant (Teri Denson) with whom RCL was unfamiliar. RCL defended or conducted depositions in the following cities in an effort to rebut Meredith's Disney and/or flawed research defenses: Pittsburgh, Washington

---

*(Footnote continued from previous page)*
    concerned conflicts of law and the analysis of several jurisdictions' case law. See Mack Aff., ¶7.

[12]    The Court therefore denied as moot RCL's motions to strike and Meredith's motion to supplement the summary judgment record.

(twice), Huntsville, Atlanta, New York (twice), Lexington (KY), Hartford, Des Moines, Los Angeles, Santa Barbara, and Boston. See Mack Aff., Ex. 3.[13]

      6.    <u>RCL's Motion for Summary Judgment on Meredith's Defenses.</u> Despite Meredith's extraordinary effort to discover (through counsel and its private investigator) facts supporting its alleged flawed research defense, the best Meredith could muster was the testimony of a former RCL employee, Bonita Soley, concerning a single statistical analysis on a particular research study for Meredith's Atlanta television station. <u>See</u> Motion in Limine - Atlanta Only (Mack Aff., Ex. 5). Similarly, despite months of discovery, including a number of expensive depositions in California, the facts supporting Meredith's alleged Disney defense were virtually non-existent and the alleged misrepresentation was more business puffery than fact upon which Meredith could justifiably have relied. Accordingly, RCL in August 2002 filed a motion for summary judgment on Meredith's flawed research and Disney defenses (and the counterclaims and third-party claims based on the same facts). Such motion entailed the preparation of an initial memorandum, a reply memorandum, supporting affidavits and a motion to strike materials submitted by Meredith in opposition to the motion. The motion also required legal research concerning several of the elements of Meredith's fraudulent inducement defense and regarding conflicts of law. <u>See</u> Mack Aff., ¶8. Shortly after filing such motion, the Court (Covello, J.) ordered the parties to mediate the case before United States Magistrate Judge Smith. Unfortunately, despite the efforts of Judge Smith, Meredith's offer resulting from such mediation

---

[13] The deposition in Lexington, KY was of John Clark. Mr. Clark was identified by Meredith in its interrogatory answers as a person with knowledge of alleged improper RCL research practice  In support of RCL's motion for a protective order to prevent the deposition (and others) from proceeding, Mr. Clark had signed an affidavit stating that he was a former independent contractor of RCL and he had never worked on any study conducted by RCL for a Meredith station. The court denied RCL's motion for a protective order on the basis that RCL lacked standing to bring such motion and Meredith proceeded with the deposition.

was approximately equivalent to RCL's attorneys' fees and expenses incurred as of that date.[14] Some time was spent subsequent to the mediation in an effort to settle the matter, to no avail.

    7. <u>Trial Preparation.</u>  A pre-trial conference was held on January 21, 2004. In the months following the pre-trial conference, the fees incurred by RCL were for trial preparation. By the time this case was referred to U.S. Magistrate Judge Garfinkle on May 26, 2004, RCL had incurred fees for, <u>inter alia</u>, jury selection, identification of all trial exhibits and objections thereto, preparation of RCL witnesses and preparation of cross-examination of Meredith's witnesses, preparation of jury instructions and verdict slips, preparation of motions in limine and oppositions to Meredith's motions in limine and designations of deposition testimony for use at trial. <u>See</u> Mack Aff., ¶9. RCL was fully prepared for trial when the May 2004 Agreement was reached.

## LEGAL ARGUMENT

**I. <u>The Legal Standard</u>**

Because the parties have stipulated that RCL is the prevailing party in the litigation as to all claims and that Meredith is the non-prevailing party, the relevant issue is the size of the attorneys' fees and costs award. In calculating the size of such an award, the Court should first determine the "lodestar" amount by multiplying the number of hours expended by the hourly rate typically charged for comparable work by attorneys of similar skill in the same geographical area. <u>Pridgen v. Andresen</u>, No. 3:94CV851-DFM, 2000 U.S. Dist. LEXIS 18120, *21 (D. Conn. 2000), <u>citing</u> <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 470 (2d Cir. 1974). Once the

---

[14] The only previous offer of Meredith was an offer of judgment in July 2002 in the amount of $157,158.07, which was less than the amount RCL was owed for work already performed at the time of termination and multiples less than the fees and expenses incurred as of the date of the offer.

lodestar is calculated, the court evaluates the reasonableness of the fees and in so doing may consider the risk and complexity of the litigation, the quality of the representation and whether the representation was undertaken on a contingency basis (which is not the case here). Id.

## II.    RCL is Entitled to the Full Amount of Fees and Costs.

The following factors warrant full recovery of RCL's attorneys' fees and costs:

- RCL prevailed in its claims against Meredith;

- Defeat of RCL's claims based on Meredith's defenses and/or counterclaims would have been a catastrophic loss to RCL;

- the case involved complex issues of law and fact;

- the rates charged for the attorneys who worked on the case are consistent with the rates typically charged by attorneys of comparable skill in the Boston community;

- the case was efficiently managed and leanly staffed; the ratio of hours spent by associates to hours spent by partners was appropriate;

- the work was performed in an efficient manner and the tasks were essential to the prosecution of RCL's claims and the rebuttal of Meredith's defenses to such claims;

- the amount of fees and costs incurred by RCL was driven for the most part by the manner in which Meredith elected to litigate the case; and

- the amount of fees were minimized by the extensive involvement of RCL personnel in discovery and in preparing the case for trial.

The specific bases supporting the above conclusions are discussed in detail in the Gleason Affidavit (incorporated herein by reference) and are not repeated here. In addition, RCL refers the Court to the Mack, Tanski, Michael and Gaughan Affidavits and the documents attached thereto.

## Conclusion

For the foregoing reasons, RCL requests that its motion be allowed and that the Court enter judgment in RCL's favor on Count I of the Complaint declaring that "plaintiff Research Communications, Ltd. has prevailed on its claim for breach of contract against the defendant, Meredith Corporation", and awarding judgment in favor of RCL against Meredith in the amount of $1,085,670.40, plus the amount of reasonable attorneys' fees and costs incurred by RCL in this action after May 31, 2004 as determined by the Court, plus interest at the rate specified in the Research Contract (18% per annum) on the amounts of such fees and costs which were paid by RCL from the date of payment by RCL to the date of payment by Meredith.

Dated:    June 18, 2004

RESEARCH COMMUNICATIONS, LTD.

By its Attorneys,

_____
Joseph C. Tanski   Ct. 22211
David B. Mack   Ct. 23151
NIXON PEABODY, LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000

Charles W. Pieterse   Ct. 01577
WHITMAN, BREED, ABBOTT & MORGAN
100 Field Point Road
P.O. Box 2250
Greenwich, CT 06836
(203) 869-3800