UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 JUN 21  A 10: 18

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>    Plaintiff and )<br>    Counterclaim Defendant, )<br>v. )<br>     )<br>MEREDITH CORPORATION, )<br>    Defendant and )<br>    Counterclaim Plaintiff, )<br>  and )<br>     ) CASE NO 3:00CV2179-DFM<br>MEREDITH CORPORATION, )<br>    Third-Party Plaintiff, )<br>v. )<br>     )<br>VALERIE CRANE, )<br>    Third-Party Defendant. ) | |

## AFFIDAVIT OF DAVID B. MACK

I, David B. Mack, upon oath and affirmation, state as follows:

1.    I am an associate at Nixon Peabody, LLP, which represents Research Communications Ltd. ("RCL") in this matter. From September 1995 through January 31, 2003, I was an associate at Hutchins, Wheeler & Dittmar ("HWD"), which represented RCL. Effective February 1, 2003, HWD merged into NP. I submit this Affidavit in support of RCL's Motion for Judgment on its Claim for Attorneys' Fees and Costs.

2.    I have reviewed the bills of HWD and NP for services rendered to RCL ("Bills") in connection with the litigation with Meredith Corporation ("Meredith"). The Bills are attached, collectively, as Exhibit A to the Affidavit of Joseph C. Tanski.

3.    Attached hereto as <u>Exhibit 1</u> is a summary I prepared of such bills. The summary shows the amount of time spent by attorneys and paralegals on work concerning the following five categories of tasks: (1) pre-litigation efforts to resolve the dispute, preparation of the

BOS1390699.1

complaint, answer to counterclaims and opposition to Meredith's motion to transfer venue; (2) discovery and related matters; (3) opposition to Meredith's motion for summary judgment on the cancelability of the contract and attention to RCL's cross-motion as to same; (4) RCL's motion for summary judgment on Meredith's defenses, counterclaims and third-party claims; and (5) trial preparation. A detailed discussion of each of these categories follows. All of the time reflected in the Bills was placed into one of these five categories and therefore includes not only the preparation of written materials and legal research, but also time spent conferring with the client. Any time that did not fit squarely into one of the categories was included in the discovery category.

4.    *Pre-litigation efforts to resolve the dispute; complaint; answer; reply to counterclaims; and venue transfer opposition.* 171.5 hours were spent by RCL's counsel in connection with efforts to resolve the dispute without the need for litigation; preparation of the complaint; review and analysis of Meredith's answer and counterclaims; preparation of the reply to Meredith's counterclaims; and preparation of RCL's opposition to Meredith's motion to transfer venue from the District of Connecticut to Meredith's home state, Iowa. Prior to filing the action, RCL attempted to resolve the dispute, which required counsel to prepare correspondence and to work with RCL in the preparation of submittals to Meredith supporting RCL's claim. When those efforts failed, RCL's counsel turned to the task of preparing the complaint. Meredith, in addition to denying the allegations in RCL's complaint, filed a motion to transfer venue from Connecticut to Iowa. A substantial percentage of the 171.5 hours was devoted to successfully opposing Meredith's venue transfer motion.

5.    *Discovery.* RCL's counsel and paralegals spent 1,430.9 hours on discovery and related matters. "Discovery" as used in Exhibit 1 hereto includes the following: automatic

disclosures under Fed. R. Civ. P. 26; preparation of interrogatories and requests for production of documents, and responses to interrogatories, document requests and requests for admissions; review of documents produced by Meredith, documents requested for production from RCL and documents subpoenaed from third parties (primarily the Walt Disney Company, subpoenaed by Meredith); extensive correspondence relating to responses to interrogatories; twenty-six depositions; motions relating to discovery; analysis of and opposition to Meredith's motion for leave to amend its answer and counterclaims in June 2002; and expert discovery.  I was the attorney at HWD and NP responsible for managing the discovery in this action.  A complete recitation of the matters addressed during discovery is set forth in the bills attached to Mr. Tanski's affidavit and in the pleadings index maintained by RCL's counsel, a true and accurate copy of which is attached hereto as <u>Exhibit 2</u>.  Such pleading index reflects papers served and/or filed in this action.

