UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RESEARCH COMMUNICATIONS, LTD., )<br>)<br>Plaintiff/Counterclaim-Defendant, )<br>)<br>v. )<br>)<br>MEREDITH CORPORATION, )<br>)<br>Defendant/Counterclaim-Plaintiff, )<br>)<br>)<br>)<br>MEREDITH CORPORATION, )<br>)<br>v. )<br>)<br>VALERIE CRANE, )<br>)<br>Third-Party Defendant. ) | CASE NO.: 3:00CV2179-AVC |

**OPPOSITION TO EMERGENCY MOTION TO COMPEL
PRODUCTION OF DOCUMENTS PERTAINING TO ATTORNEYS'
FEES AND COSTS INCURRED BY MEREDITH CORPORATION**

Defendant Meredith Corp. ("Meredith") submits this memorandum of law in opposition to the emergency motion of Plaintiff Research Communications, Ltd. ("RCL") to compel production of documents pertaining to the time spent and services performed by Meredith's counsel and other professionals in this litigation, and the fees and costs incurred by Meredith.

RCL's emergency motion should be denied for at least two reasons. First, the requested information concerning Meredith's fees and costs is irrelevant to a determination of the reasonableness of RCL's fee application. Second, RCL's motion is

1

566084_2

largely moot, because Meredith has, without waiver of its objections, already produced documents sufficient to indicate the fees and costs of its trial counsel.

## BACKGROUND

On May 26, 2004, through the efforts of Magistrate Judge Garfinkle, the parties were able to agree to a settlement, reserving the issue of attorneys' fees and costs for this Court to adjudicate.[1] Pursuant to a contract between the parties executed on November 17, 1998, RCL has submitted an application to the Court for attorneys' fees and costs.

On June 4, 2004, RCL issued a *subpoena duces tecum* (the "Subpoena") to Meredith demanding, in effect, all documents concerning fees, hours worked, and tasks performed by all outside counsel, investigators, in-house counsel, designated employee experts, and expert witnesses or consultants.[2] A copy of the Subpoena is annexed as Exhibit A to the affidavit of Robert Callagy, sworn to July 9, 2004. The Subpoena further calls for all documents reflecting expenses incurred by or charged to Meredith. Id.

Meredith served its Objections to Subpoena ("Objections") on June 11, 2004, stating that the Subpoena requests were overly broad, unduly burdensome, sought documents irrelevant to plaintiff's pending application for attorneys' fees, and would

---

[1] From defendant's perspective, setting aside the attorneys' fees dispute was the only way to resolve a case that has been driven from the outset by those fees rather than by any reasonable view of the merits.

[2] The Subpoena included a number of law firms that were retained by Meredith to represent certain former employees of RCL. Those firms did not represent Meredith in this action and were retained largely in response to threats made by RCL to its former employees. (See memorandum of law and supporting documentation of Meredith in response to RCL's application for attorneys' fees and costs.) The Subpoena also included the law firm of Belin Lamson McCormick Zumbach Fynn. Former lead counsel for Meredith, Roger Stetson, was a partner with the Belin firm. When it became apparent that Mr. Stetson was terminally ill, Robert Callagy of the Satterlee firm took over responsibility as lead trial counsel, a process which involved considerable duplication of effort. Callagy Aff. ¶ 2.

2

566084_2

require production of records that are protected by the attorney-client and/or the work product privileges. A copy of the Objections is annexed as Exhibit B to the Callagy affidavit.

However, in a good faith effort to avoid a needless discovery dispute and the attendant waste of judicial resources, Meredith agreed "to produce documents sufficient to indicate the legal fees of Satterlee Stephens Burke & Burke LLP, Day Berry & Howard, LLP, and Duncan Green Brown Langeness & Eckly." Callagy Aff. ¶7, Exhibit B, ¶ 6. Those firms serve as trial counsel in this matter. Callagy Aff. ¶ 3. By letter dated June 16, 2004, annexed as Exhibit C to the Callagy Aff., Meredith disclosed the legal fees of the three firms.