        a.     <u>Written discovery</u>.  RCL prepared four sets of interrogatories and two requests for production of documents.  Meredith served three sets of interrogatories, four sets of document requests (in addition to a request for documents from Valerie Crane individually) and two sets of requests for admission.  The interrogatories and document requests propounded by RCL were driven in substantial part by the broad, conclusory nature of Meredith's allegations supporting its flawed research defenses and by Meredith's vague, non-responsive answers to interrogatories.  I spent a substantial amount of time drafting and responding to correspondence concerning Meredith's interrogatory answers.  In response, Meredith twice supplemented its answers to RCL's first set of interrogatories, and supplemented its answers to RCL's second and third sets of interrogatories.

In addition to serving multiple discovery requests on RCL, Meredith subpoenaed documents from RCL's accountants, RCL's counsel (Hutchins, Wheeler & Dittmar), two of RCL's clients (The Walt Disney Company and E.W. Scripps Company), a hotel at which Ms. Crane had once stayed and nine vendors used by RCL in connection with RCL's research for Meredith.

   b. <u>Document Production</u>.  Meredith's document requests required RCL to make available for inspection and copying approximately 45,000 pages of documents.  A very small percentage of the documents concerned the negotiations of the contract at issue and whether such contract was cancelable.  Most of the RCL document production related to the research performed by RCL.  In addition, after initially resisting Meredith's request for production of documents relating to RCL's work for Disney TeleVentures ("DTV") (relating to Meredith's Disney defense), RCL produced thousands of pages of documents pertaining to RCL's work for DTV.  Meredith's document production similarly consisted of approximately 50,000 pages of documents, only several hundred of which related to the cancelability of the contract.

   c. <u>Depositions</u>.  There were twenty-six depositions in this litigation.  Seventeen (17) were conducted by Meredith; nine (9) by RCL.  As set forth in the chart attached hereto as <u>Exhibit 3</u>, the depositions took place across the country, were handled primarily by me and related almost entirely to Meredith's defenses to RCL's claims.  Every deposition conducted or defended in this case was attended by one attorney for RCL.  In contrast, Meredith routinely doubled up at depositions.  <u>See</u> <u>Exhibit 4</u> hereto.  The tasks performed in connection with the depositions included not only the time spent conducting and defending the depositions, but also the time preparing witnesses,

4

preparing for examination of witnesses and reviewing documents relating to the witnesses' anticipated testimony.

      d.    <u>Motions pertaining to discovery</u>. Included in the hours spent on discovery is time spent on the following miscellaneous motions and/or oppositions: RCL's motion to compel further answers to interrogatories and supporting papers; motion for protective order concerning certain third-party witnesses subpoenaed by Meredith; opposition to Meredith's motion to strike certain trial witnesses; opposition to Meredith's motion to compel production of the RCL handbook, and renewed motion as to same; opposition to Meredith's motion for leave to amend its answer and counterclaims in June 2002; and a motion to strike attorney-client privileged information submitted by Meredith in support of its motion for leave to amend.

      e.    <u>Experts</u>. Also included in the discovery category are matters relating to expert witnesses. The time spent by RCL's counsel with respect to experts in this case pertained to Meredith's defenses to RCL's claims. RCL retained two experts to rebut Meredith's defenses to RCL's claims. One expert was Suzanne Sell. Ms. Sell was retained to rebut the matters raised in the reports of Meredith's experts, A. Dwayne Ball and Jerry Gumbert, and matters raised in testimony of another Meredith designated expert, Kevin O'Brien (President of Meredith Broadcast Group). The other expert retained by RCL was Michael Grossman. Mr. Grossman was retained for the purpose of rebutting Meredith's flawed research defense, including matters addressed in Mr. Ball's expert report. In addition to the time spent working with the experts in preparing their reports, RCL's counsel also spent time preparing RCL's experts for their depositions (RCL elected not to take the deposition of the seven experts designated by Meredith with

the exception of Kevin O'Brien, who was also a fact witness). In addition, time was spent preparing a draft motion to strike Meredith's initial expert reports on the basis that such reports did not comply with Rule 26. Upon service of such draft motion, Meredith agreed to supplement one of its experts' reports.