By letters dated June 25, 2004 and June 28, 2004, annexed together as Exhibit D to the Callagy Aff., Meredith produced 267 pages of up-to-date billing records of trial counsel including not only the fee information Meredith had represented it would provide, but also information concerning disbursements and hours. Those records were redacted solely to exclude specific descriptions of time entries, in order to preserve the attorney-client and work product privileges. The produced records reflect, on a daily basis, the time spent by each trial counsel, as well as the monthly billing for attorneys' fees and disbursements

## ARGUMENT

Iowa law applies to the claims at issue in this litigation, including RCL's breach of contract claim. See RCL's Proposed Jury Instructions (citing Iowa Civil Jury Instructions as well as Iowa case law in support of proposed instructions on breach of

contract claim). RCL's breach of contract claim provides the basis for the attorneys' fees and application for reimbursement of costs.

The Iowa Supreme Court has held that "opposing counsel's time and hourly rates devoted to the case – <u>to the extent those items reflect 'the prevailing market rates in the relevant community'</u> – are relevant to a plaintiff's statutory attorney fee claim." Gabelmann v. NFO, Inc., 606 N.W.2d 339, 342 (Iowa 2000) (emphasis added) (quoting Murray v. Stuckey's Inc., 153 F.R.D. 151, 153 (N.D. Iowa 1993). In Stuckey's, for example, the court refused on that basis to order production of hourly rates for certain of defendants' attorneys: "[t]he court does not believe that the hourly rates prevailing in St. Louis are informative of the prevailing market rates in Iowa or in Sioux City." Stuckey's, 153 F.R.D. at 153.

Accordingly, under Iowa law, the fees charged by defendant's counsel are irrelevant. First, none of the firms identified, are located in Boston. Second, and equally important, Boston is not the "relevant community." As discussed more fully in defendant's opposition to the fee application, the relevant legal community is Hartford, the venue selected by plaintiff in this action. The fees of Day, Berry and Howard have been produced.

As a general matter, the Iowa Supreme Court has further held that the extent to which any "fee statements should be compelled . . . is a decision customarily left to the informed discretion of the court." Gabelmann, 606 N.W.2d at 342-43.[3] The

---

[3] Iowa's reliance on the informed discretion of the court appears to be the prevailing view in other jurisdictions. See Alba Conte, Attorney Fee Awards 2d ed. § 6:7 (noting that "courts are split on the relevance and hence the discoverability of such data") (citations omitted). As plaintiff is constrained to admit, substantial authority exists for the proposition that information concerning the fees of the party opposing a fee application is not relevant. The Seventh Circuit, for example, has observed that "a plaintiff's attorney, by pressing questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim."

4

court's decision "will logically turn on the nature of the objections posed by defendant to the request." Id. at 343. Even where attorney billing records might be relevant, a court is under no obligation to order discovery where "the court could make a fair determination whether [applicant's] fees were 'usual and necessary' without access to [opponent's] billing records." Id.

Applying the Iowa standard, the Court should exercise its discretion to deny plaintiff's emergency motion. First, there is little logical basis for the Subpoena, because defendant's opposition to the fee application does not place at issue the material called for by the Subpoena, much less the limited materials which defendant has not already produced. Defendant's opposition to the fee application identifies fatal defects that preclude any recovery of fees: (1) plaintiff's failure to provide a reasonable opportunity for defendant to resolve the underlying dispute before bringing the lawsuit, and (2) plaintiff's failure to submit an affidavit relating to the relevant legal market, Hartford, Connecticut, the qualifications of the 21 time keepers who are the subject of RCL's application, and attesting to the absence of a fee sharing arrangement. (See memorandum of law and supporting documentation of Meredith in response to RCL's application for attorneys' fees and costs.)