6. RCL's assistance in this matter. RCL employees played a very active role in the discovery conducted in this case. I relied heavily upon them for information and documents necessary to rebut Meredith's flawed research and fraudulent inducement defenses. Ms. Crane herself reviewed portions of Meredith's document production and conferred with me concerning the facts underlying RCL's claims and facts essential to rebutting Meredith's defenses. In addition, Ms. Crane provided extensive assistance in preparing for depositions. Other individuals at RCL provided extensive assistance in the preparation of written discovery responses and in gathering and organizing RCL's document production. Because of RCL's active participation in discovery, I was able to minimize the time I spent in connection with discovery matters. In addition, Ms. Crane's work preparing for depositions significantly reduced the time spent by counsel preparing for depositions. Ms. Crane and others at RCL also worked directly with RCL's experts, which reduced the time required for the preparation of expert reports.

7. Summary judgment concerning whether the contract was cancelable. 376.25 hours were spent opposing Meredith's motion for summary judgment that it was entitled to cancel the contract and cross-moving for summary judgment on the same issue. RCL also cross-moved for summary judgment that RCL and Meredith had agreed to conduct $938,000 of research in Meredith's fiscal year 2001. These summary judgment motions related to the central issue in the case and involved the preparation of several rounds of legal memoranda and

supporting affidavits. In particular, time was spent preparing, among other things, a memorandum in opposition to Meredith's motion and in support of RCL's motion, a reply to Meredith's opposition to RCL's summary judgment motion, two detailed affidavits of Valerie Crane, Local Rule 9(c) statements supporting RCL's motion and in opposition to Meredith's motion, and two motions to strike evidence and testimony relied upon by Meredith as non-compliant with Rule 56(e). Significant time was spent reviewing Meredith's papers in support of its motion and in opposition to RCL's cross-motion, which included five affidavits. The work on the summary judgment motions also required a substantial amount of legal research pertaining to, among other issues, contract interpretation and the admission of extrinsic evidence, statute of frauds, mitigation of damages, opinion testimony and fraudulent inducement (raised by Meredith in opposition to RCL's motion). In addition, because the contract did not contain a choice of law provision and the conduct of the parties took place in several different locations (and varied depending on the legal issue being analyzed), the legal research also concerned conflicts of law and the analysis of several jurisdictions' case law.

8.  <u>Summary judgment motion on Meredith's defenses and counterclaims</u>. 175 hours were spent on RCL's motion for summary judgment on Meredith's flawed research and fraudulent inducement defenses  This included the preparation of an initial memorandum and a reply memorandum and preparation of six supporting affidavits. In addition, the work included preparation of a motion to strike affidavits submitted by Meredith. Legal research relating to the summary judgment motion also is included in this category, and related primarily to the individual elements of Meredith's fraudulent inducement allegation.

9.  <u>Trial preparation</u>. 765.70 hours were spent preparing for trial, primarily during the months of April and May 2004. This time includes the lengthy mediation session on May 26

that led to the partial resolution of this matter. RCL was ready for trial when the May 26 agreement was reached. RCL's counsel had completed the following tasks: selection of exhibits for use at trial and preparation of RCL's exhibit list; review of Meredith's proposed trial exhibits and preparation of objections to same; preparation of motions in limine and oppositions to Meredith's motions in limine; preparation of damages analysis, including summaries to be offered as evidence at trial; preparation of jury instructions and verdict slip; preparation for the direct testimony of RCL's witnesses and cross-examination of a number of Meredith's witnesses; preparation of designations and counter-designations of deposition transcripts; and jury selection.

10. Attached hereto as <u>Exhibit 5</u> is a true and accurate copy of RCL's Motion in Limine to Limit the Scope of Evidence of Improper RCL Research to Research for Meredith's Atlanta station (without exhibits).

11. Attached hereto as <u>Exhibit 6</u> is a true and accurate copy of a transcription of the Agreement dated May 26, 2004 between RCL, Meredith and Valerie Crane, amended to keep the amount paid by Meredith confidential per the parties' agreement.

12. Attached hereto as <u>Exhibit 7</u> is a true and accurate copy of the Research Contract between RCL and Meredith.

Signed under the penalties of perjury this 18th day of June, 2004.

_____
David B. Mack