Further, defendant's opposition demonstrates that, even if plaintiff had met those prerequisites for a fee application, its request constitutes such extreme overreaching as to warrant a total denial of fees. (See memorandum of law and supporting documentation of Meredith in response to RCL's application for attorneys' fees and costs.) Perhaps most glaring, plaintiff brazenly seeks to recover the substantially

---

Mirabal v. General Motors Acceptance Corp., 576 F.2d 729, 731 (7th Cir. 1978). As explained in defendant's fee opposition, the troubling situation the Mirabal court described is an apt characterization of what has transpired in this case.

higher prevailing rates for Boston counsel rather than the customary rates of Hartford counsel, where RCL brought the action. RCL has not ever detailed the fees charged by its local counsel. In similarly audacious fashion, despite conceding that it is not entitled to fees and costs connected with representation of Valerie Crane as an individual, RCL's counsel has failed to take <u>any</u> deduction of its total fees to account for the <u>two</u> year representation of Valerie Crane as a counterclaim defendant in this matter.

Thus, the Court can readily determine whether the fees and costs requested by plaintiff were "usual and necessary" without examination of defendant's billing records. To the extent the Court reaches defendant's additional contention that many of plaintiff's time entries are unwarranted or inflated, those records speak for themselves. Certainly, the Court's assessment would not be aided by consideration of the billing records maintained by law firms that were retained by Meredith to represent certain former employees of RCL at depositions: (1) Foley & Lardner; (2) Ahlers, Cooney, Dorweiler, Haynie, Smith & Albee; and (3) the Law Offices of Michael Pfeifer. <u>Id.</u> Those firms did not represent Meredith in this action and were retained largely in response to threats made by RCL to its former employees. Finally, the firm of Sullivan & Ward was primarily involved in a vendor audit conducted by Meredith and a corresponding investigation being conducted by the U.S. attorney's office in Des Moines, Iowa. [Cite affidavits][4]

Nor would it be helpful to the Court to study the time entries of Meredith's counsel. The issue before the Court is not whether the fees of Meredith's counsel are

---

[4] Meredith has not challenged fees and costs associated with RCL's experts nor of any investigator, and so the Subpoena's demand for such information from Meredith must be denied as moot. As to RCL's request for time records and information concerning in-house counsel, as RCL's counsel has been advised, Meredith's legal department does not bill (or maintain records) on an hourly basis. Moreover, the litigation was conducted by outside counsel, and the role of Meredith's law department was primarily supervisory. .

reasonable, and minute inspection of time entries would only be a distraction. Moreover, production of actual time entry descriptions would invade the attorney-client and work product privilege by revealing the substance of confidential advice provided to Meredith as well as confidential legal strategy. Although RCL correctly points out that client identity and fee arrangements are not confidential, that information has already been disclosed. Production of unredacted billing records would reveal the substance of actual communications with the client concerning litigation strategy. No authority is cited for the remarkable proposition that "if Meredith seeks to challenge the reasonableness of RCL's fees Meredith must waive its attorney-client privilege." Emergency motion at 9.

In the end, even to the extent the Court decides that basic information concerning Meredith's fees and costs could have any bearing on the reasonableness of RCL's application, Meredith has already provided that information. Callagy Aff., Exh. E. Thus, to the extent it might conceivably have any merit, RCL's emergency motion is already moot.

## CONCLUSION

For the foregoing reasons, RCL's emergency motion should be denied with costs and reasonable attorneys' fees to Meredith.

Dated: New York, New York
      July 9, 2004

Respectfully submitted,

SATTERLEE STEPHENS BURKE & BURKE LLP

By: _____
Robert M. Callagy (*pro hac vice*)

7

566084_2

230 Park Avenue
New York, New York 10169
(212) 818-9200

and

James Sicilian, Esq.
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0303

Attorneys for Defendant/Counterclaim-Plaintiff
Meredith Corporation

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed on this 12th day of July, 2004, by overnight delivery to all counsel and pro se parties as follows:

Joseph C. Tanski, Esq.  
David B. Mack, Esq.  
Nixon Peabody, LLP  
100 Summer Street  
Boston, Massachusetts 02110-2131  

Charles W. Pieterse, Esq.  
Whitman, Breed, Abbott & Morgan  
100 Field Point Road  
P.O. Box 2250  
Greenwich, CT  06836  

James G. Sawtelle, Esq.  
Duncan, Green, Brown, Langeness & Eckley PC  
600 Seventeenth Street  
Suite 2800 South  
Denver, CO 80202-5402  

_____  
James Sicilian